**Page 1**

```
 1              UNITED STATES DISTRICT COURT

 2                 DISTRICT OF MINNESOTA

 3  - - - - - - - - - - - - - - - - - - - - - -

 4  Andrea Ferkingstad,

 5                      Plaintiff,

 6       vs.    Civil Action No. 16-cv-03565-JNE-BRT

 7  Accounts Receivable Services, LLC,

 8                      Defendant.

 9  - - - - - - - - - - - - - - - - - - - - - -

10

11         DEPOSITION OF JOCELYN J. FOUNTAIN

12            VOLUME I, PAGES 1 - 121

13               OCTOBER 23, 2017

14

15

16            (The following is the deposition of JOCELYN

17  J. FOUNTAIN, taken pursuant to Notice of Taking

18  Deposition, at the offices of Bassford Remele, 100

19  South Fifth Street, Suite 1500, in the City of

20  Minneapolis, State of Minnesota, commencing at

21  approximately 8:58 o'clock a.m., October 23, 2017.)

22

23

24

25
```

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

**Page 3**

| | | |
|---|---|---|
| | | REDACTED, ARS0012 |
| 13 | ALLINA HEALTH, Detailed Bill for Andrea N. Ferkingstad, ARS0014 to 0015 | 10 |
| 14 | Group exhibit:  ALLINA HEALTH Detailed Bill for Andrea N. Ferkingstad, Page 1 of 2 and 2 of 2; HOSPITAL STATEMENT, $791.47; ARS0004, 0005, 0011, 0012, 0006 to 0010 | 11 |
| 15 | Allina Health Annual Financial Disclosure Statement Year Ended December 31, 2015, 81 pgs. | 79 |
| 16 | ALLINA HEALTH SYSTEM Annual Financial Disclosure Statement Year Ended December 31, 2015, Pg. 2 | 81 |
| 17 | Excerpt, ALLINA HEALTH SYSTEM Annual Financial Disclosure Statement Year Ended December 31, 2009, 6 pgs. (Cover, Table of Contents, 1-4) | 86 |
| 18 | Excerpt, Allina Health Annual Financial Disclosure Statement Year Ended December 31, 2016, 5 pgs. (Cover, 2, 15 to 17) | 89 |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

**Page 2**

```
 1  APPEARANCES:
 2  On Behalf of the Plaintiff:
 3     Darren Brayer Schwiebert
       DBS LAW LLC
 4     301 Fourth Avenue South
       Suite 280N
 5     Minneapolis, Minnesota   55415

 6  On Behalf of the Defendant:

 7     Michael J. Klutho
       BASSFORD REMELE, P.A.
 8     100 South Fifth Street
       Suite 1500
 9     Minneapolis, Minnesota   55415

10  ALSO PRESENT:

11     Bonita J. Drennen

12
               EXAMINATION INDEX
13  WITNESS      EXAMINED BY          PAGE
    Ms. Fountain  Mr. Schwiebert        4
14
               EXHIBIT INDEX
15  EXHIBIT      DESCRIPTION          PAGE
    1      ORDER, Ferkingstad v Accounts    4
16           Receivable Services, April 13,
             2017, 11 pgs.
17  2      Excerpt, United States Code,     4
             Section 1927, 1 pg.
18  3      Subpoena, Jocelyn Fountain, 3 pgs.  8
    4      Subpoena, Allina Health System, 3  10
19           pgs.
    5      DEPOSITION TOPICS, 1 pg.         10
20  6      AGREEMENT, 21 pgs.               10
    7      Blanket Purchase Agreement, ARS0004  10
21  8      Suit Authorization and Assignment,   10
             ARS0005
22  9      DECLARATION OF JOCELYN FOUNTAIN,  10
             ARS0006 to 0007
23  10     SECOND DECLARATION OF JOCELYN     10
             FOUNTAIN, ARS0008 to 0010
24  11     ALLINA HEALTH SYSTEM, EXHIBIT 1   10
             BILL OF SALE, ARS0011
25  12     RELIANCE RECOVERIES EXHIBIT 1A -
```

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

**Page 4**

```
              1                    P R O C E E D I N G S
08:58:17      2  (Witness sworn.)
              3           JOCELYN J. FOUNTAIN,
              4  Called as a witness, being first
              5  duly sworn, was examined and
              6  testified as follows:
              7                 EXAMINATION
              8  BY MR. SCHWIEBERT:
08:58:31      9       Q.   Can you please state and spell your full
08:58:32     10  name for the record.
08:58:33     11       A.   Absolutely.  Jocelyn Fountain,
08:58:39     12  J-O-C-E-L-Y-N, last name is F-O-U-N-T-A-I-N.
08:58:43     13           MR. KLUTHO:  I'm going to mark a couple of
08:58:45     14  exhibits before we start because this deposition is
08:58:45     15  --
08:58:48     16           Have you mark those as 1 and 2, please.
08:59:13     17           (Exhibits 1 & 2 marked for
08:59:13     18           identification.)
08:59:13     19           MR. KLUTHO:  These are really for counsel.
08:59:15     20  Exhibit 1 is the judge's order on our motion to
08:59:18     21  dismiss.  The judge concluded that the only issue
08:59:20     22  left in this case is as follows:  "Ferkingstad
08:59:29     23  plausibly alleges that ARS falsely represented - at
08:59:32     24  the time it made its representations - that it owned
08:59:36     25  a debt against her.  Her claims based on the false
```

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

5

08:59:41 1 sale and assignment representation survive ARS's
08:59:44 2 Motion to Dismiss."
08:59:45 3        That's the only issue left in the case.
08:59:47 4 And it references specifically that it has to do with
08:59:50 5 the time that the representations were made in the
08:59:53 6 Conciliation Court action.  The second, Exhibit 2, is
08:59:56 7 a United States Code Section 1927 regarding counsel's
09:00:00 8 liability for excessive costs, indicating that:  "Any
09:00:04 9 attorney or other person admitted to conduct cases in
09:00:07 10 any court of the United States or any Territory
09:00:10 11 thereof who so he multiplies the proceedings in any
09:00:14 12 case unreasonably and vexatiously may be required by
09:00:18 13 the court to satisfy personally the excess costs,
09:00:20 14 expenses, and attorneys' fees reasonably incurred by
09:00:24 15 such conduct."  I have had an ongoing discussion with
09:00:24 16       I have had an ongoing discussion with
09:00:29 17 opposing counsel about the scope of the subpoenas and
09:00:32 18 deposition notices that they are far beyond the sole
09:00:35 19 issue that's left in this case; I've gotten nowhere
09:00:38 20 with them.  So I'm simply putting you on notice,
09:00:40 21 counsel of my intent to seek attorneys' fees and
09:00:44 22 sanctions against you pursuant to Section 1927 to the
09:00:48 23 extent you go beyond the sole issue left in this
09:00:50 24 case.
09:00:51 25        MR. SCHWIEBERT:  Are you done?

6

09:00:53 1        MR. KLUTHO:  Yes.
09:00:53 2 BY MR. SCHWIEBERT:
09:00:54 3    Q.   Ms. Fountain have you ever been deposed
09:00:56 4 before?
09:00:56 5    A.   No.
09:00:56 6    Q.   I'm going to go over the procedure just so
09:01:02 7 it makes sense to you.
09:01:03 8        As you can see, the court reporter is going
09:01:04 9 to type in all of my questions and all of your
09:01:08 10 answers.
09:01:09 11   A.   Okay.
09:01:09 12   Q.   For that to be an effective medium to
09:01:11 13 capture your testimony there are two things that we
09:01:13 14 have to do.  The first is all of your answers have to
09:01:16 15 be verbal.  Head shrugs, nods, uh-huhs, umm-hmms don't
09:01:24 16 translate in a written transcript as an answer to the
09:01:26 17 question.
09:01:26 18        Does that make sense to you?
09:01:28 19   A.   Yes.
09:01:28 20   Q.   The other thing we have to do is, and I will
09:01:30 21 do this probably more than you, is we have to wait
09:01:33 22 until the other person is done speaking before we
09:01:36 23 begin speaking.  So all I ask is that you wait until
09:01:39 24 I'm done asking the question, I realize some of them
09:01:42 25 may get obvious, before you provide your answer, and I

7

09:01:45 1 will try my best to wait until you've given your
09:01:48 2 entire answer before I ask the next question.
09:01:50 3        Is that fair?
09:01:51 4    A.   Yes.
09:01:52 5    Q.   If at any point I cut you off or don't let
09:01:55 6 you give your full answer, just let me know, I'll make
09:01:59 7 sure that you get your full answer in the record.
09:02:01 8 Okay?
09:02:01 9    A.   Okay.
09:02:02 10   Q.   The other thing, because it's a recorded
09:02:04 11 medium we need to do is we need to make sure that you
09:02:06 12 understand the question and that you're answering the
09:02:08 13 question as you understand it.  So all that I ask is
09:02:10 14 that if I ask you a question you don't understand,
09:02:13 15 that you have me clarify.
09:02:15 16        Is that fair?
09:02:15 17   A.   Yes.
09:02:16 18   Q.   Okay.  And I'm going to presume, if you
09:02:18 19 don't ask me to clarify, you understood it because you
09:02:20 20 went ahead and answered it.  Correct?
09:02:22 21   A.   Yes.
09:02:23 22   Q.   Do you understand you're under oath as if
09:02:25 23 you were before the judge and jury?
09:02:27 24   A.   Yes.
09:02:27 25   Q.   Are you currently on any medications that

8

09:02:31 1 would prevent you from providing complete and truthful
09:02:32 2 answers?
09:02:33 3    A.   No.
09:02:34 4    Q.   All right.
09:02:48 5        (Exhibit 3 marked for identification.)
09:02:48 6        MR. KLUTHO:  One other note for the record.
09:02:49 7 Counsel, you've noted Ms. Fountain to testify
09:02:53 8 individually, and also noted a deposition of Allina.
09:02:57 9 Ms. Fountain is the Allina rep, so I'd just ask you
09:03:00 10 just to ask everything you want to ask in one
09:03:02 11 deposition, we aren't going to reconvene.  She's
09:03:04 12 speaking on behalf of Allina.
09:03:08 13 BY MR. SCHWIEBERT:
09:03:09 14   Q.   Ms. Fountain, have you seen Exhibit 3
09:03:12 15 before?
09:03:16 16   A.   Now.
09:03:17 17   Q.   Had you seen it before this deposition?
09:03:19 18   A.   Yes.
09:03:22 19   Q.   Okay.  You understand that Exhibit 3 is the
09:03:24 20 subpoena for you to appear and testify this morning at
09:03:28 21 9 a.m. in these law offices in this legal matter;
09:03:31 22 correct?
09:03:31 23   A.   Correct.
09:03:32 24   Q.   Okay.
09:03:38 25        (Discussion off the record.)

11

| | |
|---|---|
| 09:03:42 1 | MR. SCHWIEBERT: This will be 4. Oh, |
| 09:03:43 2 | actually let's not mark it. |
| 09:03:44 3 | BY MR. SCHWIEBERT: |
| 09:03:45 4 | Q. Ms. Fountain, I've handed you a stack of |
| 09:03:48 5 | documents that we're going to mark in pieces in a |
| 09:03:50 6 | minute. |
| 09:03:50 7 | Have you seen this document before? |
| 09:03:54 8 | A. (Witness reviewing document.) Yes, |
| 09:04:01 9 | something that looks similar. |
| 09:04:03 10 | Q. Well you understand that this stack of |
| 09:04:06 11 | documents is the subpoena that was served upon Allina |
| 09:04:11 12 | Health Systems -- |
| 09:04:12 13 | A. Yes. |
| 09:04:12 14 | Q. -- to provide testimony this afternoon at |
| 09:04:15 15 | one o'clock; correct? And to produce some documents |
| 09:04:18 16 | as appears on the front page of the subpoena. |
| 09:04:21 17 | Correct? |
| 09:04:21 18 | A. Yes. |
| 09:04:22 19 | Q. Okay. As I understand it from your counsel, |
| 09:04:24 20 | there's a preference that we do this deposition first. |
| 09:04:27 21 | Are you okay with that? |
| 09:04:29 22 | A. Yes. |
| 09:04:30 23 | MR. KLUTHO: That's not what I said, |
| 09:04:31 24 | counsel. I said you're going to take one deposition. |
| 09:04:33 25 | You ask all your questions that you have of Ms. |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

10

| | |
|---|---|
| 09:04:36 1 | Fountain. She is here also speaking on behalf of |
| 09:04:40 2 | Allina in response to that subpoena. We're not going |
| 09:04:42 3 | to sit for a second deposition. |
| 09:04:43 4 | BY MR. SCHWIEBERT: |
| 09:04:44 5 | Q. We're going to start with this subpoena even |
| 09:04:45 6 | though the time is different so we can hopefully get |
| 09:04:48 7 | most, if not all of it, done at the same time. Can I |
| 09:04:50 8 | have it back from you for just a second? |
| 09:04:53 9 | A. [Handing.] |
| 09:04:54 10 | MR. SCHWIEBERT: We're going to mark this |
| 09:04:55 11 | as I think it's six exhibits. |
| 09:07:33 12 | (Exhibits 4 - 13 marked for |
| 09:07:34 13 | identification.) |
| 09:07:34 14 | (Discussion off the record.) |
| 09:07:34 15 | BY MR. SCHWIEBERT: |
| 09:07:38 16 | Q. Ms. Fountain, so Exhibits 4 through 13 make |
| 09:07:44 17 | up the subpoena that was served on Allina Health |
| 09:07:49 18 | Systems. |
| 09:07:49 19 | A. Correct. |
| 09:07:50 20 | Q. Okay. Looking at the page of -- top of page |
| 09:07:53 21 | 4, there's a request for a production of documents. |
| 09:07:55 22 | Did you bring any documents with you today on behalf |
| 09:08:00 23 | of Allina? |
| 09:08:01 24 | A. Yes. |
| 09:08:01 25 | Q. What documents did you bring? |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

| | |
|---|---|
| 09:08:03 1 | A. Well they're the same ones you already have |
| 09:08:06 2 | given me. [Handing.] |
| 09:08:32 3 | MR. SCHWIEBERT: Okay. Let's mark this as |
| 09:08:34 4 | Exhibit 14, and I'll make a copy of them when we get |
| 09:08:38 5 | to the break. |
| 09:08:47 6 | (Exhibit 14 marked for identification.) |
| 09:08:47 7 | BY MR. SCHWIEBERT: |
| 09:08:48 8 | Q. The first document production request is the |
| 09:08:51 9 | Purchase of Business Agreement dated October 7th, 2015 |
| 09:08:54 10 | as referenced in Exhibit E attached hereto. |
| 09:08:57 11 | Did I read it correctly? |
| 09:08:59 12 | A. Correct. |
| 09:08:59 13 | Q. Here's your Exhibit 14 which is the |
| 09:09:02 14 | documents you brought. Can you please point out to me |
| 09:09:04 15 | the Purchase of Business Agreement dated October 7th, |
| 09:09:06 16 | 2015? |
| 09:09:09 17 | MR. KLUTHO: For the record I'll object, |
| 09:09:11 18 | counsel, there is no such document because of the |
| 09:09:14 19 | person who drafted the request, which would be you. |
| 09:09:19 20 | MR. SCHWIEBERT: Counsel, I'll just warn |
| 09:09:20 21 | you not to testify or coach the witness. |
| 09:09:23 22 | MR. KLUTHO: I'm not coaching anybody. |
| 09:09:24 23 | A. Okay. There is no Purchase of Business |
| 09:09:27 24 | Agreement signed on October 7th, 2015. There is a |
| 09:09:33 25 | Bill of Sale. |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

12

| | |
|---|---|
| 09:09:34 1 | Q. Okay. Wait. I apologize. |
| 09:09:37 2 | In the Exhibit 1 Bill of Sale which was |
| 09:09:40 3 | Exhibit E to the subpoena there is a reference to the |
| 09:10:01 4 | -- |
| 09:10:01 5 | MR. SCHWIEBERT: Stapled too many documents |
| 09:10:02 6 | together. |
| 09:10:04 7 | Q. -- Purchase of Business Agreement as of |
| 09:10:16 8 | October 7th, 2015 ("Agreement"); correct? |
| 09:10:16 9 | A. That's what it says, yes. |
| 09:10:18 10 | Q. Is there such a document? |
| 09:10:19 11 | A. The Purchase of Business Agreement is the |
| 09:10:21 12 | one that you have that it says "Blanket Purchase |
| 09:10:25 13 | Agreement." |
| 09:10:26 14 | Q. But you didn't bring that with you today. |
| 09:10:28 15 | A. I did. We put it in Exhibit 14 for you, and |
| 09:10:31 16 | you entered it as well. |
| 09:10:35 17 | Q. Where is Exhibit 14? |
| 09:10:39 18 | A. Exhibit 14 -- [handing], "Blanket Purchase |
| 09:10:46 19 | Agreement." |
| 09:10:47 20 | Q. Okay. So there is no document called a |
| 09:10:54 21 | "Purchase of Business Agreement"; is that correct? |
| 09:10:57 22 | A. Correct. |
| 09:10:59 23 | Q. It's your testimony that the reference to a |
| 09:11:02 24 | Purchase of Business Agreement is a reference to the |
| 09:11:05 25 | Blanket Purchase Agreement. |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

13

1    A.    Correct.

2    Q.    Topic number 2, Exhibit 4 for production,
3  the Bill of Sale regarding, that should be Ms.
4  Ferkingstad's account, attached as Exhibit E to the
5  deposition topics, purports to be Exhibit 1 to another
6  document.  Please provide the document to which the
7  Bill of Sale is Exhibit 1.

8    A.    (Witness reviewing Exhibit 14.)  That again
9  would be the Blanket Purchase Agreement.

10          MR. KLUTHO:  Do you find something funny,
11  counsel?

12   Q.    All right.  So let's go to Exhibit 7 --
13  would be in that stack -- which is the Blanket
14  Purchase Agreement.

15   A.    Okay.

16   Q.    There's no Exhibit 1 referenced in Exhibit
17  7; is there?

18   A.    No.

19   Q.    Exhibit 7 is undated; correct?

20          MR. KLUTHO:  That's not true, counsel.

21   A.    There a date --

22          MR. KLUTHO:  There's a date right on there.

23   A.    -- that says it goes into effect January
24  17th, 2014.

25   Q.    I'd agree with you.

14

1          But we don't know when the document is
2  actually dated.  Nobody dates their signature.

3          MR. KLUTHO:  Objection, counsel,
4  argumentative.

5    Q.    Correct?

6    A.    The date I look at on this document is
7  January 17th, 2014.

8    Q.    That's the date the transfers go into
9  effect.

10   A.    Correct.

11   Q.    Okay.  Can you tell me where, in Exhibit 7,
12  the term "transfer date" is defined?

13          MR. KLUTHO:  Objection, counsel.  The
14  document speaks for itself.

15   A.    No.

16   Q.    There is no definition of a term "transfer
17  date" on Exhibit 7; is there?

18          MR. KLUTHO:  Objection, argumentative,
19  vexatious.  Stop it.

20          Can you read, counsel?

21   A.    What was your question?

22   Q.    There is no definition of the term "transfer
23  date" in Exhibit 7; is there?

24          MR. KLUTHO:  Same objections.

25   A.    No.

15

1    Q.    Okay.  If we look at Exhibit 11.

2    A.    Yes.

3    Q.    Exhibit 11 is the Exhibit 1 Bill of Sale;
4  correct?

5    A.    Correct.

6    Q.    Signed by you.

7    A.    Correct.

8    Q.    When did you sign it?

9    A.    October 7th, 2015.

10   Q.    How do you know that?

11   A.    Because that's the date that I wrote in that
12  little slot there.

13   Q.    You wrote in the date of the Purchase of
14  Business Agreement.

15   A.    That's the date that I signed the agreement,
16  this piece of paper here.

17   Q.    And again --

18   A.    That I signed the Bill of Sale, maybe I said
19  that wrong.  This document I signed on October 7th.

20          MR. KLUTHO:  Exhibit 11.

21   Q.    It says that there is this previous
22  agreement which is called a Purchase of Business
23  Agreement, and your testimony is that's the Blanket
24  Purchase Agreement.

25   A.    Yes.

16

1    Q.    Okay.  And that there are terms, conditions
2  and warranties set forth in the agreement.  That's the
3  last line of the first paragraph.

4    A.    That is.

5    Q.    Okay.  Can you show me the warranties that
6  are set forth in Exhibit 7?

7          MR. KLUTHO:  Objection, counsel.  Exhibit 7
8  speaks for itself.

9    Q.    I'm sorry, I missed this part of the...

10          You need to answer until you're instructed
11  not to answer by your counsel.  So --

12   A.    Okay.

13          MR. KLUTHO:  We're going to get there
14  pretty quick.

15   A.    Could you repeat the question again?

16   Q.    Can you show me where in Exhibit 7 the
17  warranties are listed?

18   A.    I don't see the word "warranty" in this.

19   Q.    Is there any language in Exhibit 7 that you
20  would interpret as a warranty?

21          MR. KLUTHO:  [Indicating.]

22   A.    It talks about the seller agrees that
23  accounts are valid and the balances are correct, so to
24  me that's a warranty of that.  There is reasonable
25  basis to believe the patient owes the debt.  We have

17

09:16:23 1 billed all third-party payors and the remaining amount
09:16:26 2 is the sole responsibility of the patient or
09:16:30 3 guarantor. That the patient has not indicated an
09:16:32 4 inability to pay and that Allina has offered a
09:16:35 5 reasonable payment plan or the patient has had a
09:16:37 6 reasonable opportunity to apply for Charity Care where
09:16:41 7 the circumstances suggest the need.
09:16:42 8     Q. You interpret those as being the warranties
09:16:44 9 in the Purchase of Business Agreement.
09:16:46 10     A. Yes.
09:16:47 11     Q. Okay. The other thing is it's subject to
09:16:51 12 the terms of the Purchase of Business Agreement.
09:16:55 13     What are the terms of the Purchase of
09:16:58 14 Business Agreement?
09:17:00 15     A. I would suggest that the terms are the same
09:17:01 16 as the warranties.
09:17:04 17     Q. Well are certain accounts being transferred?
09:17:13 18     MR. KLUTHO: Object to the form of the
09:17:15 19 question. When, counsel?
09:17:18 20     Q. Let's read it together. Allina, and there's
09:17:21 21 an address, does hereby sell, assign and transfer to
09:17:25 22 Accounts Receivable Services, LLC d/b/a Reliance
09:17:30 23 Recovery, it's got their address, the following
09:17:32 24 accounts, plural; correct?
09:17:34 25     Did I read it correctly?

18

09:17:37 1     A. You did read it correctly.
09:17:38 2     Q. And then there's a description of the
09:17:39 3 accounts.
09:17:41 4     A. For unpaid medical bills.
09:17:44 5     Q. Okay. But there's no attachment to Exhibit
09:17:46 6 7; is there?
09:17:48 7     MR. KLUTHO: Correct.
09:17:48 8     A. I feel like we've already answered that yes.
09:17:52 9     Q. So these are unpaid medical bills that were
09:17:55 10 transferred on January 17th of 2014; correct?
09:17:59 11     A. No.
09:18:00 12     Q. Well the transfer is effective January 17th
09:18:03 13 of 2014; correct?
09:18:04 14     MR. KLUTHO: Objection, argumentative.
09:18:08 15     A. No, that's not correct.
09:18:10 16     This Blanket Purchase Agreement was meant to
09:18:13 17 cover everything that happened after this for us
09:18:17 18 selling debt to Accounts Receivable Services.
09:18:22 19     Q. Where in Exhibit 7 does it say that it
09:18:26 20 relates to transfers effective after January 17th of
09:18:29 21 2014?
09:18:30 22     A. Well it says it goes into effect as of
09:18:33 23 January 17th, so I infer that from that document.
09:18:39 24     Q. This is an agreement for the transfer of
09:18:42 25 undefined unpaid medical bills; correct?

19

09:18:44 1     A. Correct.
09:18:46 2     Q. And that transfer of unpaid medical bills is
09:18:49 3 effective January 17th, 2014.
09:18:51 4     MR. KLUTHO: Objection, argumentative,
09:18:53 5 counsel.
09:18:55 6     Q. Correct?
09:18:57 7     A. No. This document is a Blanket Purchase
09:19:02 8 Agreement, "blanket."
09:19:04 9     Q. All right. I understand that the term
09:19:05 10 "blanket" appears, but the --
09:19:07 11     MR. KLUTHO: I don't think you understand,
09:19:08 12 counsel.
09:19:09 13     Q. -- agreement doesn't say that it goes into
09:19:12 14 effect, it says the transfers go into effect as of
09:19:14 15 January 17th, 2014; correct?
09:19:16 16     MR. KLUTHO: Objection, asked and answered.
09:19:17 17 Don't answer it again. I'm instructing you not to
09:19:19 18 answer.
09:19:19 19     You're again vexatiously violating this
09:19:22 20 witness's rights. She's told you the answer three
09:19:25 21 times. Move on.
09:19:27 22     MR. SCHWIEBERT: Are you instructing her
09:19:28 23 not to answer on the basis of privilege?
09:19:30 24     MR. KLUTHO: No, because you're asking
09:19:33 25 vexatious litigation. I'm making the objection for

20

09:19:36 1 purposes of making a motion to the court.
09:19:38 2     MR. SCHWIEBERT: That would be category C.
09:19:40 3 Are you bringing your motion now?
09:19:41 4     MR. KLUTHO: No.
09:19:43 5     MR. SCHWIEBERT: Well you don't have that
09:19:44 6 choice, counsel. If you're instructing her not to
09:19:46 7 answer on the basis that you are bringing a motion
09:19:48 8 with the court for a protective order you have to do
09:19:50 9 it now.
09:19:50 10     MR. KLUTHO: No, I don't.
09:20:13 11     While he's writing, Ms. Fountain, just go
09:20:15 12 ahead and explain it to him one more time, see if
09:20:18 13 it'll get through --
09:20:18 14     THE WITNESS: Okay.
09:20:18 15     MR. KLUTHO: -- what this document says.
09:20:21 16     THE WITNESS: So this is a Blanket Purchase
09:20:22 17 Agreement for us selling unpaid medical bills to
09:20:24 18 Accounts Receivable Services. This Blanket Purchase
09:20:28 19 Agreement went into effect January 17, 2014.
09:20:34 20 BY MR. SCHWIEBERT:
09:20:34 21     Q. How did Allina know, on January 17th, 2014,
09:20:37 22 that accounts that are transferred in 2015 are valid
09:20:42 23 and the balances are correct?
09:20:45 24     A. Because we review every account before we
09:20:47 25 sell it to them, which is when I signed this document.

21

09:20:51  1        MR. KLUTHO:  Exhibit 11.

09:20:51  2     Q.   But how --

09:20:52  3        THE WITNESS:  Exhibit 11.

09:20:53  4     Q.   How do you --

09:20:54  5        How does Allina represent or warranty, as

09:20:57  6  you term it, in January of 2014 that something it

09:21:02  7  isn't looking at yet is -- because that's going to

09:21:05  8  happen in 2015, is valid and the balances are correct?

09:21:10  9        MR. KLUTHO:  Objection, argumentative,

09:21:11  10  asked and answered.

09:21:13  11        Go ahead and tell him again.

09:21:15  12     A.   Because we review the account when it is

09:21:18  13  signed for actual sale.  This Blanket Purchase

09:21:24  14  Agreement kind of covers everything.  This particular

09:21:27  15  document refers to Ferkingstad's account.

09:21:30  16        MR. KLUTHO:  Exhibit 11.

09:21:32  17        THE WITNESS:  Exhibit 11.  Sorry.

09:21:41  18     Q.   How many Exhibit 1's are there to Exhibit

09:21:44  19  number 7?

09:21:48  20     A.   How many different accounts have we sold to

09:21:50  21  Accounts Receivable Services; is that what you're

09:21:52  22  asking me?

09:21:52  23     Q.   If each one is a separate Exhibit 1 in order

09:21:56  24  to, according to your testimony, actually transfer or

09:22:00  25  actually sell the account, how many Exhibit 1's are

22

09:22:04  1  there?

09:22:05  2     A.   Endless number.

09:22:09  3     Q.   Thousands?

09:22:09  4     A.   I wouldn't even want to guess and put it on

09:22:12  5  the record.  Many.

09:22:13  6        MR. KLUTHO:  Counsel, move on.  This is

09:22:17  7  vexatious litigation.  You're here to ask about

09:22:20  8  Ferkingstad, you're not here to ask about other

09:22:24  9  accounts.  You're specifically told by the court in

09:22:36  10  the order that you're here to ask about the

09:22:38  11  representation at the time it was made in the

09:22:43  12  conciliation court action.  I haven't heard anything

09:22:46  13  about that.

09:22:47  14  BY MR. SCHWIEBERT:

09:22:48  15     Q.   Was something entered in the amount to be

09:22:49  16  paid on Exhibit 7 when it was signed?

09:22:53  17     A.   No.

09:22:53  18     Q.   It was blank then.

09:22:54  19     A.   I did not sign this document, but the one

09:22:56  20  that I have is a blank document.

09:23:07  21     Q.   On January 17th, 2014 certain unpaid medical

09:23:11  22  bills were transferred from Allina to ARS.

09:23:16  23        MR. KLUTHO:  Objection, misstates the

09:23:18  24  testimony.

09:23:19  25        Are you not listening?

23

09:23:22  1     A.   There were -- debts --

09:23:25  2        This is to cover transfers, in general, of

09:23:27  3  us selling debt to Accounts Receivable Services.

09:23:31  4     Q.   And you understand when I use "ARS" I mean

09:23:33  5  "Accounts Receivable Services."

09:23:35  6     A.   Yes.

09:23:35  7     Q.   Or they're also called "Reliance

09:23:38  8  Recoveries."

09:23:38  9     A.   Yes.

09:23:38  10     Q.   You understand those are all the same

09:23:40  11  entity.

09:23:40  12     A.   Correct.

09:23:51  13     Q.   Exhibit 11, in the second paragraph, makes

09:24:05  14  reference to "good and valuable consideration."  What

09:24:09  15  consideration was provided by ARS to Allina for the

09:24:15  16  alleged sale of the Ferkingstad account?

09:24:18  17     A.   I don't understand your question.

09:24:20  18     Q.   Well is it sold from Allina to ARS?

09:24:25  19     A.   "Bill of Sale" indicates that we are

09:24:28  20  selling --

09:24:28  21     Q.   Okay.

09:24:29  22     A.   -- this account to Accounts Receivable

09:24:32  23  Services.

09:24:32  24     Q.   Did they pay money for it?

09:24:36  25     A.   Yes.

24

09:24:37  1     Q.   When did they pay money for it?

09:24:39  2     A.   That I do not know.

09:24:40  3     Q.   How much did they pay for it?

09:24:42  4     A.   That I do not know.  It's outside my scope

09:24:48  5  of responsibility.

09:24:56  6     Q.   Does Allina record the sale of the asset to

09:25:01  7  ARS on its books?

09:25:06  8     A.   Yes.

09:25:14  9     Q.   How is the value paid by ARS determined?

09:25:19  10     A.   That I don't know.

09:25:27  11     Q.   Is it based on any recovery on the debt?

09:25:33  12     A.   Not at this point when it's sold.

09:25:40  13        I should just stick with "I don't know."

09:25:42  14  I'll stick with that.  Again, outside my scope of

09:25:45  15  responsibility.

09:25:49  16     Q.   Did you talk to anybody about that in

09:25:51  17  preparation for the deposition today?

09:25:54  18     A.   No.

09:26:05  19     Q.   Seller, which is Allina, hereby sells,

09:26:07  20  assigns and transfers and delivers to purchaser,

09:26:11  21  that's ARS, all of seller's right, title and interest

09:26:15  22  in each and every one of the assets described in the

09:26:20  23  agreement.

09:26:22  24        Did I read that correctly?

09:26:24  25     A.   Yes.

25

Q.   All right.  The Agreement, capital A is a
reference, according to your testimony, to the Blanket
Purchase Agreement; correct?

A.   Yes.

Q.   Is the Ferkingstad asset described in
Exhibit 7?

A.   I would say yes, because it's an unpaid
medical bill.

Q.   Is there any reference to Ms. Ferkingstad's
account in Exhibit 7?

A.   No.

Q.   When Exhibit 11 was signed by you on October
7th, 2015, are multiple accounts being transferred
with this single Exhibit 1?

A.   No.  This Exhibit 1 refers to Ferkingstad's
account only.

Q.   Then why is it "each and every one of the
Assets," plural?

A.   So in Exhibit 1A, Exhibit 12 -- sorry -- for
this, in this particular case Ferkingstad had one
account at Unity Hospital that she had not paid.
There could have been multiple accounts, so that to me
would indicate multiple assets, and those would have
been listed in this Exhibit 12.

Q.   So the Exhibit 11, which in your testimony

26

is individualized for Ms. Ferkingstad, --

A.   Yes.

Q.   -- there's a reference to multiple assets
even though, at least in Exhibit 12, there's only one
of them; correct?

MR. KLUTHO:  Very astute, counsel.

A.   Yes.

Q.   Okay.  And you'd agree with me that Exhibit
12 is not the Exhibit 1A referenced in Exhibit 11.

A.   Correct.

Q.   Okay.  Where is Exhibit 1A that's referenced
in Exhibit 11?

MR. KLUTHO:  That is it.

MR. SCHWIEBERT:  Counsel.

A.   Yes.  So this one that's dated 10/13 of '15
is what was sent to court.  That's not the one that I
looked at on 10/7 of '15.  And the reason for that,
and this is partly Bonnie's to say, but has to do with
the interest that was accrued on this account.  The
principal balance was the same, and that's what I
refer to when I'm looking at this.  The principal
balance listed on this Exhibit 1A is the same for
Exhibit 11 and 12.

Q.   I think my question was much simpler than
that.

27

Q.   Okay.

Q.   Where is --
Well let me put it this way.  Did you bring
with us today the Exhibit 1A that was attached to
Exhibit 11?

A.   When I --
At the time I signed it?

Q.   Yes.

A.   No, because it no longer exists.

Q.   Well all that's getting transferred is, and
we're going to skip some language --

A.   Umm-hmm.

Q.   -- those that are -- assets as listed in
Exhibit 1A attached hereto.

A.   Correct.  And this is the updated, amended
1A.

Q.   But this is not the 1A that you attached
when you signed it.

A.   Correct.

Q.   Okay.  And that document hasn't been
provided by Allina.

A.   No.

Q.   I think you said that document no longer
exists.

A.   Well I guess I shouldn't say that.  I do not

28

have a copy of it.
And again, the principal balance is the
same, which is what I review when I look at this
document to sign off on it.

Q.   Is there ever an Exhibit 1A that is attached
to this Exhibit 1 at the time you sign it?

A.   Umm-hmm.  Yes.

Q.   Okay.  You keep using the word "review,"
that's why I'm trying to figure out exactly what
this...
Is there, at your office, a copy of Exhibit
11 that has the Exhibit 1A that's attached to it?

A.   No.

Q.   Okay.

A.   This is the Exhibit 1A that goes with this
document.

Q.   Well but we know that that's not the Exhibit
1A because that's not printed until the 13th of
October; --

MR. KLUTHO:  Objection, --

Q.   -- correct?

MR. KLUTHO:  -- argumentative, it misstates
her testimony.

A.   Correct.

Q.   Who drafts Exhibit 11 for your signature?

29

| | |
|---|---|
| 09:31:16 1 | A. Accounts Receivable Services. |
| 09:31:19 2 | Q. Somebody at ARS provides you with Exhibit 1 |
| 09:31:30 3 | -- |
| 09:31:30 4 | A. Well yep, Exhibit 11 for the court. |
| 09:31:33 5 | Q. -- for your signature. |
| 09:31:35 6 | A. Correct. |
| 09:31:36 7 | Q. Okay. At the time they provide it to you is |
| 09:31:39 8 | there an Exhibit 1A attached to it? |
| 09:31:41 9 | A. Yes. |
| 09:31:42 10 | Q. But we don't have that any more. |
| 09:31:43 11 | MR. KLUTHO: Counsel, objection; cruelty to |
| 09:31:46 12 | animals, beating a dead horse. Asked and answered. |
| 09:31:51 13 | A. What he said. |
| 09:31:53 14 | Q. We don't have that, do we? |
| 09:31:55 15 | A. No. |
| 09:31:55 16 | Q. No. |
| 09:31:59 17 | Exhibit 11 uses the defined term on each |
| 09:32:06 18 | Transfer Date, capital D, capital T; correct? |
| 09:32:10 19 | A. Correct. |
| 09:32:12 20 | Q. Where is the "transfer date" defined in |
| 09:32:14 21 | Exhibit 1, Exhibit 11 of the deposition? |
| 09:32:19 22 | A. There is no definition. The date on this |
| 09:32:23 23 | document, however, is October 7th, 2015. |
| 09:32:26 24 | Q. That's the date you signed it. |
| 09:32:27 25 | A. Correct. |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

30

| | |
|---|---|
| 09:32:28 1 | Q. Okay. There's the word "Ferkingstad" that |
| 09:32:33 2 | appears on Exhibit 11; correct? |
| 09:32:35 3 | A. It's a name, not a word, but yes. |
| 09:32:38 4 | Q. Well it's part of a name. |
| 09:32:39 5 | A. Okay. |
| 09:32:41 6 | Q. So part of a name appears on Exhibit 11; |
| 09:32:44 7 | correct? |
| 09:32:45 8 | A. Ferkingstad appears on Exhibit 11, correct. |
| 09:32:47 9 | Q. Yeah. And you'd agree with me that's in a |
| 09:32:51 10 | different size and font than the rest of the document. |
| 09:32:56 11 | A. Not an expert, but sure, it looks different. |
| 09:33:00 12 | Q. Okay. Is that a sticker? |
| 09:33:03 13 | A. No. It's typed on there. |
| 09:33:07 14 | Q. Why is it typed on there in a different font |
| 09:33:10 15 | and size? |
| 09:33:12 16 | MR. KLUTHO: It's exciting, isn't it? |
| 09:33:13 17 | A. Well my guess, and again I don't prepare |
| 09:33:15 18 | these documents, so this is a guess on my part, is |
| 09:33:19 19 | that this is standard, the top section, and then the |
| 09:33:22 20 | bottom changes with every one that they send to me |
| 09:33:25 21 | that has a different patient name on it. |
| 09:33:28 22 | Q. It doesn't have a patient name, does it? |
| 09:33:29 23 | MR. KLUTHO: It does, counsel. |
| 09:33:31 24 | A. Ferkingstad is the patient's name. |
| 09:33:33 25 | Q. Do you know how many Ferkingstads there are |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

31

| | |
|---|---|
| 09:33:34 1 | in Minnesota? |
| 09:33:35 2 | A. Well I guess when it goes with Exhibit 1A, |
| 09:33:38 3 | that there's one Andrea H. Ferkingstad. |
| 09:33:42 4 | Q. But it doesn't say Andrea H. Ferkingstad on |
| 09:33:44 5 | Exhibit 11, does it? |
| 09:33:46 6 | A. No. |
| 09:33:46 7 | MR. KLUTHO: Counsel, did you listen to |
| 09:33:47 8 | what she just said? |
| 09:33:50 9 | Q. And we don't have, to discuss, the actual |
| 09:33:53 10 | Exhibit 1A that was attached to Exhibit 11; do we? |
| 09:33:59 11 | A. No. But I can tell you with absolute |
| 09:34:02 12 | certainty it is regarding this same account; Unity |
| 09:34:06 13 | Hospital 3/23 of 2011. |
| 09:34:09 14 | Q. Okay. But none of that is in Exhibit 11. |
| 09:34:12 15 | A. No. |
| 09:34:13 16 | Q. No. |
| 09:34:14 17 | So if another of the 37 Ferkingstads in the |
| 09:34:21 18 | State of Minnesota went into one of the vast numbers |
| 09:34:26 19 | of Allina Hospitals, there would be more than one |
| 09:34:29 20 | Ferkingstad account in Allina's system; correct? |
| 09:34:32 21 | MR. KLUTHO: Object to the form of the |
| 09:34:33 22 | question, argumentative, vexatious. |
| 09:34:37 23 | Tell him again how the exhibits go |
| 09:34:39 24 | together, maybe he'll hear it this time. |
| 09:34:41 25 | A. So they go together, both of these pages. |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

32

| | |
|---|---|
| 09:34:44 1 | When I get one, I get a second one that goes with it. |
| 09:34:48 2 | And so I'll review here's page 1, here's page 2, it |
| 09:34:52 3 | even lists out my account number which is different |
| 09:34:55 4 | than Accounts Receivable Services' account number. |
| 09:34:58 5 | I'll review this account in our system to see, yes, do |
| 09:35:02 6 | I agree with them, or no, do I not agree with them, |
| 09:35:05 7 | and then sign Exhibit 11, my signature, that date. |
| 09:35:15 8 | Q. On Exhibit 12, which is not the actual |
| 09:35:19 9 | Exhibit 1A, there's a number under Unity Hospital. |
| 09:35:22 10 | That is the Allina account number? |
| 09:35:24 11 | A. Correct. |
| 09:35:27 12 | MR. KLUTHO: Counsel, is this funny? |
| 09:35:28 13 | A. Visit number, if you want to get specific, |
| 09:35:31 14 | yes. |
| 09:35:34 15 | MR. KLUTHO: You keep -- |
| 09:35:34 16 | Q. So if somebody who has an account has more |
| 09:35:37 17 | than one visit there would be a separate visit number |
| 09:35:38 18 | there. |
| 09:35:39 19 | A. Correct. |
| 09:35:40 20 | MR. KLUTHO: Objection, asked and answered. |
| 09:35:41 21 | THE WITNESS: Sorry. |
| 09:35:42 22 | MR. KLUTHO: That's all right. |
| 09:35:54 23 | Q. When you get Exhibit 1A from ARS is there |
| 09:36:00 24 | just one account on there, or is there a whole list of |
| 09:36:05 25 | accounts? |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

33

09:36:05 1     A.   I already answered that as well, and there
09:36:08 2 can be depending on the debt for that particular
09:36:11 3 patient.  There could be one account, there could be a
09:36:13 4 whole page of accounts.
09:36:15 5     Q.   Okay.  For Ferkingstad, do you know --
09:36:18 6     A.   Ferkingstad there is only this one account.
09:36:20 7     Q.   Well you're looking at the document that's
09:36:22 8 not actually Exhibit 1A; correct?
09:36:24 9     MR. KLUTHO:  Counsel --
09:36:25 10     A.   As far as I'm concerned it is Exhibit 1A,
09:36:27 11 and yes, it's only this one account.
09:36:30 12     Q.   So if you, on the same October 7th you
09:36:35 13 transferred to ARS a debt for Schwiebert --
09:36:40 14     A.   Umm-hmm.
09:36:40 15     Q.   -- there would be a separate page entitled
09:36:44 16 Exhibit 1A --
09:36:46 17     MR. KLUTHO:  Objection, --
09:36:47 18     Q.   -- for Schwiebert.
09:36:48 19     MR. KLUTHO:  -- you're misrepresenting the
09:36:50 20 testimony.  There'd be an entirely separate document,
09:36:53 21 counsel.
09:36:53 22     A.   Correct.  I'm confused on what you're
09:36:55 23 asking.
09:36:56 24     Do you have an outstanding debt that you
09:36:57 25 want me to look at?

34

09:36:58 1     Q.   Here's what I'm trying to figure out.
09:37:00 2     Is it a stack of a hundred Exhibit 1's with
09:37:04 3 one Exhibit -- this isn't the actual one, but we're
09:37:06 4 going to use it as model -- that has a hundred
09:37:08 5 accounts on it and you go through each of the Exhibit
09:37:10 6 1's and match and see --
09:37:12 7     A.   No.
09:37:12 8     Q.   -- and say yes, --
09:37:13 9     MR. KLUTHO:  Object --
09:37:13 10     A.   No.
09:37:14 11     Q.   -- or they're paired up one-two, for each
09:37:18 12 Exhibit 1 that you're presented with?
09:37:20 13     MR. KLUTHO:  Object to the form of the
09:37:21 14 question.
09:37:21 15     You do the best you can to explain to him
09:37:23 16 how it works.
09:37:25 17     THE WITNESS:  Okay.
09:37:25 18     A.   You get Exhibit 1 for whatever patient is
09:37:28 19 listed here, in this case Andrea Ferkingstad.
09:37:30 20     Q.   Right.  Just "Ferkingstad."
09:37:32 21     MR. KLUTHO:  Counsel, stop.
09:37:32 22     A.   But it is for Andrea; right?
09:37:34 23     We know that that's what we're here about?
09:37:36 24     Q.   I don't know how you know that.
09:37:38 25     A.   Okay.  So --

35

09:37:38 1     MR. KLUTHO:  Explain to him again how you
09:37:40 2 know that, because he can't hear.
09:37:42 3     THE WITNESS:  Apparently not.
09:37:44 4     A.   So I know that because it goes with Exhibit
09:37:45 5 1A and it has Andrea Ferkingstad's name on it.  So
09:37:48 6 yes, I get page -- Exhibit 11 and Exhibit 12, they go
09:37:52 7 together.  I sign Exhibit 11 --
09:37:57 8     Q.   And then you throw away Exhibit 1A.
09:38:01 9     A.   -- in regards to this.
09:38:03 10     MR. KLUTHO:  Object to the form of the
09:38:04 11 question.
09:38:04 12     A.   I don't throw it away, no.
09:38:06 13     Q.   Well if you don't have it, what happened to
09:38:08 14 it?
09:38:11 15     A.   When I look at both of these documents I
09:38:14 16 send them both back to Accounts Receivable Services.
09:38:18 17     Q.   So they should have the Exhibit 1A that's at
09:38:25 18 least dated before or on or before October 7th.
09:38:29 19     A.   Correct.
09:38:30 20     Q.   Exhibit 13.  You're familiar with Exhibit
09:39:15 21 13?
09:39:15 22     A.   I'm very familiar with it.
09:39:16 23     Q.   Did you print Exhibit 13?
09:39:19 24     A.   Well, maybe.  This looks exactly like the
09:39:23 25 copy that I entered as Exhibit 14, so.  Who exactly

36

09:39:29 1 printed this particular copy, I couldn't tell you, but
09:39:33 2 I printed one similar that we entered as Exhibit 14.
09:39:36 3     Q.   Would you rather look at that one, is that
09:39:38 4 easier for you?
09:39:38 5     A.   Well it's a cleaner copy, but no, it's the
09:39:41 6 exact same thing, so we can talk about 13.
09:39:44 7     Q.   This is a screenshot of some account
09:39:49 8 information on Allina's computer system; correct?
09:39:54 9     A.   This is actually what's called an itemized
09:39:56 10 bill of Andrea Ferkingstad's account.  That "Visit ID"
09:40:01 11 number at the top is the same one that matches in
09:40:03 12 Exhibit 1A.
09:40:06 13     Q.   But this was printed from Allina's computer
09:40:08 14 system.
09:40:08 15     A.   Correct.
09:40:09 16     Q.   Okay.  When is the information about the
09:40:19 17 patient's accounts transferred to ARS?
09:40:23 18     MR. KLUTHO:  Don't answer that question.
09:40:24 19 With respect to Ms. Ferkingstad's account you can
09:40:27 20 answer it.
09:40:28 21     THE WITNESS:  Okay.
09:40:30 22     A.   Are you -- I need to ask a clarifying
09:40:32 23 question.  Are you asking when we sold the debt to
09:40:34 24 Accounts Receivable Services?
09:40:35 25     Q.   No.  No.

37

| | |
|---|---|
| 09:40:36 1 | **A.** Or when we transferred it to them to work |
| 09:40:38 2 | further -- for further collections -- |
| 09:40:40 3 | **Q.** Neither of those. |
| 09:40:41 4 | **A.** -- because it was unpaid. |
| 09:40:44 5 | **Q.** You told me that ARS provides you Exhibit 1 |
| 09:40:45 6 | and Exhibit 1A that we don't have, together. They |
| 09:40:49 7 | print out Exhibit 1A. |
| 09:40:50 8 | **A.** Yes. |
| 09:40:51 9 | **Q.** That means they have to already have the |
| 09:40:52 10 | information about the account before Exhibit 1, |
| 09:40:55 11 | Exhibit 11 of the deposition, -- |
| 09:40:56 12 | **A.** Correct. |
| 09:40:57 13 | **Q.** -- is created. |
| 09:40:58 14 | **A.** Correct. |
| 09:40:58 15 | **Q.** And you -- your testimony, as I understand |
| 09:41:01 16 | it, is the debt is not transferred prior to October |
| 09:41:05 17 | 7th of 2015; correct? |
| 09:41:07 18 | MR. KLUTHO: Counsel, do you remember at |
| 09:41:08 19 | the beginning of the deposition where you told her |
| 09:41:11 20 | you were going to let her answer your questions |
| 09:41:13 21 | without cutting her off, and you cut her off and she |
| 09:41:15 22 | was explaining the transfer prior to that date? |
| 09:41:19 23 | Do you want her to tell you about that or |
| 09:41:20 24 | not? |
| 09:41:22 25 | **Q.** You'd agree with me that it's Allina's |

38

| | |
|---|---|
| 09:41:25 1 | position that Andrea Ferkingstad's debt was in |
| 09:41:29 2 | Allina's position on October 6th, 2015; correct? |
| 09:41:33 3 | MR. KLUTHO: Object to the form of the |
| 09:41:35 4 | question. In its, what did you say, "position"? |
| 09:41:38 5 | **Q.** October 6th, 2015. Possession. |
| 09:41:41 6 | **A.** Possession. |
| 09:41:42 7 | **Q.** Possession. |
| 09:41:42 8 | **A.** Okay. It was still owned by Allina at that |
| 09:41:45 9 | point. Reliance Recoveries would have been working |
| 09:41:48 10 | it. Still owned by Allina. |
| 09:41:55 11 | **Q.** On October 6th, 2015 the debt is owned by |
| 09:42:01 12 | Allina. |
| 09:42:02 13 | MR. KLUTHO: What's so funny, counsel? Why |
| 09:42:04 14 | do you keep laughing? |
| 09:42:06 15 | **Q.** But financial information regarding that |
| 09:42:08 16 | account has already been given to ARS. |
| 09:42:13 17 | **A.** "Financial information," I guess I'm not |
| 09:42:14 18 | sure what you mean by that, but the account has -- |
| 09:42:17 19 | that information has -- they have been working it. |
| 09:42:20 20 | **Q.** What do you mean by "have been working it"? |
| 09:42:23 21 | **A.** They would have been actively collecting on |
| 09:42:25 22 | that account. That's -- |
| 09:42:28 23 | **Q.** When did that start? |
| 09:42:33 24 | **A.** (Witness reviewing Exhibit 14.) |
| 09:42:36 25 | We referred that account to them on August |

39

| | |
|---|---|
| 09:42:39 1 | 24th, 2011. |
| 09:42:42 2 | **Q.** How do you know that? |
| 09:42:44 3 | **A.** Because I looked it up in my computer |
| 09:42:45 4 | system. |
| 09:42:50 5 | **Q.** Somebody at Allina decided, on October 24th |
| 09:42:53 6 | of 2011, to transfer -- well to allow ARS to work on |
| 09:43:01 7 | Ms. Ferkingstad's account. |
| 09:43:03 8 | **A.** Correct. |
| 09:43:04 9 | **Q.** Is there any agreement that provides for |
| 09:43:05 10 | that? |
| 09:43:06 11 | **A.** We have a Business Associates Agreement with |
| 09:43:12 12 | Accounts Receivable Services. |
| 09:43:14 13 | **Q.** And pursuant to that Business Associates |
| 09:43:23 14 | Agreement -- |
| 09:43:23 15 | MR. KLUTHO: Counsel, what's so funny? |
| 09:43:25 16 | **Q.** -- ARS has -- |
| 09:43:26 17 | MR. KLUTHO: Would you stop laughing? |
| 09:43:27 18 | **Q.** -- access to the account information from |
| 09:43:30 19 | Allina's financial system; correct? |
| 09:43:33 20 | **A.** Correct. |
| 09:43:34 21 | **Q.** And that's how, according to your testimony, |
| 09:43:36 22 | they're able to print out the Exhibit 1A that was |
| 09:43:41 23 | actually attached to Exhibit 11. |
| 09:43:45 24 | **A.** They -- They were working the debt, so I |
| 09:43:47 25 | guess I'm confused by your question. |

40

| | |
|---|---|
| 09:43:49 1 | **Q.** Well they don't own the debt yet. |
| 09:43:52 2 | **A.** Correct. |
| 09:43:52 3 | **Q.** But they have to have access to your |
| 09:43:55 4 | financial system to print out the Exhibit 1A to attach |
| 09:44:00 5 | it to Exhibit 11 for your signature; -- |
| 09:44:06 6 | **A.** Yes. |
| 09:44:07 7 | **Q.** -- correct? |
| 09:44:07 8 | **A.** We send them an electronic file with the |
| 09:44:11 9 | accounts that we're asking them to work for further |
| 09:44:14 10 | collections, and so they have a system that they work |
| 09:44:18 11 | out of as well for doing their collections work. |
| 09:44:29 12 | Is that what you're getting at? |
| 09:44:34 13 | **Q.** When -- |
| 09:44:36 14 | It uses the term "Reliance Recoveries," but |
| 09:44:38 15 | we understand that's ARS. When ARS prints the Exhibit |
| 09:44:41 16 | 1A, are they printing it from their system, or are |
| 09:44:45 17 | they printing it from Allina's system? |
| 09:44:48 18 | **A.** From their system. |
| 09:44:49 19 | **Q.** Okay. Which contains information that |
| 09:44:51 20 | Allina has already given. |
| 09:44:52 21 | **A.** Correct. |
| 09:44:53 22 | **Q.** Who makes the decision when a particular |
| 09:44:56 23 | account, in this example the Ferkingstad account, is |
| 09:44:59 24 | going to move from ARS working that account to a Bill |
| 09:45:04 25 | of Sale? |

41

| | |
|---|---|
| 09:45:07 1 | A. ARS makes that suggestion that at that point |
| 09:45:12 2 | they have worked it as far as they can with their |
| 09:45:14 3 | tools, so at that point the Bill of Sale is suggested. |
| 09:45:33 4 | Q. On Exhibit 13, which is the Allina Health -- |
| 09:45:38 5 | A. Itemized bill. |
| 09:45:41 6 | Q. -- from Allina's financial records. |
| 09:45:44 7 | A. Correct. |
| 09:45:47 8 | Q. We have the account for Andrea N. |
| 09:45:52 9 | Ferkingstad; correct? |
| 09:45:54 10 | A. Correct. |
| 09:45:55 11 | Q. Okay. And on November 10th of 2015 there's |
| 09:46:03 12 | an adjustment that is made to this account for "BAD |
| 09:46:11 13 | DEBT FINAL REFERRAL A" in the amount of $696.47; |
| 09:46:21 14 | correct? |
| 09:46:22 15 | A. Correct. |
| 09:46:24 16 | Q. If Exhibit 13 had been printed -- |
| 09:46:27 17 | Oh. And if you turn the page we see that |
| 09:46:32 18 | the balance in Exhibit 13 on the Andrea Ferkingstad |
| 09:46:36 19 | account as of at least October -- I'm sorry -- |
| 09:46:42 20 | November 10th, 2015 is zero. |
| 09:46:44 21 | MR. KLUTHO: Counsel, I again object to |
| 09:46:46 22 | your continued laughter. Please refrain from |
| 09:46:51 23 | laughing. Can you do that for me? |
| 09:46:54 24 | A. Yes. |
| 09:46:57 25 | Q. If Exhibit 13 had been printed on November |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

42

| | |
|---|---|
| 09:47:01 1 | 9th, 2015 there would still be a balance of $696.47; |
| 09:47:08 2 | correct? |
| 09:47:08 3 | A. Correct. |
| 09:47:26 4 | MR. KLUTHO: Would you like to ask her why? |
| 09:47:39 5 | Q. Exhibit Number 5 is a list of topics for the |
| 09:47:42 6 | 30(b)(6) deposition; correct? |
| 09:47:54 7 | A. Correct. |
| 09:47:56 8 | Q. Are you prepared to testify on behalf of |
| 09:47:58 9 | Allina Health Systems on each of those topics? |
| 09:48:03 10 | A. Yes. |
| 09:48:07 11 | Q. Let's start with topic number 9. |
| 09:48:17 12 | A. Okay. |
| 09:48:17 13 | Q. What did you do to prepare to testify on |
| 09:48:19 14 | topic number 9? |
| 09:48:23 15 | A. I reviewed Exhibit 11 and 12. |
| 09:48:30 16 | Q. Anything else? |
| 09:48:33 17 | A. No. |
| 09:48:34 18 | Q. Other than talking to counsel, did you speak |
| 09:48:35 19 | to anybody else at Allina regarding topic number 9? |
| 09:48:44 20 | A. "Exhibit 1 - Bill of Sale." No. My boss is |
| 09:48:46 21 | aware I'm here today, but not particularly about Bill |
| 09:48:49 22 | of Sale. |
| 09:48:49 23 | Q. Other than counsel, did you speak to anyone |
| 09:48:53 24 | in preparation to testify on topic number 9? |
| 09:49:02 25 | A. No. |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

43

| | |
|---|---|
| 09:49:03 1 | Q. I asked a question that was limited to |
| 09:49:05 2 | Allina. |
| 09:49:06 3 | Did you talk to ARS, did you talk to the |
| 09:49:08 4 | people who do your accounting software, did you talk |
| 09:49:10 5 | to anyone in preparation to testify on topic number 9 |
| 09:49:13 6 | besides counsel? |
| 09:49:15 7 | A. Yes. |
| 09:49:15 8 | Q. Who? |
| 09:49:17 9 | A. Bonnie Drennen. |
| 09:49:20 10 | Q. When did that conversation take place? |
| 09:49:23 11 | A. Thursday. |
| 09:49:25 12 | Q. Last Thursday. |
| 09:49:25 13 | A. Correct. |
| 09:49:26 14 | Q. How long was that conversation? |
| 09:49:28 15 | A. I don't remember. |
| 09:49:30 16 | Q. Did you meet face to face or over the phone? |
| 09:49:33 17 | A. We met face to face. |
| 09:49:34 18 | Q. Where was the meeting? |
| 09:49:35 19 | A. In this office. |
| 09:49:42 20 | Q. What did Ms. Dresden [ph] tell you in |
| 09:49:47 21 | preparation for your testimony regarding Exhibit |
| 09:49:50 22 | number 9? |
| 09:49:51 23 | MR. KLUTHO: First I'm going to object, her |
| 09:49:53 24 | name is Drennen, not Dresden. Secondly, I |
| 09:49:56 25 | represented both those individuals, and I met with |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

44

| | |
|---|---|
| 09:49:58 1 | them to get ready for this fishing expedition that |
| 09:50:02 2 | we're on right now, and everything we talked about is |
| 09:50:05 3 | protected by the attorney-client privilege. |
| 09:50:07 4 | BY MR. SCHWIEBERT: |
| 09:50:09 5 | Q. Understanding I'm not looking for anything |
| 09:50:11 6 | said to or from counsel, please tell me everything |
| 09:50:15 7 | that you said and Ms. Drennen said during that |
| 09:50:20 8 | conversation. |
| 09:50:21 9 | MR. KLUTHO: Same objection. |
| 09:50:23 10 | A. I don't remember specifically. We reviewed |
| 09:50:25 11 | all of these documents. |
| 09:50:32 12 | Q. Did you review any other documents? |
| 09:50:34 13 | A. No. |
| 09:50:37 14 | Q. Did Ms. Drennen tell you anything about |
| 09:50:44 15 | Exhibit 1 the Bill of Sale? |
| 09:50:47 16 | A. No. |
| 09:50:51 17 | Q. Topic number 10: The Purchase of Business |
| 09:50:56 18 | Agreement as of October 7th, 2015 referenced in |
| 09:51:00 19 | Exhibit 1 - Bill of Sale. |
| 09:51:03 20 | What'd you do to prepare to testify on that |
| 09:51:05 21 | topic? |
| 09:51:06 22 | A. Reviewed the Blanket Purchase Agreement. Do |
| 09:51:09 23 | you want me to tell you which exhibit number that is? |
| 09:51:14 24 | We've discussed it a lot. Exhibit 7. |
| 09:51:19 25 | Q. Did you do anything else? |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

45

09:51:22  1     A.   No.

09:51:22  2     Q.   Other than talking with counsel did you

09:51:24  3   speak with anyone to prepare to testify on topic

09:51:26  4   number 10?

09:51:28  5     A.   No.

09:51:30  6     Q.   When did you join Allina?

09:51:32  7     A.   2002.

09:51:35  8     Q.   How long have you been in your current

09:51:37  9   position?

09:51:40  10    A.   Six years.

09:51:44  11    Q.   So 2011?

09:51:47  12    A.   Sounds about right.

09:51:56  13    Q.   I may have already asked you this, I

09:51:58  14  apologize if I did.

09:51:59  15         Did you do anything else to prepare on topic

09:52:01  16  number 10?

09:52:02  17    A.   No.

09:52:03  18    Q.   Topic number 11.  The, quote, Exhibit 1A --

09:52:12  19  redacted attached hereto as Exhibit F.

09:52:14  20         What did you did to prepare to testify on

09:52:16  21  that topic?

09:52:16  22    A.   Reviewed the document.

09:52:18  23    Q.   Did you speak to anybody else in preparation

09:52:20  24  to testify on that topic?

09:52:21  25    A.   Not other than what we've already discussed,

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

---

46

09:52:23  1   no.

09:52:27  2     Q.   Other than counsel, did you speak to anybody

09:52:30  3   specific to the Exhibit 1A redacted?

09:52:34  4     A.   I feel like we already talked about that we

09:52:36  5   discussed the whole packet of documents at that

09:52:38  6   meeting on Thursday.

09:52:41  7     Q.   Did Ms. Drennen tell you anything

09:52:43  8   specifically related to Exhibit 12, the Exhibit 1A

09:52:46  9   redacted?

09:52:48  10    A.   No.

09:52:48  11    Q.   Do you know how it's been redacted?

09:52:52  12    A.   Well they all say redacted, so my assumption

09:52:56  13  is that it's redacted specific to the Ferkingstad

09:53:00  14  account.  If she had other debts owed I would guess

09:53:06  15  that they'd be listed there too.

09:53:08  16    Q.   But you don't know anything that's actually

09:53:10  17  been redacted off of the version of Exhibit 1A that

09:53:14  18  you looked at when you signed the Bill of Sale?

09:53:16  19    A.   Correct.

09:53:18  20    Q.   It is correct that you don't know that

09:53:20  21  anything was redacted off of it.

09:53:21  22    A.   Yes, counsel.

09:53:32  23    Q.   Exhibit 12:  "The billing records attached

09:53:36  24  hereto as Exhibit G," I affectionately call the Bad

09:53:41  25  Debt Final Referral document.

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

---

47

09:53:43  1     A.   Umm-hmm.

09:53:44  2     Q.   What did you do to prepare to testify on

09:53:45  3   that topic?

09:53:46  4          MR. KLUTHO:  I'll object to the form of the

09:53:47  5   question.

09:53:48  6     Q.   Let me rephrase.

09:53:49  7          What did you do to prepare to testify on

09:53:50  8   topic number 12?

09:53:52  9     A.   I reviewed the document that was included,

09:53:55  10  and I also reviewed Ferkingstad's account in our

09:53:59  11  system.

09:54:01  12    Q.   Did you bring any printouts of the account

09:54:04  13  in your system for -- to assist you in today's

09:54:07  14  testimony?

09:54:08  15    A.   Yes, Exhibit 14.

09:54:09  16    Q.   Did you review anything else besides Exhibit

09:54:11  17  14?

09:54:11  18    A.   I reviewed the history of the account.

09:54:14  19    Q.   Okay.  But you didn't bring a history of the

09:54:16  20  account with you other than what appears in Exhibit

09:54:18  21  14.

09:54:18  22         MR. KLUTHO:  You haven't looked at the

09:54:20  23  Exhibit 14.

09:54:21  24    A.   I'd say I just handwrote some notes for my

09:54:24  25  own reference.

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

---

48

09:54:26  1     Q.   Okay.  What do the handwritten notes

09:54:28  2   reflect?

09:54:29  3     A.   The handwritten notes reflect the different

09:54:32  4   letters that we sent to Andrea Ferkingstad and the

09:54:35  5   date that we sent them, and then when we referred the

09:54:38  6   account to ARS for collections, further collections.

09:54:49  7     Q.   Did you do anything else to prepare to

09:54:50  8   testify on topic number 12?

09:54:52  9     A.   No.

09:54:55  10    Q.   Did you speak to anyone, besides counsel, in

09:54:58  11  preparing to testify on topic number 12?

09:55:00  12    A.   No.

09:55:11  13    Q.   The Suit Authorization and Assignment

09:55:14  14  document, topic number 7, which is Deposition Exhibit

09:55:34  15  Number 8.

09:55:35  16    A.   Eight.

09:55:39  17    Q.   As I understand your testimony, it is not

09:55:42  18  Allina's position that Exhibit 8 transferred the debt

09:55:47  19  from Allina to ARS; correct?

09:55:49  20    A.   Correct.

09:55:59  21    Q.   Exhibit 8 is dated October 7th of 2015;

09:56:04  22  correct?

09:56:05  23    A.   Correct.

09:56:06  24    Q.   Why is this document being approved by you

09:56:12  25  on the same day as the Bill of Sale -- Exhibit 1, Bill

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

49

09:56:17 1 of Sale document, Exhibit Number 11?

09:56:22 2 **A.** I'm confused. What do you mean, "why"?

09:56:26 3 **Q.** Why did you --

09:56:26 4 **A.** Are you asking why did I sign them on the

09:56:29 5 same day?

09:56:30 6 MR. KLUTHO: No. What's its effect is what

09:56:31 7 he's asking you.

09:56:31 8 **Q.** No.

09:56:32 9 **A.** Oh.

09:56:32 10 **Q.** It's not -- It's not signed by Allina.

09:56:34 11 There's a blank. Allina never signed it; correct?

09:56:37 12 MR. KLUTHO: No. It is her signature.

09:56:38 13 **A.** Well "ALLINA HEALTH APPROVED BY," and J.

09:56:41 14 Fountain is me.

09:56:42 15 **Q.** Okay. So there are two blanks for

09:56:44 16 signature, one for Allina Health, and one for an

09:56:46 17 approved by; correct?

09:56:47 18 MR. KLUTHO: Object to the form of the

09:56:48 19 question, counsel. You can interpret it any way you

09:56:49 20 want. There's one signature, one place to sign, she

09:56:53 21 signed it. Quit fighting it.

09:56:57 22 **A.** I signed this document, yes.

09:56:58 23 **Q.** Under the blank for "approved by."

09:57:00 24 **A.** Correct.

09:57:01 25 **Q.** Nobody signed it on the blank for Allina

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

50

09:57:03 1 Health; correct?

09:57:05 2 **A.** I don't take that as a blank for there, I

09:57:07 3 take it as "Allina Health Approved By," and me. So

09:57:11 4 yes, however you want to interpret that, there's only

09:57:18 5 one signature, it's mine.

09:57:19 6 **Q.** On the line "APPROVED BY."

09:57:21 7 MR. KLUTHO: Oh my gosh.

09:57:22 8 **A.** Yes.

09:57:23 9 **Q.** Okay. So why on October 7th are we --

09:57:27 10 Let me ask it this way: Which gets signed

09:57:29 11 first, Deposition Exhibit 11 or Deposition Exhibit 8?

09:57:40 12 **A.** They go together. I sign them both

09:57:43 13 together. So as far as which one I sign first, I

09:57:47 14 couldn't actually tell you.

09:57:51 15 **Q.** If, as Allina intends, Exhibit 11

09:57:57 16 transfers -- sells, I'm sorry, Ms. Ferkingstad's

09:58:04 17 account from Allina to ARS, why is Exhibit 8 signed by

09:58:08 18 you?

09:58:12 19 **A.** At the time I thought that we needed to have

09:58:14 20 a Suit Authorization as well as the Bill of Sale

09:58:21 21 signed. Standard operating procedure was to sign both

09:58:35 22 documents.

09:58:35 23 **Q.** Why?

09:58:40 24 **A.** Why not? It --

09:58:41 25 **Q.** Why is that the standard operating

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

51

09:58:43 1 procedure?

09:58:43 2 MR. KLUTHO: Counsel, do you keep cutting

09:58:45 3 her off on purpose?

09:58:48 4 **Q.** I apologize if I cut you off. Please

09:58:50 5 complete your answer.

09:58:51 6 **A.** Okay. From my interpretation, we wanted

09:58:56 7 both documents signed kind of as a cover yourself

09:58:59 8 answer. So they're going to conciliation court

09:59:06 9 thinking we'd need this signed by Allina as well.

09:59:16 10 **Q.** Exhibits 11 and 8 are signed by you knowing

09:59:19 11 that ARS is going to conciliation court.

09:59:25 12 **A.** The -- That's my assumption. Now there

09:59:28 13 could be circumstances where they choose not to, and

09:59:31 14 because we've sold them that debt that's their right.

09:59:34 15 **Q.** But your understanding of why you're signing

09:59:37 16 Exhibits 11 is so that ARS can go to conciliation

09:59:43 17 court.

09:59:45 18 **A.** Yes.

09:59:47 19 **Q.** And your --

09:59:48 20 **A.** They can further -- further their collection

09:59:50 21 efforts. We're selling them the debt so they can

09:59:52 22 further it, whatever they're doing with that.

09:59:54 23 **Q.** And you understand that that further step is

09:59:58 24 going to conciliation court.

09:59:59 25 **A.** Yes.

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

52

10:00:10 1 **Q.** And the standard operating procedure so that

10:00:14 2 ARS can go to conciliation court is to sign both an

10:00:19 3 Exhibit 1 Bill of Sale and a Suit Authorization and

10:00:23 4 Assignment document.

10:00:25 5 **A.** Correct.

10:00:29 6 **Q.** Is ARS a division of Allina Health?

10:00:31 7 **A.** I wouldn't say it's a division.

10:00:33 8 **Q.** Is ARS a wholly-owned subsidiary of Allina

10:00:36 9 Health?

10:00:36 10 **A.** Sounds about right.

10:00:39 11 **Q.** Do you know why the document calls them a

10:00:41 12 division?

10:00:46 13 **A.** Honestly, probably because we didn't know a

10:00:48 14 lawyer was going to tear it apart some day.

10:00:51 15 **Q.** Did you draft --

10:00:54 16 **A.** I did not draft that document, no.

10:00:56 17 **Q.** Where did you get this document? I mean, I

10:00:58 18 understand it's printed for your signature from --

10:01:00 19 Well I guess I didn't ask you that.

10:01:01 20 ARS prints, for your signature, Exhibit

10:01:05 21 Number 8?

10:01:05 22 **A.** Correct.

10:01:13 23 **Q.** Are there enclosed accounts with Exhibit 8?

10:01:19 24 **A.** It's the same exhibit that we keep going

10:01:21 25 back and forth on, they'd be together.

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

53

| | |
|---|---|
| 10:01:23 **1** | MR. KLUTHO:  Exhibit 11? |
| 10:01:25 **2** | A.    Exhibit 11. |
| 10:01:25 **3** | Q.    So we know it can't be Exhibit 11 because |
| 10:01:28 **4** | that's not printed by October 7th of 2015; correct? |
| 10:01:33 **5** | MR. KLUTHO:  What? |
| 10:01:36 **6** | MR. SCHWIEBERT:  Oh, I'm sorry. |
| 10:01:37 **7** | BY MR. SCHWIEBERT: |
| 10:01:38 **8** | Q.    Exhibit 8 makes reference to "accounts |
| 10:01:43 **9** | accompanying this suit authorization and agreement" at |
| 10:01:45 **10** | the top; correct? |
| 10:01:46 **11** | A.    Correct. |
| 10:01:46 **12** | Q.    And it makes reference to the assignment of |
| 10:01:52 **13** | the right, title and interest in the enclosed |
| 10:01:55 **14** | accounts. |
| 10:01:55 **15** | A.    Correct. |
| 10:01:58 **16** | Q.    Was there something attached to Exhibit 8? |
| 10:02:01 **17** | Exhibit 1A. |
| 10:02:04 **18** | Q.    Okay.  But we know Exhibit 1A is not what |
| 10:02:06 **19** | was attached to Exhibit 8 because Exhibit 8 was signed |
| 10:02:11 **20** | by you on October 7th of 2015, and Exhibit 12, |
| 10:02:18 **21** | entitled "EXHIBIT 1A," doesn't exist on that date; |
| 10:02:22 **22** | correct? |
| 10:02:22 **23** | A.    Correct.  And as I stated before, really all |
| 10:02:25 **24** | I care about when I'm looking at these documents is |
| 10:02:28 **25** | this account number that says Unity Hospital and what |

54

| | |
|---|---|
| 10:02:30 **1** | the principal balance is.  And that -- regardless of |
| 10:02:35 **2** | where the interest might have changed after I had |
| 10:02:38 **3** | reviewed this account it's still the same principal |
| 10:02:40 **4** | balance and the same account number.  And so yes, it |
| 10:02:43 **5** | was in reference to that document. |
| 10:02:55 **6** | Q.    The bold text at the bottom above the date |
| 10:02:58 **7** | says, in all bold, "ATTACHED HERETO IS A TRUE AND |
| 10:03:02 **8** | CORRECT ACCOUNT STATEMENT REFLECTING THE BALANCE DUE |
| 10:03:06 **9** | AND OWING AS OF THE DATE SET FORTH BELOW." |
| 10:03:10 **10** | A.    Correct. |
| 10:03:11 **11** | Q.    Okay.  But there is nothing attached to |
| 10:03:15 **12** | Exhibit 8; correct? |
| 10:03:16 **13** | MR. KLUTHO:  Well counsel, I'm going to |
| 10:03:18 **14** | object.  You have not attached anything to it, but it |
| 10:03:20 **15** | was at the time, so please stop. |
| 10:03:22 **16** | A.    Yes.  1A was attached. |
| 10:03:24 **17** | MR. KLUTHO:  Are you listening to what |
| 10:03:25 **18** | she's saying? |
| 10:03:26 **19** | Q.    Allina has not provided a copy of what was |
| 10:03:28 **20** | attached to this document at the time that it was |
| 10:03:30 **21** | signed; correct? |
| 10:03:31 **22** | A.    Correct.  Again, it would be the same -- |
| 10:03:37 **23** | it's really semantics that you're getting into.  It's |
| 10:03:40 **24** | the same account.  This is the account that your |
| 10:03:42 **25** | client owed as a debt.  We tried to collect on it, |

55

| | |
|---|---|
| 10:03:45 **1** | Reliance tried to collect on it, she didn't pay it. |
| 10:03:49 **2** | Then we sold it to Accounts Receivable Services.  Any |
| 10:03:52 **3** | way you want to slice it, that's how it happened. |
| 10:03:55 **4** | Q.    The word "FERKINGSTAD" appears on this |
| 10:03:59 **5** | document as well. |
| 10:04:02 **6** | A.    I'll go again that it's a name, not a word. |
| 10:04:02 **7** | Q.    Okay. |
| 10:04:04 **8** | A.    If I used that in Scrabble, it wouldn't |
| 10:04:07 **9** | count. |
| 10:04:08 **10** | Q.    The last name Ferkingstad appears on this |
| 10:04:09 **11** | document; correct? |
| 10:04:10 **12** | A.    Correct. |
| 10:04:11 **13** | Q.    All right.  If you look at Exhibit 11 next |
| 10:04:13 **14** | to it, you'd agree with me that the Ferkingstad last |
| 10:04:18 **15** | name that appears on Exhibit 8 and 11 are the same |
| 10:04:22 **16** | font and size; correct? |
| 10:04:24 **17** | MR. KLUTHO:  We'll stipulate. |
| 10:04:26 **18** | MR. SCHWIEBERT:  Excellent. |
| 10:04:26 **19** | MR. KLUTHO:  Move on. |
| 10:04:27 **20** | Q.    And you'd agree with me that the last name |
| 10:04:30 **21** | Ferkingstad that appears on Exhibit 8 is not the same |
| 10:04:33 **22** | font or size as the text that appears in Exhibit 8; |
| 10:04:37 **23** | correct? |
| 10:04:38 **24** | MR. KLUTHO:  Objection.  The document |
| 10:04:39 **25** | speaks for itself. |

56

| | |
|---|---|
| 10:04:44 **1** | A.    I'm confused on what you're asking me to |
| 10:04:46 **2** | look at. |
| 10:04:47 **3** | Q.    Exhibit 8 -- |
| 10:04:47 **4** | MR. KLUTHO:  He's asking you to compare |
| 10:04:49 **5** | fonts and things like that.  You're not here to do |
| 10:04:51 **6** | this. |
| 10:04:51 **7** | Move on.  This is vexatious.  We'll make a |
| 10:04:55 **8** | motion later on.  If you want to make a motion to |
| 10:04:57 **9** | compel over whether or not these documents speak for |
| 10:04:59 **10** | themselves or don't, be my guest.  Move on. |
| 10:05:02 **11** | She's not answering any more questions |
| 10:05:04 **12** | about your Ferkingstad fonts. |
| 10:05:07 **13** | Q.    There is text in Exhibit 8 that's both in |
| 10:05:12 **14** | bold and not in bold; correct? |
| 10:05:13 **15** | A.    Yes. |
| 10:05:14 **16** | Q.    Okay.  I read you a part of it that was in |
| 10:05:18 **17** | bold; -- |
| 10:05:18 **18** | A.    Yes. |
| 10:05:19 **19** | Q.    -- correct? |
| 10:05:19 **20** | You'd agree with me that where the last name |
| 10:05:23 **21** | "FERKINGSTAD" appears at the top of the document is |
| 10:05:27 **22** | different in its appearance than the text that's in |
| 10:05:32 **23** | bold above your signature; correct? |
| 10:05:34 **24** | MR. KLUTHO:  Counsel, did you hear me?  I |
| 10:05:35 **25** | said "move on."  She's not going to answer any more |

57

| | |
|---|---|
| 10:05:38 | 1   questions about your Ferkingstad typing -- font face, |
| 10:05:43 | 2   typeface, whatever you want to call it.  Move on. |
| 10:05:45 | 3           MR. SCHWIEBERT:  Are you instructing her |
| 10:05:46 | 4   not to answer? |
| 10:05:47 | 5           MR. KLUTHO:  I did, and then you asked more |
| 10:05:49 | 6   questions about it. |
| 10:05:50 | 7           MR. SCHWIEBERT:  Are you instructing her |
| 10:05:51 | 8   not to answer -- |
| 10:05:51 | 9           MR. KLUTHO:  Yes. |
| 10:05:52 | 10          MR. SCHWIEBERT:  -- on the basis of |
| 10:05:52 | 11  privilege? |
| 10:05:52 | 12          MR. KLUTHO:  On the basis of it's stupid. |
| 10:05:56 | 13          MR. SCHWIEBERT:  Are you bringing your |
| 10:05:56 | 14  motion now? |
| 10:05:57 | 15          MR. KLUTHO:  No.  I'm not going to waste |
| 10:06:00 | 16  the Court's time on this, you are. |
| 10:06:16 | 17  BY MR. SCHWIEBERT: |
| 10:06:16 | 18      Q.   Do you have the original of Exhibit 8 in |
| 10:06:20 | 19  your files? |
| 10:06:20 | 20      A.   No, I do not. |
| 10:06:23 | 21      Q.   You gave it to ARS. |
| 10:06:24 | 22      A.   Correct. |
| 10:06:23 | 23      Q.   And I think you told me that, but I just |
| 10:06:32 | 24  want to make sure the record's clear. |
| 10:06:34 | 25          You also don't have the original of your |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

59

| | |
|---|---|
| 10:08:21 | 1   2nd, 2016; correct? |
| 10:08:24 | 2       A.   Correct. |
| 10:08:24 | 3       Q.   And that is your signature that appears on |
| 10:08:26 | 4   the document; correct? |
| 10:08:27 | 5       A.   That is my signature, yes. |
| 10:08:29 | 6       Q.   Do you know why you provided this |
| 10:08:34 | 7   declaration on December 2nd of 2016? |
| 10:08:38 | 8           MR. KLUTHO:  I asked her to. |
| 10:08:41 | 9       A.   Because Michael asked me to. |
| 10:08:50 | 10      Q.   Did you draft Exhibit Number 9? |
| 10:08:53 | 11      A.   No. |
| 10:08:53 | 12      Q.   It was provided to you for your signature. |
| 10:08:56 | 13      A.   Correct.  For review and signature, yes. |
| 10:09:00 | 14      Q.   Okay.  So what did you do in your review |
| 10:09:02 | 15  prior to signing it? |
| 10:09:05 | 16      A.   Reviewed the information on it and didn't |
| 10:09:11 | 17  catch a typo. |
| 10:09:17 | 18      Q.   You signed this affidavit under penalty of |
| 10:09:21 | 19  perjury; correct? |
| 10:09:22 | 20      A.   Correct. |
| 10:09:22 | 21      Q.   What does that mean to you? |
| 10:09:25 | 22      A.   You go to jail for lying. |
| 10:09:29 | 23      Q.   Did you make a -- |
| 10:09:30 | 24      A.   Right? |
| 10:09:31 | 25      Q.   -- false statement in the declaration? |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

58

| | |
|---|---|
| 10:06:36 | 1   signed version of Exhibit 11; correct? |
| 10:06:38 | 2       A.   Correct. |
| 10:06:38 | 3       Q.   That would also be in ARS's possession. |
| 10:06:41 | 4           MR. KLUTHO:  Asked and answered. |
| 10:06:41 | 5       A.   Correct. |
| 10:07:08 | 6       Q.   Exhibit 9.  Oh, before we do that. |
| 10:07:15 | 7           Looking back at Exhibit 5, which is the list |
| 10:07:18 | 8   of deposition topics.  It's Exhibit 7 -- |
| 10:07:34 | 9       A.   Oh, I get it.  They're just all over the |
| 10:07:37 | 10  place. |
| 10:07:37 | 11          Okay.  Got it. |
| 10:07:38 | 12      Q.   What'd you do to prepare to testify on topic |
| 10:07:41 | 13  number 8? |
| 10:07:43 | 14      A.   Reviewed Exhibit 9 and 10. |
| 10:07:51 | 15      Q.   Did you do anything else? |
| 10:07:52 | 16      A.   No. |
| 10:07:53 | 17      Q.   Talk to anybody to prepare to testify on |
| 10:07:55 | 18  topic number 8, other than counsel? |
| 10:07:58 | 19      A.   Right.  No. |
| 10:08:00 | 20      Q.   All right.  Exhibit 9 -- |
| 10:08:04 | 21          I apologize, I'm -- |
| 10:08:06 | 22      A.   No.  We're good. |
| 10:08:12 | 23      Q.   -- is your declaration; correct? |
| 10:08:15 | 24      A.   Yes. |
| 10:08:16 | 25      Q.   And it's your declaration dated December |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

60

| | |
|---|---|
| 10:09:33 | 1       A.   Yes.  There is a typo in this declaration. |
| 10:09:35 | 2       Q.   The declaration says -- |
| 10:09:37 | 3           It's in paragraph 6; correct? |
| 10:09:39 | 4       A.   Correct. |
| 10:09:40 | 5       Q.   And it says that -- |
| 10:09:46 | 6           MR. KLUTHO:  Do you want her just to tell |
| 10:09:48 | 7   you -- |
| 10:09:48 | 8       A.   I was going to say -- |
| 10:09:48 | 9           MR. KLUTHO:  -- what the error was? |
| 10:09:49 | 10      A.   -- the error is the date of October 14th |
| 10:09:51 | 11  instead of October 7th, and that's why there is an |
| 10:09:54 | 12  existence of Exhibit 10 that has the correct date in |
| 10:09:58 | 13  it. |
| 10:10:00 | 14      Q.   Paragraph 6 of your declaration, -- |
| 10:10:03 | 15      A.   Exhibit 9. |
| 10:10:03 | 16      Q.   -- Exhibit 9, is wrong; correct? |
| 10:10:05 | 17      A.   Correct. |
| 10:10:19 | 18      Q.   Paragraph 2. |
| 10:10:24 | 19      A.   Okay. |
| 10:10:25 | 20      Q.   Allina makes its entries into its books and |
| 10:10:29 | 21  records in the ordinary course of business |
| 10:10:34 | 22  contemporaneous with the transaction giving rise to |
| 10:10:37 | 23  the entry; correct? |
| 10:10:39 | 24      A.   Sure. |
| 10:10:39 | 25      Q.   That's not a -- |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

61

| | | |
|---|---|---|
| 10:10:41 | 1 | That's not a false statement. |
| 10:10:42 | 2 | A. No. |
| 10:10:43 | 3 | Q. Okay. So a transaction occurs -- |
| 10:10:46 | 4 | A. Yep. |
| 10:10:47 | 5 | Q. -- and then Allina, contemporaneously, makes |
| 10:10:52 | 6 | the entry into their books and records. |
| 10:10:56 | 7 | A. Yes. |
| 10:10:58 | 8 | Q. You're telling us you have -- you're |
| 10:10:59 | 9 | personally familiar with that process; correct? |
| 10:11:01 | 10 | A. Yes. |
| 10:11:02 | 11 | Q. And the word "contemporaneous" means "on or |
| 10:11:05 | 12 | about the same time." |
| 10:11:06 | 13 | A. Sure. |
| 10:11:07 | 14 | Q. Okay. Exhibit 10. |
| 10:11:15 | 15 | MR. KLUTHO: This is getting exciting. |
| 10:11:19 | 16 | THE WITNESS: Like, the word |
| 10:11:20 | 17 | "contemporaneous" is only one a lawyer would use. |
| 10:11:23 | 18 | Kind of like vexatious, Michael. Just saying. |
| 10:11:28 | 19 | (Laughter.) |
| 10:11:28 | 20 | THE WITNESS: Or maybe Bonnie, because |
| 10:11:30 | 21 | she's got a Words with Friends. |
| 10:11:36 | 22 | BY MR. SCHWIEBERT: |
| 10:11:36 | 23 | Q. Exhibit Number 10 is also a declaration of |
| 10:11:38 | 24 | yours; correct? |
| 10:11:39 | 25 | A. Correct. |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

63

| | | |
|---|---|---|
| 10:12:34 | 1 | THE WITNESS: I'm sorry, Debby. |
| 10:12:35 | 2 | THE REPORTER: That's okay. |
| 10:12:36 | 3 | A. Yes. |
| 10:12:37 | 4 | Q. And again the entries are made in the |
| 10:12:40 | 5 | ordinary course of business contemporaneous with the |
| 10:12:42 | 6 | transfer giving rise to each entity; correct? |
| 10:12:44 | 7 | A. Yes. |
| 10:12:45 | 8 | Q. On or about -- |
| 10:12:45 | 9 | MR. KLUTHO: Each entry. |
| 10:12:46 | 10 | Q. -- the time the transaction took place; |
| 10:12:48 | 11 | correct? |
| 10:12:49 | 12 | A. Yes. |
| 10:12:51 | 13 | Q. Now in paragraph 5 we have a new statement, |
| 10:12:57 | 14 | different from your prior testimony under oath, that |
| 10:12:59 | 15 | the account was assigned and sold on October 7th of |
| 10:13:07 | 16 | 2015. |
| 10:13:10 | 17 | MR. KLUTHO: Yes. |
| 10:13:10 | 18 | A. Yes. We've answered that a billion times. |
| 10:13:13 | 19 | MR. KLUTHO: We will stipulate to that. |
| 10:13:15 | 20 | Q. Okay. Is there a reason why the language |
| 10:13:17 | 21 | changed from "sold and transferred" to "assigned and |
| 10:13:21 | 22 | sold" between -- on -- |
| 10:13:22 | 23 | A. To me that's semantics. It's the same |
| 10:13:24 | 24 | thing. We sold them the debt on October 7th, 2015. |
| 10:13:27 | 25 | Whichever fancy words you lawyers want to put in front |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

62

| | | |
|---|---|---|
| 10:11:41 | 1 | Q. This one is made on May 11th, 2017. |
| 10:11:46 | 2 | A. Correct. |
| 10:11:48 | 3 | Q. Do you know why you signed this declaration? |
| 10:11:52 | 4 | MR. KLUTHO: I asked her to because you |
| 10:11:54 | 5 | made a big point about the typographical error. |
| 10:11:56 | 6 | A. I was going to say I would guess because we |
| 10:11:59 | 7 | made a typo in the first one and that's why there's a |
| 10:12:01 | 8 | second declaration. |
| 10:12:02 | 9 | Q. You realized that Exhibit Number 9, your |
| 10:12:06 | 10 | testimony under penalty of perjury, was false. |
| 10:12:09 | 11 | MR. KLUTHO: She made a mistake, counsel. |
| 10:12:11 | 12 | A. Correct. |
| 10:12:11 | 13 | MR. KLUTHO: Move on. |
| 10:12:13 | 14 | A. Again, it was a typo, October 14 and 7, yes. |
| 10:12:18 | 15 | Q. So six months later you signed a second |
| 10:12:20 | 16 | declaration. |
| 10:12:21 | 17 | A. Correct. |
| 10:12:21 | 18 | Q. Okay. And again you're telling us that |
| 10:12:23 | 19 | you're personally famil -- paragraph 2, you're |
| 10:12:25 | 20 | personally familiar with the books and records of |
| 10:12:28 | 21 | Allina. |
| 10:12:28 | 22 | A. Umm-hmm. |
| 10:12:30 | 23 | Q. You have -- |
| 10:12:30 | 24 | THE REPORTER: Your answer, please? |
| 10:12:32 | 25 | A. Yes. Sorry. |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

64

| | | |
|---|---|---|
| 10:13:30 | 1 | of it, that's what happened. |
| 10:13:31 | 2 | Q. So when you use the expression in Exhibit |
| 10:13:35 | 3 | Number 9, "sold and transferred," you mean "sold." |
| 10:13:39 | 4 | MR. KLUTHO: Sold. |
| 10:13:40 | 5 | A. Yes. |
| 10:13:41 | 6 | Q. Okay. And when you -- |
| 10:13:42 | 7 | Just trying to figure out if some -- there's |
| 10:13:46 | 8 | -- because the words have changed. I'm trying to |
| 10:13:46 | 9 | figure out why they've changed. |
| 10:13:48 | 10 | Now, in Exhibit 10, six months later, it's |
| 10:13:50 | 11 | not being transferred, it's being assigned. |
| 10:13:52 | 12 | MR. KLUTHO: Tell him again what you just |
| 10:13:54 | 13 | said so we can move on. |
| 10:13:55 | 14 | Q. And what you mean by that is "sold." |
| 10:13:57 | 15 | A. Sold, yes. |
| 10:14:02 | 16 | Q. And you make reference to three documents |
| 10:14:05 | 17 | which are attached to this declaration, -- |
| 10:14:08 | 18 | A. Right. |
| 10:14:09 | 19 | Q. -- Exhibits A, 1A and B; correct? |
| 10:14:12 | 20 | A. Right, right, right. |
| 10:14:13 | 21 | Q. And we know that that is Exhibits 11, now |
| 10:14:18 | 22 | Deposition Exhibit 11, 12 and 13. |
| 10:14:21 | 23 | A. Correct. |
| 10:14:26 | 24 | Q. Why didn't you ask ARS for the actual |
| 10:14:29 | 25 | Exhibit 1A? |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

65

10:14:32  1          MR. KLUTHO:  Why, counsel?
10:14:33  2      A.   Why would I need it?  Maybe that's the
10:14:36  3  question that I should ask you.
10:14:39  4      Q.   You didn't feel that it was important to
10:14:41  5  have the actual Exhibit 1A that was attached at the
10:14:44  6  time you signed it.
10:14:46  7      A.   No, because again the principal balance was
10:14:48  8  the same.  Whatever interest gets charged from as
10:14:52  9  they're collecting on it is -- I don't see that, and
10:14:56 10  it -- to me the principal balance is what I am
10:14:58 11  reviewing.  Principal balance is what we are selling.
10:15:10 12  And that did not change.
10:15:13 13      Q.   Paragraph 6.  The Bill of Sale was drafted
10:15:16 14  by the parties prior to October 7th of 2015.
10:15:21 15          Did I read that correctly?
10:15:21 16      A.   You did.
10:15:22 17      Q.   Who drafted the Bill of Sale?
10:15:25 18      A.   ARS.
10:15:27 19      Q.   I know ARS printed it.  Did they also draft
10:15:29 20  the document?
10:15:30 21      A.   Yes.
10:15:32 22      Q.   Then it says the document is completed and
10:15:34 23  signed by both parties; correct?
10:15:39 24      A.   It does say that, yes.
10:15:40 25      Q.   Is the Bill of Sale signed by both parties?

66

10:15:43  1      A.   It's just signed by me.
10:15:46  2      Q.   It's a false statement in your declaration.
10:15:48  3          MR. KLUTHO:  Objection, argumentative.
10:15:50  4  Don't answer the question.  That's offensive,
10:15:53  5  counsel.
10:15:53  6      Q.   You're wrong; correct?
10:15:55  7      A.   Sure.
10:15:56  8          MR. KLUTHO:  Same objection.
10:16:03  9      Q.   And then you use this contemporaneous
10:16:06 10  language in paragraph 6, that it was completed and
10:16:11 11  signed by both parties contemporaneous with the sale
10:16:15 12  of the account.
10:16:16 13          Did it actually happen on October 7th?
10:16:20 14      A.   The sale?
10:16:21 15      Q.   Allina's position is you signed the document
10:16:24 16  on --
10:16:24 17      A.   October 7th.
10:16:25 18      Q.   -- October 7th.
10:16:26 19      A.   Correct.
10:16:27 20      Q.   So when you use the term "contemporaneous"
10:16:30 21  in paragraph 6 you're talking about the same day.
10:16:34 22          MR. KLUTHO:  Objection, --
10:16:36 23      A.   I was going to say --
10:16:36 24          MR. KLUTHO:  -- argumentative.
10:16:37 25      A.   -- we've already talked about that

67

10:16:39  1  contemporaneous is on or about.  I don't think it has
10:16:41  2  an exact this same day.  But we signed -- I signed
10:16:43  3  that document on October 7th, 2015.
10:16:52  4      Q.   Paragraph 7.  "Plaintiff's account as
10:17:04  5  detailed in Exhibit 1A" -- and we know that the 1A
10:17:08  6  that's attached to your declaration is Exhibit 12 --
10:17:17  7  "was sold and assigned by Allina to ARS at the time
10:17:20  8  the Bill of Sale was executed."
10:17:23  9          Did I read it correctly?
10:17:25 10      A.   You did.
10:17:25 11      Q.   It's your testimony that the Bill of Sale
10:17:27 12  was executed on October 7th, 2015.
10:17:30 13      A.   Correct.
10:17:31 14      Q.   But we know Exhibit 1A, Exhibit 12 of the
10:17:35 15  deposition, didn't exist on October 7th, 2015;
10:17:39 16  correct?
10:17:39 17          MR. KLUTHO:  Objection, argumentative,
10:17:42 18  asked and answered.  We're not going to do it again.
10:17:45 19          MR. SCHWIEBERT:  Are you instructing her
10:17:47 20  not to answer?
10:17:47 21          MR. KLUTHO:  Yes.
10:17:48 22          MR. SCHWIEBERT:  Are you instructing her
10:17:51 23  not to answer on the basis of privilege?
10:17:52 24          MR. KLUTHO:  It's stupid.  You've asked
10:17:54 25  this five times, she's probably told you ten times.

68

10:17:57  1  Tell him one more time.
10:17:58  2      A.   There was a 1A attached at the time I signed
10:18:00  3  it.  It might not be the exact copy you have there.
10:18:02  4  But again, the principal balance for that account from
10:18:05  5  Unity Hospital was the same.  That is the document
10:18:08  6  that I reviewed.
10:18:09  7      Q.   Okay.  But you attached one to your
10:18:11  8  declaration.
10:18:12  9      A.   Right.  And it was that same one, Exhibit 11
10:18:15 10  or whatever it is now.
10:18:15 11      Q.   12?
10:18:16 12      A.   12.
10:18:18 13      Q.   And the one that you attached to your
10:18:19 14  declaration, contrary to what you say in paragraph
10:18:24 15  number 7 --
10:18:25 16          MR. KLUTHO:  That's not what paragraph 7
10:18:26 17  says, counsel.
10:18:28 18      Q.   -- didn't exist at the time the Bill of Sale
10:18:29 19  was executed; correct?
10:18:31 20          MR. KLUTHO:  Object to the form.  Read the
10:18:33 21  statement, counsel.  "Plaintiff's account."
10:18:36 22      A.   As detailed in Exhibit 1A was sold and
10:18:39 23  assigned to ARS.
10:18:39 24          To me that's exactly what happened.  That
10:18:42 25  particular account was sold and assigned to Allina --

69

```
10:18:45  1   by Allina to ARS.
10:18:49  2       Q.   But the document you attached to your
10:18:51  3   declaration doesn't exist at the time the Bill of Sale
10:18:55  4   was executed; correct?
10:18:56  5       A.   It existed.  We're just not able to
10:19:00  6   reproduce it for you.  I don't know.  I don't know
10:19:02  7   what else you want me to say with that.
10:19:03  8       Q.   The 1A you attached to your declaration is
10:19:06  9   not a 1A that existed at the time the Bill of Sale was
10:19:08 10   executed.
10:19:10 11       A.   Sure.  We can go with that language.
10:19:13 12       MR. KLUTHO:  And she's not going to answer
10:19:15 13   that question again.
10:19:22 14       Q.   Paragraph 8.  You say Plaintiff's account
10:19:28 15   was sold and assigned by Allina to ARS on October 7th,
10:19:33 16   2015 along with other accounts, and accounts
10:19:37 17   receivables of other individuals not at issue here.
10:19:39 18           Is that a true statement?
10:19:41 19       A.   That's a true statement.
10:19:42 20       Q.   Okay.  How many other accounts were sold and
10:19:46 21   assigned by Allina to ARS on October 7th of 2015?
10:19:50 22       MR. KLUTHO:  Objection, irrelevant.
10:19:52 23       A.   I do not know.
10:19:59 24       Q.   You told me ARS paid to get the Ferkingstad
10:20:03 25   account.  I presume --
```

70

```
10:20:06  1           Well let me ask the question this way:  Do
10:20:08  2   they pay for every account that gets sold to them?
10:20:10  3       A.   Yes.
10:20:11  4       Q.   Are they sold in a bundle?  Well are they --
10:20:16  5       A.   I was going to say that's hard to answer
10:20:18  6   that way.
10:20:19  7       Q.   Okay.
10:20:19  8       A.   Every account is individual.  They will
10:20:22  9   batch together a number of accounts for me to review
10:20:26 10   at one time.
10:20:30 11       Q.   Since we don't know the actual number --
10:20:32 12       A.   Umm-hmm.
10:20:32 13       Q.   -- let's assume, for the purpose of this
10:20:34 14   question, --
10:20:34 15       A.   Umm-hmm.
10:20:35 16       Q.   -- and it's an assumption, that the
10:20:38 17   hypothetical number of other accounts transferred that
10:20:39 18   day was nine, so we have a total of ten.
10:20:41 19       A.   Sure.
10:20:42 20       Q.   Okay.  Does ARS pay one amount of money for
10:20:45 21   all ten accounts, or do they pay an amount of money
10:20:49 22   for each individual account, one of which was
10:20:54 23   plaintiff's account?
10:20:54 24       A.   My understanding is they pay individually
10:20:57 25   for each account.
```

71

```
10:20:59  1           Now I'm not in our accounting department,
10:21:01  2   that's not my specialty.  So as far as I know there is
10:21:08  3   a by-account fee that ARS pays Allina for purchasing
10:21:14  4   debt.
10:21:18  5       Q.   But you don't know how that account is
10:21:20  6   determined.
10:21:21  7       A.   Correct.
10:21:22  8       Q.   Somebody in your accounting department would
10:21:24  9   know the answer to that.
10:21:26 10       A.   Yes.
10:21:29 11       Q.   Do you know if there's a agreement that
10:21:32 12   governs how that's determined?
10:21:34 13       A.   We already talked about it's the Blanket --
10:21:36 14   Blanket Purchase Agreement.
10:21:37 15       Q.   There's no price in the Blanket Purchase
10:21:39 16   Agreement.
10:21:39 17       A.   Right.
10:21:40 18       Q.   So is there any agreement that does tell us
10:21:43 19   how much they pay for it?
10:21:45 20       A.   Not that I'm aware of.  Not to say it
10:21:57 21   doesn't exist.
10:21:58 22       Q.   Paragraph 9.  "A unique Bill of Sale is
10:22:00 23   created and signed for each person whose account is
10:22:03 24   being sold and assigned from Allina to ARS, which is
10:22:07 25   evidenced by the fact that 'Ferkingstad' is typed on
```

72

```
10:22:10  1   the top of the Bill of Sale at issue here."
10:22:13  2           Did I read it correctly?
10:22:16  3       A.   You did.
10:22:16  4       Q.   Is that a true statement?
10:22:17  5       MR. KLUTHO:  Well let's see --
10:22:19  6       A.   It's at this bottom, not the top.
10:22:21  7       MR. KLUTHO:  Boy.
10:22:22  8       Q.   So the statement in paragraph number 9 is
10:22:23  9   false.
10:22:24 10       MR. KLUTHO:  Score one for Ferkingstad.
10:22:27 11       Q.   Correct?
10:22:27 12       A.   Correct.
10:22:37 13           Again, semantics.
10:22:51 14       Q.   Then we have paragraph number 10.  And in
10:22:57 15   paragraph number 10 we're talking about the bad debt
10:23:01 16   final referral.
10:23:02 17       A.   Correct.
10:23:03 18       Q.   And you -- your affidavit, or declaration --
10:23:11 19   your declaration states that the account is
10:23:17 20   administratively deleted from Allina's accounting
10:23:20 21   software; correct?
10:23:23 22       A.   Correct.
10:23:25 23       MR. KLUTHO:  It says other things, but
10:23:26 24   those words are on there, counsel.
10:23:29 25       Q.   Okay.  So let's start with that.
```

73

| | |
|---|---|
| 10:23:34 | 1    Ms. Ferkingstad's account still exists in |
| 10:23:37 | 2  Allina's accounting software after November 10th of |
| 10:23:43 | 3  2015, the date on Exhibit 13; correct? |
| 10:23:46 | 4    A.    Correct. |
| 10:23:46 | 5    Q.    Because it's printed including an adjustment |
| 10:23:49 | 6  that happened on November 10th of 2015; correct? |
| 10:23:52 | 7    MR. KLUTHO:  Counsel, I am really offended |
| 10:23:54 | 8  by your continued laughter.  You need to stop it. |
| 10:23:58 | 9  Can you stop it? |
| 10:23:59 | 10    Q.    Do you understand the question? |
| 10:24:02 | 11    A.    Yes. |
| 10:24:03 | 12    Q.    And the answer is "yes," the account is |
| 10:24:05 | 13  still in Allina's accounting software. |
| 10:24:09 | 14    A.    Correct. |
| 10:24:14 | 15    Q.    Somebody in the accounting department goes |
| 10:24:17 | 16  in and enters an adjustment; correct? |
| 10:24:21 | 17    A.    No.  Someone in Revenue Cycle enters |
| 10:24:23 | 18  adjustment, it's not even a person, it's done |
| 10:24:25 | 19  electronically, but yes.  An adjustment gets entered |
| 10:24:28 | 20  in her account that changes that balance to zero that |
| 10:24:40 | 21  you referenced on page 2 of 13. |
| 10:24:50 | 22    Q.    It's an automated process? |
| 10:24:52 | 23    A.    Correct. |
| 10:25:02 | 24    Q.    Why is -- |
| 10:25:04 | 25    First of all, what does "bad debt final |

74

| | |
|---|---|
| 10:25:07 | 1  referral A" mean? |
| 10:25:09 | 2    A.    That is the code in our system that we use |
| 10:25:11 | 3  to adjust the balances off that have been sold to |
| 10:25:15 | 4  Accounts Receivable Services.  So that 696 dollars |
| 10:25:31 | 5  matches the principal balance that's on Exhibit 1A |
| 10:25:35 | 6  that you keep talking about. |
| 10:25:48 | 7    Q.    Why didn't the adjustment happen on or about |
| 10:25:52 | 8  October 7th of 2015? |
| 10:25:55 | 9    A.    Because we have an automated process in |
| 10:25:58 | 10  place, so after I sign all of these documents and send |
| 10:26:03 | 11  them back to Accounts Receivable Services, they update |
| 10:26:06 | 12  it in their system, whatever they do, and then we get |
| 10:26:12 | 13  an electronic file back from them every month on the |
| 10:26:16 | 14  10th of the month with the accounts that they have now |
| 10:26:20 | 15  purchased and it automatically writes off in our |
| 10:26:23 | 16  system.  So the 10th of November would have been |
| 10:26:30 | 17  everything that happened in October gets posted to the |
| 10:26:34 | 18  account on the 10th of November. |
| 10:26:36 | 19    Q.    Why didn't you get it on the 10th of |
| 10:26:38 | 20  October? |
| 10:26:38 | 21    MR. KLUTHO:  You didn't listen to her |
| 10:26:40 | 22  answer, did you? |
| 10:26:41 | 23    Say it again. |
| 10:26:42 | 24    THE WITNESS:  It's always going to be the |
| 10:26:44 | 25  month after.  So when I sign it, they do all their |

75

| | |
|---|---|
| 10:26:48 | 1  things and then that -- the 10th of the next month is |
| 10:26:51 | 2  when the file runs in our system. |
| 10:26:53 | 3    Q.    Who created this system? |
| 10:26:57 | 4    A.    Our IS team. |
| 10:26:59 | 5    Q.    But, I mean, who made the decision to leave |
| 10:27:02 | 6  accounts on Allina's books until the 10th of the month |
| 10:27:06 | 7  following the transaction? |
| 10:27:10 | 8    A.    I don't know who made that decision. |
| 10:27:18 | 9    Q.    Does Allina still have the electronic file |
| 10:27:21 | 10  that would have come back from ARS on the 10th of |
| 10:27:25 | 11  November, 2015? |
| 10:27:26 | 12    MR. KLUTHO:  Object to the form of the |
| 10:27:28 | 13  question.  That's not what she testified to. |
| 10:27:30 | 14    Q.    You get an electronic file from them. |
| 10:27:32 | 15    A.    Right.  I would assume from -- back from |
| 10:27:34 | 16  2015 we would not still have that electronic file, no. |
| 10:27:56 | 17    MR. KLUTHO:  Do you need a pen? |
| 10:27:58 | 18    MR. SCHWIEBERT:  I'm trying to figure out |
| 10:27:59 | 19  what time it is. |
| 10:28:00 | 20    MR. KLUTHO:  It's 10:30. |
| 10:28:03 | 21    THE WITNESS:  Ten thirty. |
| 10:28:04 | 22    MR. SCHWIEBERT:  Why don't we take about a |
| 10:28:07 | 23  five-minute break. |
| 10:28:09 | 24    THE REPORTER:  We are off the record. |
| 10:28:10 | 25    (Recess taken from 10:28 to 10:35 a.m.) |

76

| | |
|---|---|
| 10:35:07 | 1  BY MR. SCHWIEBERT: |
| 10:35:08 | 2    Q.    Exhibit 5, list of topics. |
| 10:35:10 | 3    A.    Yep. |
| 10:35:10 | 4    Q.    Topic number 1. |
| 10:35:11 | 5    A.    Okay. |
| 10:35:12 | 6    Q.    What did you do to prepare to testify on |
| 10:35:14 | 7  this topic? |
| 10:35:15 | 8    MR. KLUTHO:  Objection, counsel.  United |
| 10:35:18 | 9  States Code 28, Section 1927, vexatious litigation. |
| 10:35:22 | 10  The Court has indicated you get to learn about what's |
| 10:35:26 | 11  going on, date and time when the representation was |
| 10:35:31 | 12  made with respect to this account involving Ms. |
| 10:35:34 | 13  Ferkingstad.  This request is asking about |
| 10:35:37 | 14  relationships going back six years.  If you want to |
| 10:35:41 | 15  ask her what the relationship was at the time this |
| 10:35:44 | 16  representation was made, go for it.  Beyond that |
| 10:35:47 | 17  she's not going to answer any questions. |
| 10:35:49 | 18    MR. SCHWIEBERT:  Are you instructing her |
| 10:35:50 | 19  not to answer questions relating to topic number 1? |
| 10:35:53 | 20    MR. KLUTHO:  No.  I just told you that she |
| 10:35:55 | 21  would. |
| 10:35:55 | 22  BY MR. SCHWIEBERT: |
| 10:35:56 | 23    Q.    What did you do to prepare to testify on |
| 10:35:57 | 24  topic number 1? |
| 10:35:58 | 25    A.    Nothing. |

77

| | | |
|---|---|---|
| 10:35:59 | 1 | **Q.**   What'd you do to prepare to testify on topic |
| 10:36:01 | 2 | number 2? |
| 10:36:05 | 3 | MR. KLUTHO:  Same objection. |
| 10:36:06 | 4 | **A.**   Nothing.  This is my standard course of |
| 10:36:09 | 5 | business. |
| 10:36:13 | 6 | **Q.**   Did you talk to anyone besides counsel |
| 10:36:15 | 7 | regarding topic number 1? |
| 10:36:17 | 8 | **A.**   No. |
| 10:36:18 | 9 | **Q.**   Did you talk to anyone besides counsel |
| 10:36:21 | 10 | regarding topic number 2? |
| 10:36:23 | 11 | **A.**   No.  We've -- The conversation we had last |
| 10:36:26 | 12 | Thursday covered all of these topics. |
| 10:36:30 | 13 | **Q.**   Did you have any -- |
| 10:36:31 | 14 | Was there any specific part of your |
| 10:36:33 | 15 | conversation that related to topic number 1? |
| 10:36:35 | 16 | **A.**   No, -- |
| 10:36:35 | 17 | **Q.**   And the conversation -- |
| 10:36:36 | 18 | **A.**   -- not that I can remember. |
| 10:36:39 | 19 | **Q.**   -- you're referring to is the conversation |
| 10:36:40 | 20 | with Ms. Drennen. |
| 10:36:41 | 21 | **A.**   Correct. |
| 10:36:42 | 22 | **Q.**   Is there any specific part of your |
| 10:36:43 | 23 | conversation with Ms. Drennen last Thursday that |
| 10:36:47 | 24 | prepared you to testify on topic number 2? |
| 10:36:50 | 25 | **A.**   No.  But she did just tell me that we sold |

78

| | | |
|---|---|---|
| 10:36:52 | 1 | that for 25 cents on the dollar.  That's our agreement |
| 10:36:56 | 2 | with them. |
| 10:36:57 | 3 | **Q.**   Okay.  My question is your preparation for |
| 10:37:00 | 4 | the deposition. |
| 10:37:01 | 5 | **A.**   Okay. |
| 10:37:02 | 6 | **Q.**   I appreciate you telling me... |
| 10:37:04 | 7 | **A.**   Well I'm telling you... |
| 10:37:09 | 8 | **Q.**   Topic number 3.  What'd you do to prepare to |
| 10:37:12 | 9 | testify on topic number 3? |
| 10:37:14 | 10 | MR. KLUTHO:  Same objection. |
| 10:37:15 | 11 | **A.**   And same answer.  That's -- Nothing. |
| 10:37:21 | 12 | **Q.**   What'd you do to prepare to testify on topic |
| 10:37:23 | 13 | number 4? |
| 10:37:24 | 14 | MR. KLUTHO:  Same objection. |
| 10:37:26 | 15 | **A.**   And same answer. |
| 10:37:29 | 16 | **Q.**   And that answer is? |
| 10:37:31 | 17 | **A.**   Nothing. |
| 10:37:32 | 18 | **Q.**   What'd you do to prepare to testify on topic |
| 10:37:34 | 19 | number 5? |
| 10:37:36 | 20 | MR. KLUTHO:  Same objection.  I believe |
| 10:37:38 | 21 | you've already asked it as well, counsel. |
| 10:37:40 | 22 | **A.**   And same.  Nothing.  Reviewed the documents |
| 10:37:45 | 23 | that were set forth that we've already talked about. |
| 10:37:47 | 24 | That's it. |
| 10:38:19 | 25 | (Exhibit 15 marked for identification.) |

79

| | | |
|---|---|---|
| 10:38:19 | 1 | BY MR. SCHWIEBERT: |
| 10:38:24 | 2 | **Q.**   Ms. Fountain, have you ever seen Exhibit 15 |
| 10:38:26 | 3 | before? |
| 10:38:26 | 4 | **A.**   No. |
| 10:38:27 | 5 | **Q.**   Do you know what Exhibit 15 is? |
| 10:38:29 | 6 | **A.**   Well, according to this it's the "Annual |
| 10:38:32 | 7 | Financial Disclosure Statement Year Ended December |
| 10:38:33 | 8 | 31st, 2015." |
| 10:38:35 | 9 | **Q.**   So it would be the Allina Health's Financial |
| 10:38:39 | 10 | Disclosure Statement for the year ending in which you |
| 10:38:43 | 11 | allege that the debt at issue was sold to ARS; |
| 10:38:48 | 12 | correct? |
| 10:38:48 | 13 | MR. KLUTHO:  First off, counsel, I'm going |
| 10:38:50 | 14 | to make several objections.  Number one, the witness |
| 10:38:52 | 15 | has said she's never seen this document.  Number two, |
| 10:38:55 | 16 | you've not asked Allina to come testify about this |
| 10:38:58 | 17 | document.  Number three, this document speaks for |
| 10:39:00 | 18 | itself.  And depending on what you're going to ask, |
| 10:39:05 | 19 | there's likely going to be an instruction and there |
| 10:39:07 | 20 | are going to be no answers to these questions. |
| 10:39:09 | 21 | Do you have a question about this document, |
| 10:39:11 | 22 | counsel? |
| 10:39:13 | 23 | MR. SCHWIEBERT:  Are you done?  I don't |
| 10:39:16 | 24 | want to cut you off. |
| 10:39:16 | 25 | Are you done making your record? |

80

| | | |
|---|---|---|
| 10:39:19 | 1 | MR. KLUTHO:  I just asked:  Do you have a |
| 10:39:21 | 2 | question about this?  That was a question to you, and |
| 10:39:23 | 3 | then you give a response.  That's how it works. |
| 10:39:25 | 4 | BY MR. SCHWIEBERT: |
| 10:39:26 | 5 | **Q.**   My last question was:  This is for the |
| 10:39:28 | 6 | fiscal year ending -- |
| 10:39:30 | 7 | MR. KLUTHO:  Okay. |
| 10:39:30 | 8 | **Q.**   -- December 31st, 2015, which is the year in |
| 10:39:33 | 9 | which Allina, you, testified that this debt was |
| 10:39:38 | 10 | allegedly transferred to ARS; correct? |
| 10:39:39 | 11 | MR. KLUTHO:  Object as argumentative.  It |
| 10:39:41 | 12 | speaks for itself.  On behalf of my client, ARS, |
| 10:39:47 | 13 | we'll stipulate that that's what that document says, |
| 10:39:50 | 14 | and so it must be that, counsel. |
| 10:39:52 | 15 | MR. SCHWIEBERT:  Excellent. |
| 10:39:53 | 16 | BY MR. SCHWIEBERT: |
| 10:39:54 | 17 | **Q.**   If you can turn one, two, three, four pages |
| 10:39:57 | 18 | in to the page numbered 2 at the bottom.  Do you see |
| 10:40:02 | 19 | that document? |
| 10:40:04 | 20 | MR. KLUTHO:  Yeah. |
| 10:40:06 | 21 | Do you see this page? |
| 10:40:07 | 22 | MR. SCHWIEBERT:  You don't get to answer. |
| 10:40:08 | 23 | **A.**   I -- Yes, I see that page. |
| 10:40:10 | 24 | MR. KLUTHO:  I'm just seeing this for the |
| 10:40:11 | 25 | first time, counsel. |

10:40:13  1    THE WITNESS:  Me too.  Me too.

10:40:24  2    (Exhibit 16 marked for identification.)

10:40:24  3  BY MR. SCHWIEBERT:

10:40:27  4    Q.   You'd agree with me that Exhibit 16 is an

10:40:31  5  exact copy of page number 2 of Exhibit 15; correct?

10:40:36  6    MR. KLUTHO:  Stipulated.  Move on.

10:40:43  7    Q.   In Exhibit 16, Allina, in its financial

10:40:47  8  statement, states that Accounts Receivable Services,

10:40:54  9  LLC is a subsidiary of Allina Health; correct?

10:40:58  10   MR. KLUTHO:  Well you didn't really read it

10:41:00  11  correctly, but do you want to read what it says?

10:41:03  12   A.   "Additional subsidiaries of Allina Health

10:41:06  13  include Accounts Receivable Services, LLC, a limited

10:41:09  14  liability company providing debt collection and other

10:41:12  15  financial services, and seven foundations."

10:41:13  16   MR. KLUTHO:  That's what the document says.

10:41:15  17   Q.   ARS is a subsidiary of Allina Health;

10:41:17  18  correct?

10:41:17  19   MR. KLUTHO:  That's what the document says,

10:41:19  20  counsel.

10:41:19  21   Q.   Then there's an organizational chart;

10:41:21  22  correct?

10:41:21  23   A.   Correct.

10:41:22  24   Q.   And the organizational chart is as of

10:41:28  25  December 31st, 2015; correct?

10:41:31  1    A.   Correct.

10:41:31  2    MR. KLUTHO:  That's what the document says.

10:41:33  3    Q.   Based on revenue provided to Allina;

10:41:35  4  correct?

10:41:37  5    MR. KLUTHO:  Counsel, this witness does not

10:41:39  6  have the foundation to testify about this document.

10:41:41  7    Q.   Correct.  Correct.

10:41:43  8    Q.   You can look at Allina Health System's

10:41:47  9  financial records and you can determine things from

10:41:48  10  those records; correct?

10:41:49  11   MR. KLUTHO:  No, you might be able to.

10:41:51  12  This witness is disqualified from this.  She says --

10:41:53  13   THE WITNESS:  Correct.

10:41:53  14   MR. KLUTHO:  -- she doesn't have the

10:41:53  15  foundation.

10:41:54  16   THE WITNESS:  I don't feel comfortable

10:41:55  17  answering your questions regarding this document.

10:41:58  18  BY MR. KLUTHO:

10:41:58  19   Q.   Well, let's see what it says.

10:41:59  20   MR. KLUTHO:  No.

10:41:59  21   Q.   Account --

10:42:00  22   MR. KLUTHO:  You're wasting our time about

10:42:02  23  an exhibit that was not --

10:42:05  24   You've not asked Allina, who is not a party

10:42:06  25  to this case, to come testify about this document, so

10:42:09  1  we're not going to give any more testimony about this

10:42:11  2  document, counsel.  Show me where it is in your

10:42:14  3  notice that you asked to have testimony about this

10:42:17  4  document.

10:42:18  5    MR. SCHWIEBERT:  Are you instructing the

10:42:19  6  witness not to answer any --

10:42:20  7    MR. KLUTHO:  No, I'm asking you a question.

10:42:21  8    THE WITNESS:  The witness is telling you

10:42:22  9  that she is not comfortable talking with this

10:42:25  10  document.

10:42:30  11   Q.   You're uncomfortable looking at Allina

10:42:33  12  Health Systems --

10:42:33  13   MR. KLUTHO:  We're done with this document.

10:42:35  14   Q.   -- organizational chart?

10:42:37  15   A.   Yes.

10:42:37  16   MR. KLUTHO:  We're done with this document.

10:42:37  17   Q.   Do you have some reason to believe that

10:42:39  18  Allina is not accurate in its organizational chart?

10:42:41  19   MR. KLUTHO:  Don't answer that question.

10:42:43  20   We're done with this document, done with this

10:42:45  21  questioning for all the reasons I've articulated.

10:42:47  22  Move on, counsel.

10:42:47  23   A.   I've already told you I'm not discussing it.

10:42:50  24   Q.   Okay.  My question was:  Do you have some

10:42:52  25  reason to believe it's not accurate?

10:42:53  1    MR. KLUTHO:  I've instructed you not to

10:42:54  2  answer.  Stop.

10:42:56  3    MR. SCHWIEBERT:  You making your motion

10:42:57  4  now?

10:42:57  5    MR. KLUTHO:  No, counsel.

10:42:59  6    MR. SCHWIEBERT:  Okay.

10:42:59  7    Q.   Page 16 --

10:42:59  8    MR. KLUTHO:  I'm not going to waste the

10:43:00  9  time.

10:43:01  10   Q.   -- of the document.

10:43:02  11   MR. KLUTHO:  We're not going to answer any

10:43:04  12  questions about this document.  This witness is not

10:43:06  13  prepared to answer any questions about this document.

10:43:07  14  She does note have the foundation to do that.  She's

10:43:10  15  disqualified herself.  You've not listed this as an

10:43:13  16  -- as an item of inquiry.

10:43:17  17   Q.   Are you unwilling to go to page 16 of the

10:43:19  18  document?

10:43:19  19   A.   I am unwilling.

10:43:23  20   MR. KLUTHO:  We're unwilling to go to any

10:43:25  21  of the pages in this document, counsel.

10:43:30  22   Q.   If you want to talk about the

10:43:31  23  debt that your client incurred with us and didn't pay

10:43:34  24  it, I am your person; but talking about the

10:43:35  25  financials for Allina, I am not your person.

85

87

10:43:38 1    Q.   You understand that the financials that are

10:43:39 2    transferred between Allina and ARS are in Allina's

10:43:42 3    financial documents; correct?  Including their

10:43:45 4    disclosure statement.

10:43:45 5         MR. KLUTHO:  Objection, lack of foundation.

10:43:47 6    A.   I'm not answering anything related to that

10:43:50 7    document.

10:43:53 8    Q.   Has the relationship between Allina and ARS

10:43:57 9    changed in the last six years?

10:43:59 10        MR. KLUTHO:  Object to the question, it's

10:44:01 11   beyond the scope of what the court has indicated is

10:44:03 12   still --

10:44:03 13   A.   Relationships change --

10:44:04 14        MR. KLUTHO:  -- is still in issue here.

10:44:06 15        THE WITNESS:  Sorry, Michael.

10:44:07 16   A.   Relationships change all the time.

10:44:09 17   Specifically I couldn't tell you.

10:44:10 18   Q.   In December 2015 ARS is a wholly-owned

10:44:15 19   subsidiary of Allina; correct?

10:44:18 20   A.   Correct.

10:44:18 21   Q.   Okay.  In 2009 were they a wholly-owned

10:44:25 22   subsidiary of Allina?

10:44:26 23        MR. KLUTHO:  Objection, lack of foundation.

10:44:27 24   A.   I wouldn't know.

10:44:30 25        [Document provided to counsel.]

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

10:45:32 1    Q.   Did you review Exhibit 15 in preparation for

10:45:34 2    today's deposition?

10:45:35 3    A.   No.

10:45:35 4    Q.   Did you --

10:45:39 5         Exhibit 17 is Allina -- it even says it

10:45:45 6    is -- it's Allina Health System's "Annual Financial

10:45:50 7    Disclosure Statement" earlier in time, for year ended

10:45:52 8    December 31st, 2009; correct?

10:45:54 9         MR. KLUTHO:  Counsel, the document speaks

10:45:56 10   for itself.  This witness has indi --

10:45:58 11        Do you have foundation to be able to talk

10:46:00 12   about this information --

10:46:00 13        THE WITNESS:  No.

10:46:00 14        MR. KLUTHO:  -- in this Exhibit 17.

10:46:02 15        THE WITNESS:  No.

10:46:02 16        MR. KLUTHO:  Move on.

10:46:02 17   BY MR. SCHWIEBERT:

10:46:04 18   Q.   You'd agree with me that's what the first

10:46:06 19   page of the document says.

10:46:06 20        MR. KLUTHO:  Move on.

10:46:07 21   A.   I agree that that's the first page of the

10:46:09 22   document.

10:46:10 23   Q.   Okay.  And if you move through to page

10:46:12 24   number 2 at the bottom -- and I will tell you I didn't

10:46:15 25   copy all 85 pages of it, okay?  So this is actually a

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

86

88

10:44:30 1         MR. KLUTHO:  Counsel, we're not going to

10:44:31 2    answer any questions about this exhibit.  You're

10:44:33 3    certainly welcome to mark it.

10:44:46 4         (Exhibit 17 marked for identification.)

10:44:46 5         MR. KLUTHO:  Exhibit 17 is not on the list

10:44:48 6    of topics that counsel has asked non-party Allina to

10:44:51 7    come and testify about.  The continued questioning

10:44:55 8    about these topics that were not asked to be prepared

10:44:58 9    for is vexatious, especially with respect to a

10:45:02 10   non-party.  Counsel's been instructed by this witness

10:45:06 11   that she doesn't feel comfortable talking about the

10:45:08 12   financial situation with regard to Allina, that's not

10:45:11 13   her role.  And --

10:45:11 14   Q.   Did you --

10:45:14 15        MR. KLUTHO:  -- he continues.

10:45:15 16   Q.   Did you review --

10:45:16 17        MR. KLUTHO:  And for that reason, we

10:45:17 18   object.

10:45:19 19        MR. SCHWIEBERT:  I'm sorry.  I didn't mean

10:45:20 20   to cut you off.  Are you done?

10:45:22 21        MR. KLUTHO:  Yeah.  When I -- words stop

10:45:23 22   coming out of my mouth, that's when I'm finished.

10:45:25 23   When the words are coming out and you keep talk --

10:45:28 24   you talk over me, that's when I'm not finished.

10:45:31 25   BY MR. SCHWIEBERT:

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

10:46:19 1    bigger document.  I've only taken the first so many

10:46:22 2    pages of it.

10:46:23 3         But if you flip through to the page that's

10:46:25 4    got number 2 at the bottom.

10:46:26 5    A.   No.

10:46:26 6         MR. KLUTHO:  Counsel, I'm not sure what's

10:46:27 7    funny.

10:46:28 8    A.   I'm not talking about the financials of

10:46:30 9    Allina, --

10:46:30 10   Q.   Okay.  There's an organizational chart --

10:46:32 11   A.   -- that's not my role.

10:46:34 12   Q.   -- that shows the relationship --

10:46:34 13   A.   No.

10:46:34 14        MR. KLUTHO:  I'm instructing you not to

10:46:36 15   answer, and I'm instructing you to move on --

10:46:37 16        MR. SCHWIEBERT:  Are you bringing your

10:46:38 17   motion now?

10:46:39 18        MR. KLUTHO:  -- for all of the reasons that

10:46:40 19   I've articulated to you, counsel.

10:46:42 20        I'm going to bring the motion at the end.

10:46:47 21   I don't want to have to bring, you know, 25 motions

10:46:50 22   about the things that you're doing, counsel.  You

10:46:54 23   know better.

10:46:55 24   BY MR. SCHWIEBERT:

10:46:55 25   Q.   Did you review any organizational charts for

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

89

10:47:01 1   Allina in preparation to testify on the relationship
10:47:04 2   between ARS and Allina, topic number 1?
10:47:08 3       A.   No, I did not.
10:47:47 4            (Exhibit 18 marked for identification.)
10:47:47 5       MR. KLUTHO:   Maybe I'm not being clear,
10:47:49 6   counsel.  This witness doesn't have the foundation to
10:47:51 7   testify about these documents and she's not going to
10:47:54 8   do that.
10:47:54 9            Do you have the foundation to testify --
10:47:54 10           THE WITNESS:   No.
10:47:56 11      MR. KLUTHO:   -- about this document?
10:47:57 12           THE WITNESS:   No.
10:47:57 13      MR. KLUTHO:   "No."  Move on.
10:47:59 14  BY MR. SCHWIEBERT:
10:47:59 15      Q.   Exhibit 18 is the -- is an excerpt, I didn't
10:48:02 16  print the whole thing again, of the Annual Financial
10:48:06 17  Disclosure Statement for the year ended December 31st,
10:48:08 18  2016 for Allina Health; correct?
10:48:12 19      MR. KLUTHO:   Counsel, the document speaks
10:48:14 20  for itself.  This document was not a document that
10:48:17 21  you asked this witness to come here to testify about.
10:48:21 22  Allina is a non-party witness and it has rights.
10:48:24 23           You've limited the scope, the Court has
10:48:27 24  limited the scope.  You won't stop, though.  It's
10:48:30 25  like you're the energizer bunny, just keep beating

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

90

10:48:34 1   and beating that debt horse.  Please move on.
10:48:37 2       Q.   Turn to page 2 of that document?
10:48:39 3       A.   No.
10:49:18 4       Q.   Exhibit 6.
10:49:37 5       A.   All right.
10:49:43 6       Q.   You understand that Exhibit 6 is an
10:49:47 7   Agreement that was signed by Allina on, it looks like,
10:50:02 8   April 11th of 2012.
10:50:06 9       MR. KLUTHO:   Counsel --
10:50:06 10           (Interruption by the reporter.)
10:50:06 11      MR. KLUTHO:   Counsel, the document speaks
10:50:07 12  for itself.
10:50:15 13      Q.   I think you're looking at the page where the
10:50:17 14  Attorney General and the Court signed it.  Turn back
10:50:19 15  one more page.
10:50:21 16      A.   Okay.
10:50:23 17      Q.   Allina executes this Agreement -- actually
10:50:28 18  Kenneth Paulus, as the president and CEO of Allina
10:50:33 19  Health Systems, executed this Agreement on, it looks
10:50:36 20  like, April 11th, 2012.
10:50:38 21      A.   That's what --
10:50:38 22      MR. KLUTHO:   Objection, the document speaks
10:50:39 23  for itself.
10:50:40 24      A.   That's what the signature shows.
10:50:42 25      Q.   Okay.  And then the Agreement is entered by

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

91

10:50:47 1   the Court on June 22nd of 2012; correct?
10:50:51 2       MR. KLUTHO:   Objection, the document speaks
10:50:52 3   for itself.
10:50:54 4       A.   That's what it shows.
10:51:10 5       Q.   Page 2.
10:51:18 6       A.   Page 2.  Okay.
10:51:20 7       Q.   "DEFINITIONS," section "B," defines the term
10:51:25 8   "Holding Company"; correct?
10:51:27 9       MR. KLUTHO:   Objection, the document speaks
10:51:28 10  for itself.
10:51:31 11      A.   It says so.
10:51:33 12      Q.   And "Holding Company," in this Agreement and
10:51:37 13  Court order, is Allina Health Systems d/b/a Allina
10:51:43 14  Health or its subsidiaries; correct?
10:51:45 15      MR. KLUTHO:   Objection, the document speaks
10:51:46 16  for itself.
10:51:48 17      A.   Correct.
10:51:49 18      Q.   Okay.  And then just so there's no confusion
10:51:53 19  over the term "Holding Company," further down it says:
10:51:57 20  Unless otherwise indicated, for the purpose of this
10:51:59 21  Agreement the term Hospital is synonymous with the
10:52:02 22  term Holding Company...
10:52:04 23           Did I read that correct?
10:52:05 24      MR. KLUTHO:   The document says more than
10:52:07 25  that, and it speaks for itself.

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

92

10:52:11 1       A.   That one line you read is correct.
10:52:15 2       Q.   Okay.  So let's look at "LITIGATION
10:52:23 3   PRACTICES."
10:52:24 4       A.   Okay.
10:52:26 5       Q.   The Hospital --
10:52:27 6            And we understand that the hospital includes
10:52:29 7   Allina Health Systems; correct?
10:52:31 8       A.   Correct.
10:52:32 9       Q.   Because they're part of the Holding Company
10:52:34 10  as defined in the definitions; correct?
10:52:37 11      A.   Correct.
10:52:38 12      Q.   -- shall not give any debt collection agency
10:52:41 13  or attorney any blanket authorization to take legal
10:52:44 14  action against its patients for the collection of
10:52:46 15  medical debts.
10:52:47 16           Did I read it correctly?
10:52:49 17      A.   You read it correctly.
10:52:51 18      MR. KLUTHO:   You're a very good reader.
10:53:06 19      Q.   How is Exhibit 7 not a violation of this
10:53:08 20  Agreement?
10:53:14 21      A.   Exhibit 7 is saying that we can sell debt,
10:53:17 22  it's not saying anything about taking legal action.
10:53:25 23      Q.   The order from the court says that the
10:53:27 24  hospital, Allina, --
10:53:29 25      A.   Umm-hmm.

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

93

| | |
|---|---|
| 10:53:29 | **1**    Q.   -- shall not give any debt collection |
| 10:53:31 | **2**   agency, that's ARS, -- |
| 10:53:33 | **3**    A.   Umm-hmm. |
| 10:53:33 | **4**    Q.   -- blanket, it even uses the word "blanket," |
| 10:53:35 | **5**   -- |
| 10:53:35 | **6**    A.   Umm-hmm. |
| 10:53:35 | **7**    Q.   -- blanket authorization to take legal |
| 10:53:37 | **8**   action against its patients for the collection of |
| 10:53:39 | **9**   medical debts. |
| 10:53:39 | **10**    A.   Correct.  And that Agreement -- |
| 10:53:41 | **11**    Q.   No blanket agreements. |
| 10:53:42 | **12**     MR. KLUTHO:  Counsel, let her answer.  Is |
| 10:53:45 | **13**   there a question? |
| 10:53:45 | **14**    A.   That Agreement is not a blanket agreement to |
| 10:53:47 | **15**   give them action to take lawsuits, to take legal |
| 10:53:50 | **16**   action.  It's saying we are going to sell them debt. |
| 10:54:04 | **17**    Q.   And your interpretation of Exhibit 7 is |
| 10:54:06 | **18**   you're agreeing to sell them all unpaid medical |
| 10:54:09 | **19**   bills -- |
| 10:54:09 | **20**    A.   Not -- |
| 10:54:09 | **21**    Q.   -- in the past and in the future. |
| 10:54:11 | **22**    A.   Not "all."  Certain unpaid medical bills. |
| 10:54:17 | **23**   Which is why then we sign off on Exhibit -- whatever |
| 10:54:21 | **24**   one's we've been talking about. |
| 10:54:23 | **25**     MR. KLUTHO:  Eleven. |

94

| | |
|---|---|
| 10:54:24 | **1**    A.   -- 11 as individual review. |
| 10:54:32 | **2**    Q.   Page 4, paragraph 4. |
| 10:54:41 | **3**    Q.   Page 4, paragraph 4. |
| 10:54:43 | **4**    Q.   The Hospital -- that's Allina -- shall enter |
| 10:54:47 | **5**   into a written contract directly with an attorney or |
| 10:54:51 | **6**   law firm utilized by it to collect debts from its |
| 10:54:56 | **7**   patients and shall not subcontract or delegate the |
| 10:55:00 | **8**   selection of any third-party debt collection attorney |
| 10:55:04 | **9**   or law firm to its debt collection agency. |
| 10:55:07 | **10**     Did I read it correctly? |
| 10:55:10 | **11**    A.   You read that correctly. |
| 10:55:12 | **12**    Q.   How is the first paragraph of Exhibit 8 not |
| 10:55:15 | **13**   a violation of this Court order? |
| 10:55:19 | **14**    A.   Exhibit 8.  The suit authorization. |
| 10:55:32 | **15**     At this point, because it's going with the |
| 10:55:35 | **16**   Bill of Sale, we're giving them that authorization. |
| 10:55:39 | **17**   So I don't understand why you would think it would be. |
| 10:55:42 | **18**    Q.   Well the first paragraph of Exhibit 8 has |
| 10:55:48 | **19**   Allina delegating to ARS to, quote, select an |
| 10:55:56 | **20**   experienced agency to pursue collection of the |
| 10:55:58 | **21**   accounts accompanying this Suit Authorization and |
| 10:56:01 | **22**   Assignment. |
| 10:56:02 | **23**    A.   Umm-hmm. |
| 10:56:02 | **24**    Q.   Correct? |
| 10:56:03 | **25**    A.   Correct. |

95

| | |
|---|---|
| 10:56:05 | **1**    Q.   But first of all, ARS didn't actually do |
| 10:56:07 | **2**   that, did they? |
| 10:56:09 | **3**     MR. KLUTHO:  Object -- |
| 10:56:10 | **4**    A.   You'd have to ask ARS. |
| 10:56:11 | **5**    Q.   Okay.  How is that not Allina subcontract or |
| 10:56:18 | **6**   delegating the selection of any third-party debt |
| 10:56:22 | **7**   collection attorney or law firm to its debt collection |
| 10:56:25 | **8**   agency, ARS? |
| 10:56:25 | **9**     MR. KLUTHO:  Object to the form of the |
| 10:56:27 | **10**   question. |
| 10:56:28 | **11**     Counsel, you've got a client, Ferkingstad, |
| 10:56:31 | **12**   who was not sued by a lawyer, -- |
| 10:56:32 | **13**     THE WITNESS:  Right. |
| 10:56:33 | **14**     MR. KLUTHO:  -- who was not sued by other |
| 10:56:34 | **15**   law firms.  That's the issue in this case.  Ask |
| 10:56:38 | **16**   questions about it. |
| 10:56:41 | **17**   BY MR. SCHWIEBERT: |
| 10:56:41 | **18**    Q.   Do you understand the question? |
| 10:56:43 | **19**    A.   I do, but I -- |
| 10:56:45 | **20**     Actually I don't.  Repeat the question, |
| 10:56:46 | **21**   please. |
| 10:56:48 | **22**    Q.   How is the first paragraph of Exhibit Number |
| 10:56:52 | **23**   8, which you signed on October 7th of 2015, not Allina |
| 10:57:01 | **24**   subcontracting or delegating the selection of any |
| 10:57:07 | **25**   third-party debt collection agency or law firm to its |

96

| | |
|---|---|
| 10:57:10 | **1**   debt collection agency, ARS? |
| 10:57:13 | **2**     MR. KLUTHO:  Objection, -- |
| 10:57:14 | **3**    A.   That sounds like such fancy words.  In my |
| 10:57:17 | **4**   mind this is authorizing them to do that.  How it's |
| 10:57:20 | **5**   not a violation of this, I don't know.  Those are all |
| 10:57:24 | **6**   kinds of fancy words. |
| 10:57:25 | **7**     I'm going to tell you that we do authorize |
| 10:57:27 | **8**   this, and at the same time we're also doing a Bill of |
| 10:57:30 | **9**   Sale.  So the Bill of Sale and the Suit Authorization |
| 10:57:33 | **10**   go together. |
| 10:57:35 | **11**    Q.   I just need to make the record clear -- |
| 10:57:35 | **12**    A.   That's great. |
| 10:57:38 | **13**    Q.   -- the "this's" and the "that's." |
| 10:57:39 | **14**    A.   Okay. |
| 10:57:40 | **15**    Q.   The "this" which allows ARS to select an |
| 10:57:44 | **16**   experienced agency to pursue collection is Exhibit 8. |
| 10:57:48 | **17**    A.   Umm-hmm. |
| 10:57:49 | **18**     THE REPORTER:  Your answer, please? |
| 10:57:50 | **19**    A.   Yes. |
| 10:57:51 | **20**    Q.   And the "that" which is the document which |
| 10:57:54 | **21**   says Allina can't do that, is Exhibit 6. |
| 10:57:58 | **22**    A.   Correct. |
| 10:58:08 | **23**    Q.   Page 5, paragraph 7. |
| 10:58:10 | **24**     MR. KLUTHO:  Counsel, I'm just curious. |
| 10:58:11 | **25**   What statement in here says they can't pick a |

97

| | |
|---|---|
| 10:58:14 1 | collection agency? |
| 10:58:18 2 | Q. The Hospital shall require -- |
| 10:58:20 3 | MR. KLUTHO: Where are you reading now? |
| 10:58:22 4 | Q. -- that its -- |
| 10:58:23 5 | MR. SCHWIEBERT: Page 5, number 7. |
| 10:58:25 6 | MR. KLUTHO: Well I was just asking the |
| 10:58:26 7 | back -- you got to back up for me. |
| 10:58:28 8 | Q. The Hospital shall require that its debt |
| 10:58:30 9 | collection attorneys take the following -- |
| 10:58:31 10 | A. Can you go back and read the previous |
| 10:58:33 11 | paragraph that we were discussing, please? |
| 10:58:35 12 | Q. Paragraph 4: "The Hospital shall enter into |
| 10:58:38 13 | a written contract directly with any attorney or law |
| 10:58:42 14 | firm utilized by it to collect debt from its patients |
| 10:58:46 15 | and shall not subcontract or delegate the selection of |
| 10:58:51 16 | any third party debt collection attorney -- |
| 10:58:55 17 | MR. KLUTHO: Attorney. |
| 10:58:55 18 | Q. -- or law firm to its debt collection |
| 10:58:58 19 | agency." |
| 10:59:00 20 | MR. KLUTHO: How does that have anything to |
| 10:59:02 21 | do with Ferkingstad? |
| 10:59:02 22 | BY MR. SCHWIEBERT: |
| 10:59:03 23 | Q. Paragraph 7, page 5. |
| 10:59:06 24 | A. How does that have anything to do with the |
| 10:59:07 25 | case we're talking about? |

98

| | |
|---|---|
| 10:59:07 1 | Q. I get to ask the questions and you get to |
| 10:59:10 2 | answer the questions, that's how a deposition works. |
| 10:59:10 3 | MR. KLUTHO: No. You can do whatever you |
| 10:59:12 4 | want. |
| 10:59:12 5 | Q. Page 5, -- |
| 10:59:12 6 | THE WITNESS: Okay. |
| 10:59:12 7 | A. Page 5. |
| 10:59:13 8 | Q. -- paragraph number 7. The Hospital, that's |
| 10:59:15 9 | Allina, shall require its third party debt collection |
| 10:59:18 10 | attorneys to take the following actions with respect |
| 10:59:19 11 | to the collection of medical debts from patients. |
| 10:59:23 12 | Did I read 7 correctly? |
| 10:59:24 13 | A. Yes. |
| 10:59:25 14 | Q. Okay. And then there is "a" through "f"; |
| 10:59:30 15 | correct? |
| 10:59:32 16 | A. Yes. |
| 10:59:32 17 | Q. These are the things that Allina is supposed |
| 10:59:35 18 | to require its debt collectors to do; -- |
| 10:59:38 19 | MR. KLUTHO: Objection, -- |
| 10:59:39 20 | Q. -- correct? |
| 10:59:40 21 | MR. KLUTHO: -- it's debt collection |
| 10:59:42 22 | attorneys. |
| 10:59:42 23 | A. Attorneys. |
| 10:59:45 24 | Has nothing to do with agency. |
| 10:59:48 25 | MR. KLUTHO: You read it, counsel. |

99

| | |
|---|---|
| 10:59:49 1 | Q. Does ARS not use attorneys, to avoid |
| 10:59:55 2 | paragraph 7? |
| 10:59:57 3 | MR. KLUTHO: Object to the form of the -- |
| 10:59:57 4 | A. I'm not an expert on -- |
| 10:59:59 5 | MR. KLUTHO: -- question as argumentative. |
| 10:59:59 6 | A. -- it. You'd have to ask them. |
| 11:00:06 7 | Q. All right. D, for example -- |
| 11:00:06 8 | (Interruption by the reporter.) |
| 11:00:09 9 | MR. KLUTHO: That it was an improper |
| 11:00:11 10 | question based upon his own reading of the document, |
| 11:00:13 11 | and it was also obnoxious and argumentative. |
| 11:00:13 12 | BY MR. SCHWIEBERT: |
| 11:00:18 13 | Q. d, Serve with any summons and complaint the |
| 11:00:21 14 | form attached as Exhibit A, or such other form |
| 11:00:25 15 | approved in advance by the Attorney General's office; |
| 11:00:27 16 | correct? |
| 11:00:28 17 | MR. KLUTHO: You read that correctly. |
| 11:00:29 18 | A. That's what D says, yes. |
| 11:00:31 19 | MR. KLUTHO: We'll stipulate that you read |
| 11:00:32 20 | that. |
| 11:00:33 21 | Q. And there is an Exhibit A on page 19 of |
| 11:00:35 22 | Exhibit 6; -- |
| 11:00:35 23 | A. Okay. |
| 11:00:38 24 | Q. -- correct? |
| 11:00:38 25 | MR. KLUTHO: We'll stipulate. |

100

| | |
|---|---|
| 11:00:39 1 | Q. Was Exhibit A on page 19 of Exhibit 6 or |
| 11:00:44 2 | other form approved in advance by the Attorney |
| 11:00:46 3 | General's office served on Ms. Ferkingstad along with |
| 11:00:49 4 | the Complaint in this matter? |
| 11:00:50 5 | MR. KLUTHO: Objection, irrelevant. This |
| 11:00:53 6 | paragraph, counsel, that you're beating, talks about |
| 11:00:56 7 | attorneys. Your client was not -- |
| 11:01:00 8 | A. Because ARS is not attorneys, no, this was |
| 11:01:02 9 | not done. |
| 11:01:05 10 | Q. I just want to make sure I understand the |
| 11:01:07 11 | answer to the question. |
| 11:01:07 12 | The answer to the question is "no," Exhibit |
| 11:01:13 13 | A was not served on Ferkingstad. |
| 11:01:14 14 | A. Correct. |
| 11:01:18 15 | Q. Page 8, paragraph 15. The Hospital, that's |
| 11:01:28 16 | Allina, shall enter into a written contract with any |
| 11:01:32 17 | collection agency utilized by it to collect debts from |
| 11:01:36 18 | its patients. |
| 11:01:37 19 | Did I read that much correctly? |
| 11:01:39 20 | A. You did. |
| 11:01:40 21 | Q. Is there a written contract between Allina |
| 11:01:42 22 | and ARS? |
| 11:01:43 23 | A. I already told you earlier that we have a |
| 11:01:45 24 | Business Associates Agreement, so yes, there is. |
| 11:01:49 25 | Q. Does that contract require ARS to act in |

101

| | |
|---|---|
| 11:01:53 | 1  accordance with the terms of this Agreement, |
| 11:01:56 | 2  applicable laws, and the policy described in paragraph |
| 11:01:59 | 3  36 which appears on page 15 and 16 of this document? |
| 11:02:05 | 4      A.   I haven't read that document in detail so |
| 11:02:09 | 5  I'm not going to answer that on the record. |
| 11:02:12 | 6      Q.   Did you review that document -- |
| 11:02:13 | 7      A.   I would assume so. |
| 11:02:15 | 8      Q.   -- in preparation for today's deposition? |
| 11:02:16 | 9      A.   No, I did not. |
| 11:02:25 | 10     Q.   Paragraph 21, page 10.  "The Hospital shall |
| 11:02:33 | 11  require any third party debt collection agency and |
| 11:02:36 | 12  attorney utilized by it to keep a log of all oral and |
| 11:02:41 | 13  written complaints received by any patient concerning |
| 11:02:43 | 14  the conduct of the agency." |
| 11:02:45 | 15          Did I read that correctly? |
| 11:02:47 | 16     A.   You read that correctly. |
| 11:02:49 | 17     Q.   Does Allina require ARS to keep a log? |
| 11:02:51 | 18     A.   We do. |
| 11:02:52 | 19     Q.   Okay.  Does the contract with ARS provide |
| 11:02:59 | 20  that the failure of them to log and provide all |
| 11:03:03 | 21  patients' complaints will result in termination of |
| 11:03:07 | 22  Allina's contract with ARS? |
| 11:03:09 | 23          MR. KLUTHO:  Counsel, you just misread the |
| 11:03:11 | 24  document.  You changed a word from "may" to "will." |
| 11:03:18 | 25          Why do you keep staring like that?  Object |

102

| | |
|---|---|
| 11:03:20 | 1  to the form of the question. |
| 11:03:23 | 2      Q.   Do you understand the question? |
| 11:03:23 | 3      A.   I understand the question, and again I'll |
| 11:03:25 | 4  reference back to not being super-familiar with the |
| 11:03:28 | 5  Business Associate Agreements. |
| 11:03:29 | 6          We do go through an annual audit for the |
| 11:03:33 | 7  Attorney General Agreement every year with our |
| 11:03:34 | 8  internal counsel, and ARS is part of that audit. |
| 11:03:39 | 9      Q.   Part of the internal counsel. |
| 11:03:41 | 10     A.   With our internal counsel, yes. |
| 11:03:51 | 11     Q.   My question -- |
| 11:03:53 | 12          That's the audit, which is actually a |
| 11:03:55 | 13  different provision. |
| 11:03:56 | 14          My question has to do with the contract |
| 11:03:58 | 15  between Allina and ARS. |
| 11:04:02 | 16     A.   And I'm -- |
| 11:04:03 | 17     Q.   Are you -- |
| 11:04:03 | 18          You're just not prepared to -- |
| 11:04:04 | 19     A.   No. |
| 11:04:06 | 20     Q.   -- testify on the -- |
| 11:04:06 | 21     A.   Correct. |
| 11:04:08 | 22     Q.   -- contract between the two. |
| 11:04:08 | 23          Paragraph 25.  "The Hospital shall include |
| 11:04:14 | 24  the following language on all collection notices sent |
| 11:04:18 | 25  to patients by it or its third party debt collection |

103

| | |
|---|---|
| 11:04:22 | 1  agencies or attorneys, and on all cover letters |
| 11:04:25 | 2  serving all lawsuits and garnishment papers." |
| 11:04:28 | 3          And then there's particular language, |
| 11:04:30 | 4  including the number for the Minnesota Attorney |
| 11:04:32 | 5  General's office; correct? |
| 11:04:33 | 6      A.   Correct. |
| 11:04:34 | 7      Q.   Do you know if that language appeared in the |
| 11:04:37 | 8  communication with Ms. Ferkingstad in this matter? |
| 11:04:40 | 9          MR. KLUTHO:  What communication, counsel? |
| 11:04:42 | 10  Object to the form of the question, -- |
| 11:04:43 | 11     A.   Which communication? |
| 11:04:43 | 12          MR. KLUTHO:  -- overbroad. |
| 11:04:45 | 13     Q.   Let's start with the Complaint. |
| 11:04:46 | 14          When the Complaint was mailed to Ms. |
| 11:04:48 | 15  Ferkingstad was that language included? |
| 11:04:49 | 16     A.   I did not mail the Complaint, so I don't |
| 11:04:51 | 17  know. |
| 11:04:52 | 18     Q.   But that's the type of thing that Allina is |
| 11:04:54 | 19  supposed to review in its annual audit. |
| 11:05:00 | 20     A.   Correct. |
| 11:05:22 | 21     Q.   Page 15, paragraph 36.  The Hospital's board |
| 11:05:33 | 22  of directors -- |
| 11:05:33 | 23     A.   Umm-hmm. |
| 11:05:33 | 24     Q.   -- Allina's board of directors shall adopt |
| 11:05:35 | 25  the following policies which shall not be inconsistent |

104

| | |
|---|---|
| 11:05:38 | 1  with this agreement.  And then "d" is:  "A policy |
| 11:05:42 | 2  establishing the procedures to be utilized by the |
| 11:05:44 | 3  Hospital's employees who participate in the collection |
| 11:05:47 | 4  of medical debt..." |
| 11:05:48 | 5          Is there such a policy? |
| 11:05:54 | 6      A.   Yes. |
| 11:05:57 | 7      Q.   Is ARS employees of Allina? |
| 11:06:04 | 8      A.   They're employees of Accounts Receivable |
| 11:06:07 | 9  Services. |
| 11:06:07 | 10     Q.   Which is a wholly-owned subsidiary of -- |
| 11:06:09 | 11     A.   Allina. |
| 11:06:09 | 12     Q.   -- Allina. |
| 11:06:15 | 13          Did you review the policy in preparation for |
| 11:06:18 | 14  today's deposition? |
| 11:06:20 | 15          MR. KLUTHO:  Counsel, you didn't ask her |
| 11:06:21 | 16  to. |
| 11:06:21 | 17     A.   No, I did not. |
| 11:06:23 | 18     Q.   Did you bring a copy of the policy with |
| 11:06:25 | 19  you -- |
| 11:06:25 | 20          MR. KLUTHO:  You didn't ask her to. |
| 11:06:27 | 21     Q.   -- to testify today? |
| 11:06:28 | 22     A.   No.  It's publicly on our web page.  I can |
| 11:06:33 | 23  get it for you. |
| 11:06:44 | 24     Q.   37 is the audit; correct? |
| 11:06:49 | 25     A.   "Shall review."  Yeah.  Yes.  "Audit's |

105

| | |
|---|---|
| 11:06:51 | 1 probably a bad word. It's a review. |
| 11:06:54 | 2 You're the one that's all about words, so |
| 11:06:56 | 3 sorry. It is a review of the Attorney General |
| 11:06:58 | 4 Agreement -- |
| 11:06:59 | 5 **Q.** Let me read -- |
| 11:06:59 | 6 **A.** -- clearly. |
| 11:07:00 | 7 **Q.** Paragraph 37 -- |
| 11:07:01 | 8 MR. KLUTHO: You don't need to read it, |
| 11:07:02 | 9 counsel. |
| 11:07:02 | 10 **Q.** The Hospital's -- |
| 11:07:03 | 11 MR. KLUTHO: We can see it. |
| 11:07:04 | 12 **Q.** -- Board of Directors, Allina's Board of |
| 11:07:05 | 13 Directors -- |
| 11:07:06 | 14 **A.** Correct. |
| 11:07:08 | 15 **Q.** -- reviewing at least one time per year |
| 11:07:08 | 16 Allina's practices in the following areas; correct? |
| 11:07:11 | 17 **A.** Correct. |
| 11:07:12 | 18 **Q.** You referred to this earlier as an audit. |
| 11:07:13 | 19 **A.** Correct. |
| 11:07:13 | 20 **A.** Correct. |
| 11:07:14 | 21 The first -- |
| 11:07:14 | 22 **A.** It's a review. |
| 11:07:15 | 23 **Q.** The first thing that the Board of Directors |
| 11:07:17 | 24 has to do is review the filing of debt collection |
| 11:07:21 | 25 litigation against hospital patients; correct? |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

106

| | |
|---|---|
| 11:07:26 | 1 **A.** Umm-hmm. Correct. |
| 11:07:27 | 2 **Q.** Did that -- |
| 11:07:28 | 3 When did that happen? |
| 11:07:31 | 4 **A.** The review happens annually. |
| 11:07:32 | 5 **Q.** When in the year? |
| 11:07:36 | 6 **A.** It's hard to say. I would say February or |
| 11:07:38 | 7 March normally. Depends on when the Board meets. |
| 11:08:16 | 8 **Q.** The Complaint against Ms. Ferkingstad was |
| 11:08:22 | 9 filed on October 19th of 2015. I'll represent that to |
| 11:08:27 | 10 you. I don't expect you to have memorized the date. |
| 11:08:30 | 11 **A.** Okay. |
| 11:08:31 | 12 **Q.** When would the annual review by the Board of |
| 11:08:35 | 13 Directors of that litigation have taken place? The |
| 11:08:46 | 14 following -- |
| 11:08:46 | 15 **A.** Again, -- |
| 11:08:47 | 16 **Q.** -- February or March. |
| 11:08:47 | 17 **A.** -- not necessarily in my purview, but yes, |
| 11:08:51 | 18 it would be included sometime in that year end. |
| 11:08:56 | 19 **Q.** Is there a record of this audit or annual |
| 11:08:59 | 20 review? |
| 11:09:02 | 21 **A.** There -- I don't know. |
| 11:09:15 | 22 **Q.** Does Allina currently have internal debt |
| 11:09:19 | 23 collectors? "c" is -- |
| 11:09:22 | 24 **A.** No. |
| 11:09:22 | 25 **Q.** -- the debt collection activities of its |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

107

| | |
|---|---|
| 11:09:24 | 1 internal debt collectors. |
| 11:09:26 | 2 MR. KLUTHO: Objection, irrelevant. |
| 11:09:27 | 3 **Q.** Correct? |
| 11:09:28 | 4 **A.** We call them patient accounts resolution |
| 11:09:31 | 5 specialists, that's our customer service team that |
| 11:09:33 | 6 takes phone calls when the patients call us. We don't |
| 11:09:36 | 7 call them debt collectors. |
| 11:09:38 | 8 MR. KLUTHO: Counsel, you keep laughing and |
| 11:09:39 | 9 we're leaving. Knock it off. |
| 11:09:43 | 10 **Q.** So if you go back to the bad debt final |
| 11:09:48 | 11 referral document. If Ms. Ferkingstad had called |
| 11:10:15 | 12 Allina on November 9th of 2015 she would have spoke to |
| 11:10:22 | 13 one of these patient account -- I missed the next |
| 11:10:26 | 14 word. |
| 11:10:26 | 15 **A.** Resolution. |
| 11:10:27 | 16 **Q.** -- resolution -- |
| 11:10:28 | 17 **A.** Specialists. |
| 11:10:29 | 18 **Q.** -- specialists. |
| 11:10:31 | 19 Correct? |
| 11:10:31 | 20 **A.** Correct. |
| 11:10:35 | 21 **Q.** And that patient account resolution |
| 11:10:38 | 22 specialist would have -- presumably could pull up her |
| 11:10:42 | 23 record; correct? |
| 11:10:43 | 24 **A.** Correct. |
| 11:10:44 | 25 **Q.** And if they had pulled up her record there |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

108

| | |
|---|---|
| 11:10:47 | 1 would have been a balance on her account in Allina's |
| 11:10:50 | 2 records; correct? |
| 11:10:52 | 3 MR. KLUTHO: Counsel, I'm going to object |
| 11:10:53 | 4 as an improper hypothetical. No such call occurred. |
| 11:10:58 | 5 **Q.** Do you understand the hypothetical? |
| 11:10:59 | 6 **A.** I do. Hypothetically, yes. |
| 11:11:12 | 7 **Q.** Are the patient account resolution |
| 11:11:15 | 8 specialists internal debt collectors? I'm just trying |
| 11:11:19 | 9 to figure out who the players are in this -- |
| 11:11:21 | 10 No, they're not? |
| 11:11:22 | 11 **A.** No. |
| 11:11:22 | 12 **Q.** They're just people who answer questions |
| 11:11:24 | 13 like Ms. Ferkingstad calling to say, what's my |
| 11:11:26 | 14 balance? |
| 11:11:26 | 15 MR. KLUTHO: Object to the form of the |
| 11:11:28 | 16 question. Ms. Ferkingstad did not call about her |
| 11:11:30 | 17 balance. It's an improper hypothetical. |
| 11:11:31 | 18 **A.** Correct. |
| 11:11:36 | 19 **Q.** Does Allina use debt collection agencies |
| 11:11:40 | 20 other than ARS? |
| 11:11:43 | 21 **A.** No. |
| 11:11:57 | 22 **Q.** So once a year Allina's Board of Directors |
| 11:11:57 | 23 -- |
| 11:12:00 | 24 At least once a year Allina's Board of |
| 11:12:04 | 25 Director reviews ARS's debt collection activity under |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

109

```
11:12:10  1   section 37 b of Exhibit 6.
11:12:15  2        A.   There is an annual review of the Attorney
11:12:19  3   General agreement, of which ARS is part of.
11:12:22  4        Q.   Are you part of that annual review?
11:12:24  5        A.   Yes.
11:12:25  6        Q.   Do you know what documents are prepared for
11:12:26  7   that annual review?
11:12:29  8        A.   We prepare a summary that --
11:12:34  9             For my portion I prepare a summary that goes
11:12:37 10   to our internal counsel, and they present to the
11:12:42 11   board.
11:12:45 12        Q.   Okay.  We'll come back to your summary.
11:12:48 13             Do you know what other documents are
11:12:50 14   provided to the board in that interview?
11:12:52 15        A.   No.
11:12:52 16        Q.   
11:12:53 17             What's in your summary?
11:12:56 18        A.   I audit our internal processes before we
11:12:59 19   send them to Accounts Receivable Services.  So making
11:13:04 20   sure that we billed who we were supposed to, that
11:13:08 21   there weren't complaints that were contested, items
11:13:11 22   like that.  I review a sampling of accounts.  I also
11:13:15 23   review a sampling of accounts to make sure that if
11:13:17 24   there is an uninsured discount that should be
11:13:20 25   appropriate, that that was applied.  Those are within
```

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

111

```
11:14:41  1        Q.   Do you get feedback from Allina's Board of
11:14:48  2   Directors review of these areas?
11:14:50  3        A.   No, I do not.
11:14:56  4        Q.   Do you know whether or not there is a --
11:14:58  5             I understand your summary is a part of all
11:15:00  6   of the information that's given to the board.
11:15:02  7        A.   Umm-hmm.
11:15:24  8        Q.   You've never seen any Board of Directors
11:15:27  9   minutes talking about that.
11:15:29 10        A.   Correct.
11:15:30 11        Q.   It's not something you review.
11:15:31 12        A.   Correct.
11:15:32 13        Q.   Not something you looked at in preparation
11:15:33 14   for this deposition.
11:15:34 15        A.   Correct.
11:15:50 16        MR. SCHWIEBERT:  Let's take another
11:15:53 17   15-minute break.
11:15:53 18        MR. KLUTHO:  Fifteen minutes?  What do we
11:15:56 19   need fifteen for?
11:16:06 20        (Discussion off the record.)
11:16:06 21        (Recess taken from 11:16 to 11:38 a.m.)
11:38:28 22        MR. SCHWIEBERT:  We are going to postpone
11:38:29 23   the remainder of this deposition until after I have
11:38:32 24   filed my motion for sanctions.
11:38:43 25             As to the personal deposition, are you
```

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

110

```
11:13:25  1   my purview.
11:13:26  2        Q.   So what does the summary state?  You say you
11:13:29  3   provide a summary to --
11:13:29  4        A.   Right.
11:13:31  5        Q.   -- each --
11:13:31  6        A.   We sample accounts to see did we do what we
11:13:35  7   were supposed to do; "yes" or "no."  And then the
11:13:37  8   summary is did we do what we were supposed to do,
11:13:39  9   "yes" or "no," in the sampling of accounts that we
11:13:41 10   look at.
11:13:42 11        Q.   Do you know how many accounts you sample?
11:13:43 12        A.   We sample a hundred a year.
11:13:45 13        Q.   Do you know about what percentage of the
11:13:47 14   total number of accounts that is?
11:13:48 15        A.   No.
11:13:48 16        Q.   One percent, half a percent?
11:13:50 17        A.   I don't.
11:13:51 18        Q.   No idea.
11:13:51 19             And included in that sample are the accounts
11:13:57 20   that have been transferred to ARS.
11:14:01 21        A.   Correct.
11:14:27 22        Q.   Do you know how long that summary document
11:14:28 23   is?
11:14:29 24        A.   No.  It's pretty short.  It's probably a
11:14:31 25   page.
```

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

112

```
11:38:44  1   going to give the same instructions not to answer if
11:38:46  2   I ask the same questions during the personal
11:38:49  3   deposition?
11:38:49  4        MR. KLUTHO:  I have no idea what you're
11:38:50  5   saying, counsel.  I have no idea --
11:38:50  6        MR. SCHWIEBERT:  All right.
11:38:52  7        MR. KLUTHO:  -- what your basis is for a
11:38:54  8   motion for sanctions.
11:38:56  9        MR. SCHWIEBERT:  Okay.
11:38:56 10   BY MR. SCHWIEBERT:
11:38:57 11        Q.   Can you look at Exhibit 15.
11:39:02 12        MR. KLUTHO:  If you're going to ask the
11:39:04 13   same questions about 15 through 18; is it?
11:39:06 14        MR. SCHWIEBERT:  Yes.
11:39:07 15        MR. KLUTHO:  Yeah.  That's going to be the
11:39:08 16   same responses.  You're now asking her as an
11:39:10 17   individual, --
11:39:10 18        MR. SCHWIEBERT:  Yes.
11:39:11 19        MR. KLUTHO:  -- Ms. Fountain as an
11:39:13 20   individual, is that what you're trying to do?
11:39:16 21        MR. SCHWIEBERT:  Yes.
11:39:16 22        MR. KLUTHO:  Yeah.  No.  She said she
11:39:18 23   doesn't know anything about these documents, counsel.
11:39:20 24        MR. SCHWIEBERT:  Are you going to instruct
11:39:21 25   her not to answer any questions regarding those
```

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

113

| | |
|---|---|
| 11:39:23 | 1 | documents? |
| 11:39:23 | 2 | MR. KLUTHO: Well it's not an instruction |
| 11:39:25 | 3 | not to answer. |
| 11:39:26 | 4 | Q. Can you please turn to page 15? |
| 11:39:27 | 5 | MR. KLUTHO: Can you let me finish? |
| 11:39:29 | 6 | A. Yeah. |
| 11:39:30 | 7 | MR. KLUTHO: She can't answer, counsel. |
| 11:39:31 | 8 | And we're not going to sit here and have you just |
| 11:39:36 | 9 | read documents and say, is that what it says. That's |
| 11:39:36 | 10 | not going to happen. So she -- |
| 11:39:38 | 11 | Do you have any information about these |
| 11:39:39 | 12 | documents. Do you have -- |
| 11:39:40 | 13 | THE WITNESS: No. |
| 11:39:41 | 14 | MR. KLUTHO: Do you feel like you have the |
| 11:39:42 | 15 | wherewithal to be able to testify about these |
| 11:39:44 | 16 | documents, -- |
| 11:39:44 | 17 | THE WITNESS: No. |
| 11:39:44 | 18 | MR. KLUTHO: -- and the knowledge? |
| 11:39:45 | 19 | THE WITNESS: No. |
| 11:39:45 | 20 | MR. KLUTHO: "No." Okay. Well then just |
| 11:39:47 | 21 | tell him you can't answer any questions about those |
| 11:39:49 | 22 | documents. |
| 11:39:49 | 23 | THE WITNESS: I can't answer questions |
| 11:39:50 | 24 | about these documents. |
| 11:39:50 | 25 | BY MR. SCHWIEBERT: |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

114

| | |
|---|---|
| 11:39:51 | 1 | Q. We'll take them one question at a time. |
| 11:39:53 | 2 | MR. KLUTHO: No, we don't. |
| 11:39:54 | 3 | MR. SCHWIEBERT: Are you going to give her |
| 11:39:55 | 4 | a blanket instruction not to answer any questions |
| 11:39:58 | 5 | regarding Exhibits 15, 16, 17 and Exhibit 18? |
| 11:40:02 | 6 | MR. KLUTHO: You just did that with her. |
| 11:40:04 | 7 | You're going to ask the same questions you just did, |
| 11:40:06 | 8 | right, when you had her as the corporate |
| 11:40:08 | 9 | representative? |
| 11:40:09 | 10 | MR. SCHWIEBERT: Yes. |
| 11:40:10 | 11 | MR. KLUTHO: Yeah. Then you still -- your |
| 11:40:11 | 12 | answers are the same; right? |
| 11:40:13 | 13 | THE WITNESS: Correct. |
| 11:40:13 | 14 | MR. KLUTHO: You haven't gotten any more |
| 11:40:15 | 15 | information between now and then; have you? |
| 11:40:17 | 16 | THE WITNESS: No, I didn't. No. |
| 11:40:18 | 17 | MR. SCHWIEBERT: Just so the record's |
| 11:40:19 | 18 | clear, you, counsel, instructed her not to answer in |
| 11:40:21 | 19 | the corporate capacity. |
| 11:40:21 | 20 | MR. KLUTHO: I know, but -- |
| 11:40:22 | 21 | MR. SCHWIEBERT: I want to make sure the |
| 11:40:23 | 22 | record is clear. You're not making her available to |
| 11:40:28 | 23 | answer those questions during her individual |
| 11:40:28 | 24 | deposition. |
| 11:40:29 | 25 | MR. KLUTHO: Yeah. What the record should |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

115

| | |
|---|---|
| 11:40:31 | 1 | show is that she didn't go along with my objection |
| 11:40:33 | 2 | and instruction. She went ahead, Ms. Fountain, and |
| 11:40:36 | 3 | told you that she doesn't have the information to be |
| 11:40:38 | 4 | able to answer any questions about those documents. |
| 11:40:40 | 5 | Isn't that what you said? |
| 11:40:41 | 6 | THE WITNESS: That's correct. |
| 11:40:43 | 7 | MR. SCHWIEBERT: We'll bring our motion for |
| 11:40:45 | 8 | sanctions. |
| 11:40:45 | 9 | MR. KLUTHO: I don't know what you're going |
| 11:40:46 | 10 | to get sanctions for. |
| 11:40:47 | 11 | Do you have any ability to answer any |
| 11:40:49 | 12 | questions about these documents? |
| 11:40:51 | 13 | THE WITNESS: No. |
| 11:40:51 | 14 | MR. KLUTHO: Okay. |
| 11:40:52 | 15 | THE WITNESS: I don't. |
| 11:40:53 | 16 | MR. KLUTHO: That's vexatious litigation, |
| 11:40:55 | 17 | counsel. |
| 11:40:56 | 18 | MR. SCHWIEBERT: That's the end of the |
| 11:40:57 | 19 | deposition. |
| 11:40:57 | 20 | MR. KLUTHO: What? |
| 11:40:58 | 21 | MR. SCHWIEBERT: To be continued pending my |
| 11:41:00 | 22 | motion for sanctions. |
| 11:41:01 | 23 | MR. KLUTHO: Just stay here. You said you |
| 11:41:03 | 24 | had hours of depositions left. |
| 11:41:05 | 25 | MR. SCHWIEBERT: I do -- |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

116

| | |
|---|---|
| 11:41:05 | 1 | THE WITNESS: Right. |
| 11:41:07 | 2 | MR. SCHWIEBERT: -- but you have put a |
| 11:41:09 | 3 | giant land mine in the deposition by saying there are |
| 11:41:11 | 4 | things that I can't ask her about that are related to |
| 11:41:14 | 5 | the continued questioning. |
| 11:41:15 | 6 | I've realized, taking some time and |
| 11:41:17 | 7 | thinking about it, it doesn't make sense to go what's |
| 11:41:19 | 8 | on the other side of the land mines you've improperly |
| 11:41:23 | 9 | placed in front of me. |
| 11:41:23 | 10 | MR. KLUTHO: I haven't -- |
| 11:41:24 | 11 | MR. SCHWIEBERT: So we're going to go to |
| 11:41:25 | 12 | the Court and the Court is going to resolve your |
| 11:41:27 | 13 | conduct, your client's failure to adequately prepare, |
| 11:41:29 | 14 | and your instructions not to answer in this |
| 11:41:31 | 15 | deposition. I'm going to ask for another deposition |
| 11:41:33 | 16 | in addition to sanctions in that motion. |
| 11:41:35 | 17 | I will provide you a detail which we can |
| 11:41:37 | 18 | attach in an email to send to the court regarding -- |
| 11:41:39 | 19 | under the court's required procedures, and then we'll |
| 11:41:42 | 20 | file the motion. |
| 11:41:42 | 21 | MR. KLUTHO: Yeah. I'm not sure I |
| 11:41:43 | 22 | understand that we're tracking, counsel. |
| 11:41:45 | 23 | Do you have more questions beyond these |
| 11:41:49 | 24 | Exhibits 15 through 18? |
| 11:41:51 | 25 | MR. SCHWIEBERT: Yes. |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

117

| | |
|---|---|
| 11:41:51 | 1 |
| 11:41:52 | 2 |
| 11:41:55 | 3 |

1   MR. KLUTHO:  Other areas?

2       What else are you going to ask besides 15

3   to 18?

4       MR. SCHWIEBERT:  I'm not answering your

5   question.  We're done.  We're done.

6       MR. KLUTHO:  How can you make a motion on

7   something to have her testify about something you

8   haven't even asked a question?  I've told you about

9   15 to 18, she says she doesn't have any information.

10      What else do you have?

11      MR. SCHWIEBERT:  We'll bring the motion.

12      MR. KLUTHO:  What else do you have?

13      Let's go ahead and do Ms. Drennen now.

14      MR. SCHWIEBERT:  No.

15      MR. KLUTHO:  Why?

16      MR. SCHWIEBERT:  It's noticed for tomorrow,

17  that's when I'll take it.

18      MR. KLUTHO:  And is there a reason --

19      MR. SCHWIEBERT:  Yes.

20      MR. KLUTHO:  You noticed a deposition for

21  this morning and you noticed a deposition for this

22  afternoon.  We have all afternoon and we're all here

23  and we have the day blocked out.

24      MR. SCHWIEBERT:  I will take the deposition

25  of Ms. Drennen tomorrow, as postponed pursuant to

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

119

1   MR. KLUTHO:  Show me where it included

2   that.

3       THE WITNESS:  Wow.

4       MR. SCHWIEBERT:  I'll see you tomorrow

5   morning at nine.

6       THE REPORTER:  We are off the record.

7       (Deposition suspended at 11:43 a.m.)

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

118

1   your request, until nine o'clock.

2       MR. KLUTHO:  I know, but you -- we're

3   finished with Ms. Fountain.

4       MR. SCHWIEBERT:  Well we're suspended until

5   the Court --

6       MR. KLUTHO:  So why don't we --

7       MR. SCHWIEBERT:  -- grants the motion and

8   we come back and do it again.

9       MR. KLUTHO:  So why don't we use the

10  time --

11      MR. SCHWIEBERT:  Because that's not what I

12  want to do, counsel.

13      THE WITNESS:  You're expecting me to be an

14  expert on the financials of Allina?

15      MR. SCHWIEBERT:  I'm not expecting you to

16  be an expert on anything.  I'm expecting you to come

17  prepared to testify on the topics, which included

18  that document.

19      MR. KLUTHO:  Where did it include this

20  document?  Show me.  Maybe I'll --

21      MR. SCHWIEBERT:  We're going to do it --

22      MR. KLUTHO:  Maybe I'll rethink.

23      THE WITNESS:  Yeah.  No.

24      MR. SCHWIEBERT:  We're going to do a motion

25  practice.

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

120

1       C E R T I F I C A T E

2       I, Debby J. Campeau, hereby certify that I

3   am qualified as a verbatim shorthand reporter; that I

4   took in stenographic shorthand the testimony of

5   JOCELYN J. FOUNTAIN at the time and place aforesaid;

6   and that the foregoing transcript consisting of 119

7   pages is a true and correct, full and complete

8   transcription of said shorthand notes, to the best of

9   my ability.

10      Dated at Lino Lakes, Minnesota, this 30th

11  day of October, 2017.

12

13

14

15      DEBBY J. CAMPEAU

16      Notary Public

17

18

19

20

21

22

23

24

25

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

                                                        121

```
1          S I G N A T U R E   P A G E

2      I, JOCELYN J. FOUNTAIN, the deponent, hereby

3   certify that I have read the foregoing transcript,

4   consisting of 119 pages, and that said transcript is

5   a true and correct, full and complete transcription

6   of my deposition, except per the attached

7   corrections, if any.

8   PAGE  LINE    CHANGE/REASON FOR CHANGE

9   ____  ____   _____

10  ____  ____   _____

11  ____  ____   _____

12  ____  ____   _____

13  ____  ____   _____

14  ____  ____   _____

15  ____  ____   _____

16  ____  ____   _____

17  ____  ____   _____

18

19  _____   _____

20    Date          Signature of Witness

21

22                  WITNESS MY HAND AND SEAL this _____

23                  day of _____, 2017.

24

25  (DJC)         _____
```

                         STIREWALT & ASSOCIATES
                  1-800-553-1953  info@stirewalt.com