---

**1**

```
 1           UNITED STATES DISTRICT COURT

 2              DISTRICT OF MINNESOTA

 3   - - - - - - - - - - - - - - - - - - - - -

 4   Andrea Ferkingstad,

 5                          Plaintiff,

 6        vs.    Civil Action No. 16-cv-03565-JNE-BRT

 7   Accounts Receivable Services, LLC,

 8                          Defendant.

 9   - - - - - - - - - - - - - - - - - - - - -

10

11           DEPOSITION OF BONITA J. DRENNEN

12              VOLUME I, PAGES 1 - 98

13                OCTOBER 24, 2017

14

15

16           (The following is the deposition of BONITA

17   J. DRENNEN, taken pursuant to Notice of Taking

18   Deposition, at the offices of Bassford Remele, 100

19   South Fifth Street, Suite 1500, in the City of

20   Minneapolis, State of Minnesota, commencing at

21   approximately 9:01 o'clock a.m., October 24, 2017.)

22

23

24

25
```

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

---

**2**

```
 1   APPEARANCES:
 2     On Behalf of the Plaintiff:
 3       Darren Brayer Schwiebert
         DBS LAW LLC
 4       301 Fourth Avenue South
         Suite 280N
 5       Minneapolis, Minnesota  55415

 6     On Behalf of the Defendant:

 7       Michael J. Klutho
         BASSFORD REMELE, P.A.
 8       100 South Fifth Street
         Suite 1500
 9       Minneapolis, Minnesota  55415
```

```
10                 EXAMINATION INDEX
     WITNESS        EXAMINED BY         PAGE
11   Ms. Drennen      Mr. Schwiebert        4
                      Mr. Klutho           95
12

                   EXHIBIT INDEX
13   EXHIBIT     DESCRIPTION            PAGE
14     19      AMENDED NOTICE OF TAKING DEPOSITION  3
             OF ACCOUNTS RECEIVABLE SERVICES,
             LLC, September 8, 2017, 2 pgs.
15     20      DECLARATION OF BONITA DRENNEN,       3
             5-3-17, ARS0016 to 0018
16     21      Blanket Purchase Agreement, 1 pg.   34
       22      Group exhibit, STATEMENT OF CLAIM   69
17           AND SUMMONS and additional, ARS0001
             to 0018
18     23      DEFENDANT'S ANSWERS TO PLAINTIFF'S  83
             FIRST SET OF INTERROGATORIES,
19           DOCUMENT REQUESTS AND REQUESTS FOR
             ADMISSIONS, June 16, 2017, 8 pgs.
20
21
22
23
24
25
```

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

---

**3**

```
         1              P R O C E E D I N G S

         2        (Exhibits 19 & 20 marked for

         3        identification.)

09:01:40 4    (Witness sworn.)

         5            BONITA J. DRENNEN,

         6        Called as a witness, being first

         7        duly sworn, was examined and

         8        testified as follows:

         9               EXAMINATION

        10   BY MR. SCHWIEBERT:

09:02:00 11   Q.    Good morning, Ms. Drennen.

09:02:01 12   A.    Good morning.

09:02:02 13   Q.    Can you please state and spell your full

09:02:04 14   name for the record?

09:02:04 15   A.    Bonita, B-O-N-I-T-A, J., Drennen,

09:02:10 16   D-R-E-N-N-E-N.

09:02:10 17   Q.    Have you ever been deposed before?

09:02:15 18   A.    Once.

09:02:16 19   Q.    Okay.

09:02:17 20   A.    Many years ago.

09:02:21 21   Q.    I'm just going to go over the ground rules.

09:02:25 22   You probably heard me explain this yesterday.

09:02:27 23   A.    Yes.

09:02:28 24   Q.    The court reporter is going to transcribe

09:02:30 25   all of my questions and all of your answers.
```

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

---

**4**

```
09:02:33 1    A.    Okay.

09:02:33 2    Q.    In order for that to be an effective way to

09:02:36 3    capture your testimony under oath there are two things

09:02:39 4    that we need to do.  The first is we can't talk over

09:02:43 5    each other.  I will try my best to wait until you've

09:02:48 6    given your full answer before I ask the next question,

09:02:51 7    and all I ask is that you wait until I get the full

09:02:54 8    question out before you start answering.

09:02:57 9        Do you understand that?

09:02:57 10   A.    Yes.

09:02:58 11       MR. KLUTHO:  Can I just ask you a question?

09:03:00 12   Were you here yesterday for Jocelyn Fountain's

09:03:02 13   deposition?

09:03:03 14       THE WITNESS:  Yes, I was.

09:03:04 15       MR. KLUTHO:  Did you hear all of his

09:03:05 16   instructions to her?

09:03:07 17       THE WITNESS:  Yes, I dd.

09:03:07 18       MR. KLUTHO:  And you agree to abide by

09:03:09 19   those?

09:03:10 20       THE WITNESS:  I do.

09:03:10 21       MR. KLUTHO:  Okay.

09:03:10 22   BY MR. SCHWIEBERT:

09:03:10 23   Q.    The second thing is, your answers have to be

09:03:12 24   verbal, "yes," "no," "I don't know."  Nods, head

09:03:17 25   shrugs, uh-hmm's, can't be captured by the court
```

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

---

5

| | |
|---|---|
| 09:03:21 1 | reporter as being an answer to the question. |
| 09:03:22 2 | Do you understand that? |
| 09:03:23 3 | A. I do. |
| 09:03:24 4 | Q. If at any point you need a break, all you |
| 09:03:26 5 | have to do is ask and we'll take break. All that I |
| 09:03:29 6 | ask is that you answer whatever question is pending |
| 09:03:31 7 | before you take a break. |
| 09:03:32 8 | Is that fair? |
| 09:03:33 9 | A. Yes. |
| 09:03:33 10 | Q. I want to make sure that we get your |
| 09:03:35 11 | testimony accurately, so if I ask a question and you |
| 09:03:39 12 | don't understand the question, all I ask is that you |
| 09:03:42 13 | ask me to rephrase it or explain the question and I |
| 09:03:45 14 | will do so. |
| 09:03:46 15 | Is that fair? |
| 09:03:47 16 | A. Yes. |
| 09:03:47 17 | Q. And I'm going to presume if you answer a |
| 09:03:50 18 | question, because you didn't ask for a clarification, |
| 09:03:51 19 | that you understood the question that I asked. |
| 09:03:54 20 | Is that fair? |
| 09:03:55 21 | A. Yes. |
| 09:03:56 22 | Q. Are you -- |
| 09:03:57 23 | MR. KLUTHO: Ms. Drennen, those are the |
| 09:04:02 24 | exact same things that he asked Ms. Fountain and I |
| 09:04:05 25 | asked you did you understand and you said you |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

7

| | |
|---|---|
| 09:04:42 1 | Q. Are you on any such medication? |
| 09:04:44 2 | A. No. |
| 09:04:45 3 | MR. KLUTHO: Let's go on the record. We |
| 09:04:47 4 | are on the record. I'm going to mark as Exhibit 1 |
| 09:04:50 5 | the order that the judge has issued in this case. |
| 09:04:53 6 | Are you going to just keep going with the |
| 09:04:56 7 | same exhibits, counsel? |
| 09:04:57 8 | MR. SCHWIEBERT: One sequential numbering. |
| 09:04:59 9 | THE REPORTER: Yes, we are. |
| 09:05:00 10 | MR. KLUTHO: Very good. Thank you. |
| 09:05:01 11 | Exhibit 1 is the -- I believe the order issued by the |
| 09:05:04 12 | Court, or it is the 28 United States Code, Section |
| 09:05:08 13 | 1927, counsel's liability for excessive costs. |
| 09:05:10 14 | I, counsel, remind you again and I'm now |
| 09:05:15 15 | going to repeat myself from yesterday, this case is |
| 09:05:16 16 | limited to a snapshot in time as to what was |
| 09:05:20 17 | represented at the time that the conciliation court |
| 09:05:23 18 | action was under way. And your fishing expedition |
| 09:05:29 19 | yesterday was, again, not appreciated, we will be |
| 09:05:32 20 | making a motion with respect to that. And I again |
| 09:05:34 21 | remind you that the vast majority of what you have in |
| 09:05:40 22 | your deposition topics have nothing to do with the |
| 09:05:42 23 | issue that the Court has indicated is still in play, |
| 09:05:45 24 | and I ask you to abide with what the Court has |
| 09:05:49 25 | indicated, and to the extent you don't we will be |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

6

| | |
|---|---|
| 09:04:07 1 | understood and you agreed to those; correct? |
| 09:04:09 2 | THE WITNESS: Correct. |
| 09:04:09 3 | MR. KLUTHO: Is there a reason why you |
| 09:04:11 4 | redid that, counsel? |
| 09:04:12 5 | Q. Ms. Drennen, are you on any medication today |
| 09:04:14 6 | that would prevent you from providing complete and |
| 09:04:17 7 | accurate testimony? |
| 09:04:18 8 | A. No. |
| 09:04:20 9 | MR. KLUTHO: Okay. |
| 09:04:20 10 | Q. Now I know, because your counsel's told me, |
| 09:04:22 11 | you recently had a surgery, maybe it was awhile ago. |
| 09:04:26 12 | Is that correct? |
| 09:04:27 13 | A. Yes. |
| 09:04:27 14 | Q. And you're not on any medication from that |
| 09:04:28 15 | -- |
| 09:04:28 16 | MR. KLUTHO: Counsel, she just said she |
| 09:04:30 17 | isn't. Move on. |
| 09:04:31 18 | Q. -- from that surgery that would prevent you |
| 09:04:32 19 | from giving accurate testimony? |
| 09:04:33 20 | MR. KLUTHO: Don't answer the question. |
| 09:04:34 21 | You've already answered it. |
| 09:04:36 22 | Q. Do you understand the question? |
| 09:04:38 23 | MR. KLUTHO: She understands the question. |
| 09:04:39 24 | A. Yes. |
| 09:04:40 25 | MR. KLUTHO: She already has answered it. |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

8

| | |
|---|---|
| 09:05:51 1 | seeking our costs and fees and sanctions. That you |
| 09:05:55 2 | very much. |
| 09:05:56 3 | MR. SCHWIEBERT: Are you done? |
| 09:05:58 4 | MR. KLUTHO: As I indicated yesterday, once |
| 09:06:00 5 | my mouth stops moving, words stop coming out, that |
| 09:06:03 6 | means I'm finished. |
| 09:06:06 7 | BY MR. SCHWIEBERT: |
| 09:06:10 8 | Q. Ms. Drennen, did you bring some documents |
| 09:06:12 9 | with you today to assist in your testimony? |
| 09:06:15 10 | A. Yes. |
| 09:06:16 11 | Q. Can I look at those real quick? |
| 09:06:18 12 | A. Absolutely. [Handing.] |
| 09:06:20 13 | MR. KLUTHO: Counsel, that's the packet of |
| 09:06:21 14 | discovery that you -- the deposition notice. That's |
| 09:06:25 15 | all it is. |
| 09:07:02 16 | Q. So that we use the same numbering sequence, |
| 09:07:06 17 | I'm going to attempt to recreate exactly what you have |
| 09:07:09 18 | in that pack by marking the top two pages as Exhibit |
| 09:07:14 19 | 19, and your -- |
| 09:07:24 20 | What did I do with it? Oh here it is. |
| 09:07:45 21 | -- and your affidavit -- your declaration, |
| 09:07:47 22 | as Exhibit number 20. |
| 09:07:53 23 | And if you can just confirm for me, since I |
| 09:07:57 24 | notice the last couple of pages in yours are not -- |
| 09:08:00 25 | you can't read them, that this combination of Exhibits |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

09:08:06 1    19, 6, 7, 8, 20, 11, 12 and 13 make up those

09:08:18 2    documents.

09:08:18 3        MR. KLUTHO: Counsel, I have no idea what

09:08:20 4    you're doing.

09:08:22 5    Q.    Do you understand my question, ma'am?

09:08:24 6    A.    No, I do not.

09:08:25 7        MR. KLUTHO: It doesn't matter.

09:08:26 8    Q.    Can you just look at the pile in front of

09:08:28 9    you --

09:08:28 10   A.    Yes.

09:08:29 11   Q.    -- and please confirm that what I've handed

09:08:31 12   you --

09:08:31 13       MR. KLUTHO: Just ask questions.

09:08:33 14   Q.    -- as marked exhibits is the same Notice of

09:08:35 15   Deposition under which you're appearing today?

09:08:38 16       MR. KLUTHO: I'm taking the exhibits. I

09:08:40 17   will go through and see if counsel has done what he

09:08:44 18   has represented he has done.

09:08:50 19       Do you have copies for me, counsel?

09:08:52 20       MR. KLUTHO: Oh, yeah. Here's the

09:08:54 21   whole stack [handing].

09:08:54 22       MR. KLUTHO: Thank you.

09:09:08 23       (Counsel reviewing exhibits.)

09:09:12 24       MR. KLUTHO: No, they don't work. Yes,

09:09:15 25   that page is the same first page. No, this is the --

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

09:10:07 1    notice.

09:10:08 2    Q.    Is this the deposition notice --

09:10:10 3        MR. KLUTHO: Yes. We'll stipulate to it.

09:10:12 4        MR. SCHWIEBERT: Thank you.

09:10:15 5    BY MR. SCHWIEBERT:

09:10:19 6    Q.    Are you an employee of Accounts Receivable

09:10:24 7    Services, LLC?

09:10:24 8    A.    Yes.

09:10:26 9    Q.    And you understand that if I use the

09:10:28 10   expression "ARS" I also mean "Accounts Receivable

09:10:32 11   Services, LLC."

09:10:32 12   A.    Yes.

09:10:33 13   Q.    That's another name Accounts Receivable

09:10:35 14   Services, LLC goes by, ARS.

09:10:36 15       MR. KLUTHO: Counsel, please stop laughing,

09:10:38 16   it is offensive, it's argumentative. Stop it.

09:10:44 17   A.    Yes.

09:10:49 18   Q.    Accounts Receivable Services, LLC also goes

09:10:51 19   by the name Reliance Recoveries; correct?

09:10:54 20   A.    It's a d/b/a Reliance Recoveries, yes.

09:10:57 21   A.    Reliance Recoveries is a d/b/a of Accounts

09:11:01 22   Receivable Services, LLC.

09:11:01 23   A.    Yes.

09:11:02 24   Q.    Are you an employee of Allina?

09:11:09 25   A.    No.

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

10

09:09:19 1        MR. SCHWIEBERT: Can you look at the page

09:09:19 2    that's to your right, please?

09:09:21 3        THE WITNESS: Oh, I'm sorry. [Handing.]

09:09:36 4        MR. KLUTHO: Counsel, let's do this. This

09:09:38 5    deposition notice did not require this witness to

09:09:40 6    bring anything with her. Mark exhibits as you've got

09:09:46 7    and ask your questions.

09:09:48 8    BY MR. SCHWIEBERT:

09:09:48 9    Q.    Ma'am --

09:09:51 10       MR. SCHWIEBERT: Well she brought those

09:09:52 11   with her.

09:09:52 12       MR. KLUTHO: Fine.

09:09:53 13       MR. SCHWIEBERT: Well put them back on the

09:09:54 14   table, --

09:09:55 15       MR. KLUTHO: No.

09:09:55 16       MR. SCHWIEBERT: -- I'm going to mark them

09:09:56 17   as an exhibit.

09:09:57 18       MR. KLUTHO: You've got them marked as an

09:09:59 19   exhibit.

09:09:59 20       MR. SCHWIEBERT: Please hand me the

09:10:00 21   documents the witness brought with her today to

09:10:04 22   assist her in her testimony. She's already testified

09:10:05 23   about them.

09:10:05 24       MR. KLUTHO: She hasn't testified about

09:10:05 25   anything. She said that she brought the deposition

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

12

09:11:09 1    Q.    How many employees of ARS are there?

09:11:14 2        MR. KLUTHO: I'll object to the question as

09:11:16 3    not within the scope of the request.

09:11:19 4        Don't answer it.

09:11:20 5        MR. SCHWIEBERT: Are you instructing her

09:11:21 6    not to answer?

09:11:22 7        MR. KLUTHO: Yeah. Show me where it is in

09:11:24 8    this list of topics that you asked this witness to

09:11:25 9    come testify about.

09:11:29 10       Where in this list is it in the topics that

09:11:31 11   you asked her to testify about?

09:11:31 12   BY MR. SCHWIEBERT:

09:11:32 13   Q.    Accounts Receivable Services is an LLC,

09:11:37 14   which means, unlike a partnership or corporation,

09:11:41 15   there's no partners or shareholders, there are

09:11:45 16   members. Are you a member of Accounts Receivable

09:11:45 17   Services, LLC?

09:11:45 18       MR. KLUTHO: Show me in this deposition

09:11:47 19   exhibit where you've asked her to testify about this.

09:11:50 20   Q.    Do you understand the question?

09:11:51 21   A.    Yes.

09:11:52 22   Q.    Are you --

09:11:52 23       MR. KLUTHO: It doesn't matter if she

09:11:53 24   understands the question. Just please show me in the

09:11:56 25   list where you've asked her to testify about that.

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

15

09:11:58  1     Q.    Are you a member?

09:11:59  2     A.    I'm not understanding your question.

09:12:01  3     Q.    Okay. You under --

09:12:04  4           Unlike a corporation, which has

09:12:06  5     shareholders, or a partnership which has partners, ARS

09:12:09  6     is an LLC; correct?

09:12:11  7           MR. KLUTHO: Objection, calls for a legal

09:12:14  8     conclusion, not asked for in the list of deposition

09:12:17  9     topics.

09:12:20 10     Q.    You still get to answer.

09:12:21 11     A.    Yes.

09:12:22 12     Q.    Okay. And an LLC has members, that's the

09:12:26 13     term that's used for the people who have an interest

09:12:29 14     in the LLC. Do you understand that?

09:12:31 15           MR. KLUTHO: Objection, lack of foundation,

09:12:34 16     not asked for in the list of topics.

09:12:36 17     A.    Yes.

09:12:36 18     Q.    Are you a member?

09:12:41 19     A.    I am an employee of LLC, of Accounts

09:12:46 20     Receivable Services. I don't understand the

09:12:48 21     difference between an employee and a member.

09:12:51 22     Q.    Do you have an ownership interest in ARS?

09:12:53 23     A.    No.

09:12:55 24     Q.    Do you know who has an ownership interest in

09:12:57 25     ARS?

16

09:14:45  1     A.    Correct.

09:14:45  2     Q.    This is a document that's prepared by ARS;

09:14:49  3     correct?

09:14:51  4     A.    Correct.

09:14:52  5     Q.    There's a master of this document that was

09:14:57  6     Exhibit 1 to an agreement; correct?

09:15:00  7     A.    I'm not sure what you're asking.

09:15:03  8     Q.    Well what is this Exhibit 1 to?

09:15:07  9     A.    It's part of the package that goes to Allina

09:15:11 10     for the purchase of the debt.

09:15:29 11     Q.    The first paragraph makes reference to a

09:15:33 12     "Purchase of Business Agreement"; correct?

09:15:36 13     A.    Correct.

09:15:37 14     Q.    And that's defined in this Exhibit 1 Bill of

09:15:41 15     Sale as the Agreement, it's in quotes and parentheses?

09:15:44 16           MR. KLUTHO: It's defined as Agreement,

09:15:47 17     counsel.

09:15:48 18     A.    Correct.

09:15:49 19     Q.    Is there a document entitled "Purchase of

09:15:52 20     Business Agreement"?

09:15:54 21     A.    Those exact words?

09:15:55 22     Q.    Yes.

09:15:56 23     A.    Not those exact words, no.

09:16:26 24     Q.    Why does it --

09:16:28 25           Well you told me this is part of the package

14

09:12:58  1           MR. KLUTHO: Counsel, these are all

09:12:59  2     questions that are outside the scope of this, and if

09:13:02  3     you're going to keep it up I will stop the

09:13:05  4     deposition.

09:13:05  5     Q.    Do you know?

09:13:06  6     A.    I do not.

09:13:13  7     Q.    Accounts Receivable Services is a

09:13:14  8     wholly-owned subsidiary of Allina; correct?

09:13:17  9     A.    We are an LLC of Allina.

09:13:22 10     Q.    Is there any corporation besides Allina that

09:13:25 11     owns an interest in Accounts Receivable Services, LLC?

09:13:28 12     A.    No.

09:13:49 13     Q.    If you could look at the stack in front of

09:13:51 14     you, to Exhibit 11. And it may be easier to take the

09:14:18 15     binder clip off now that we have --

09:14:21 16     A.    That's okay.

09:14:22 17     Q.    Okay. Do you know what Exhibit 11 is?

09:14:26 18     A.    Yes.

09:14:26 19     Q.    What is Exhibit 11?

09:14:28 20     A.    It's the Bill of Sale.

09:14:29 21     Q.    Okay. It's entitled "EXHIBIT 1 BILL OF

09:14:40 22     SALE"; correct?

09:14:40 23     A.    Correct.

09:14:41 24     Q.    And it says "ALLINA HEALTH SYSTEM" at the

09:14:43 25     top of it; correct?

16

09:16:30  1     that goes to Allina for the purchase of debt.

09:16:33  2     A.    That's correct.

09:16:34  3     Q.    Okay. Why doesn't ARS put the name of the

09:16:38  4     actual agreement in its document?

09:16:46  5     A.    I have no answer to that question. It was

09:16:51  6     what we did at the time.

09:16:59  7     Q.    And for each --

09:17:02  8     A.    I guess we thought it wasn't that big a

09:17:04  9     deal, sir.

09:17:09 10     Q.    Who came up with the term "Purchase of

09:17:13 11     Business Agreement" in Exhibit 11?

09:17:15 12     A.    That would have been at the advice of our

09:17:21 13     attorney.

09:17:23 14           (Interruption by the reporter.)

09:17:35 15     Q.    Besides Exhibit 11, what else is in the

09:17:39 16     package that goes to Allina to purchase a debt?

09:17:42 17           MR. KLUTHO: Limit your answer to Ms.

09:17:45 18     Ferkingstad's account, please.

09:17:47 19           THE WITNESS: I'm sorry?

09:17:48 20           MR. KLUTHO: Limit your answer to Ms.

09:17:50 21     Ferkingstad's account.

09:17:53 22           THE WITNESS: Oh, yes.

09:17:53 23     A.    It would have been the Exhibit 1A.

09:17:56 24           MR. KLUTHO: Which is marked as Exhibit 12.

09:18:00 25           THE WITNESS: Twelve. Sorry.

17

09:18:01 1        MR. KLUTHO:  That's all right.

09:18:04 2    A.   I don't know where you have the suit

09:18:06 3  authorization.  (Witness reviewing exhibits.)

09:18:17 4    Q.   Probably Exhibit 8.

09:18:22 5    A.   8?  Yes.  And 8.

09:18:26 6    Q.   Okay.  So those three documents are sent by

09:18:28 7  ARS to Allina when ARS wants to purchase an individual

09:18:35 8  debt.

09:18:35 9    A.   Correct.

09:18:36 10   Q.   They're not sold in bundles of debt, they're

09:18:39 11 sold individually.

09:18:40 12   A.   Correct.

09:18:43 13   Q.   And ARS has access to Allina's financial

09:18:49 14 records prior to sending that package to Allina;

09:18:53 15 correct?

09:18:54 16       MR. KLUTHO:  Object to the form of the

09:18:57 17 question.

09:18:58 18   A.   No.

09:18:58 19   Q.   Well there's an Exhibit 1A that was attached

09:19:01 20 to Exhibit 11; correct?

09:19:08 21   A.   Are you talking about the transmittal?

09:19:11 22       MR. KLUTHO:  Exhibit 12?

09:19:13 23   Q.   In Exhibit 11, which is the Exhibit 1 Bill

09:19:17 24 of Sale.

09:19:17 25   A.   Correct.

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

18

09:19:18 1    Q.   It says that it's each and every one of the

09:19:23 2  assets as listed in Exhibit 1A attached hereto;

09:19:27 3  correct?

09:19:30 4    A.   Are you talking about Exhibit 12?

09:19:32 5    Q.   Well no, because we know that's not --

09:19:34 6        MR. KLUTHO:  Yes, he is.

09:19:36 7    Q.   -- the right Exhibit 1A.

09:19:37 8        We know there was an Exhibit 1A that went

09:19:40 9  with Exhibit 11; correct?

09:19:42 10       MR. KLUTHO:  Objection, argumentative.

09:19:42 11       But yes, he's talking about this, and then

09:19:44 12 he's got his --

09:19:46 13       THE WITNESS:  Yes.  The date issue, right.

09:19:47 14       MR. KLUTHO:  -- the soap box he needs to

09:19:49 15 get on.

09:19:49 16   A.   Umm-hmm.  Yes.  This is --

09:19:50 17   Q.   And we know that Exhibit 12 is not for the

09:19:53 18 Ferkingstad account, the Exhibit 1A that was sent to

09:19:56 19 Allina with Exhibit 11; correct?

09:19:58 20   A.   Not the exact copy, correct.

09:20:00 21   Q.   Okay.  So in order for ARS to print from its

09:20:08 22 financial system the Exhibit 1A that was attached to

09:20:13 23 Exhibit 11 it has to have access to that information

09:20:15 24 before it prints it; correct?

09:20:17 25       MR. KLUTHO:  Object to the form of the

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

19

09:20:19 1  question.

09:20:20 2        Why don't you just explain to him how it

09:20:22 3  works.

09:20:23 4        THE WITNESS:  Okay.  This is how it works.

09:20:26 5    Q.   My question.

09:20:26 6        MR. KLUTHO:  Okay.  Object to the form of

09:20:28 7  the question, it's incapable of being answered in the

09:20:30 8  form that it's in, counsel.

09:20:32 9    Q.   Was an Exhibit 1A attached to Exhibit 11 --

09:20:34 10   A.   Yes.

09:20:35 11   Q.   -- and pre --

09:20:36 12   A.   I'm sorry.

09:20:36 13   Q.   -- presented to Allina in the Ferkingstad

09:20:39 14 case?

09:20:39 15   A.   Yes.

09:20:41 16   Q.   We know that that Exhibit 1A is not Exhibit

09:20:45 17 number 12; correct?

09:20:48 18       MR. KLUTHO:  She's already testified about

09:20:50 19 that, counsel.

09:20:50 20       Tell him again.

09:20:51 21   A.   It is Exhibit 1A.  It was reprinted for

09:20:55 22 reasons.

09:20:57 23   Q.   Okay.  Why was it reprinted?

09:21:00 24   A.   It was reprinted because in the time that it

09:21:02 25 took Allina, Ms. Fountain, to review the accounts and

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

20

09:21:08 1  send them back to us interest had accrued on the

09:21:12 2  account, so we needed to reprint the transmittal to

09:21:17 3  match what was in our system at the time, which was

09:21:24 4  additional finance charge.

09:21:29 5    Q.   Let me see if I can break that down into

09:21:32 6  pieces.

09:21:32 7    A.   Sure.

09:21:33 8    Q.   Exhibit 11 and a different Exhibit 1A were

09:21:39 9  sent to Ms. Fountain for signature; correct?

09:21:44 10   A.   Correct.

09:21:45 11       MR. KLUTHO:  Object to the form of the

09:21:47 12 question.

09:21:48 13   Q.   How was it sent?

09:21:49 14       MR. KLUTHO:  He said it's sent for a

09:21:51 15 signature.  I'm just objecting to the form of that

09:21:54 16 question.

09:21:54 17       THE WITNESS:  Oh, okay.

09:21:54 18       MR. KLUTHO:  It was sent for proof of debt.

09:21:56 19   Q.   How was it sent?

09:21:57 20   A.   Uh-huh.

09:21:58 21   Q.   By interoffice mail.

09:22:03 22   Q.   So ARS puts in its interoffice mail the

09:22:11 23 package that goes to Allina for purchase of debt and

09:22:13 24 it's delivered to Ms. Fountain.

09:22:17 25   A.   Correct.

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

21

09:22:18  1    Q.   Okay.  Do you have the same mail system?

09:22:22  2    A.   We have a courier that comes over from

09:22:25  3  Allina daily.

09:22:27  4    Q.   But it's sent in physical paper, it's not

09:22:30  5  sent electronic.

09:22:32  6    A.   Correct.

09:22:33  7    Q.   Ms. Fountain then signed Exhibit 11 and sent

09:22:43  8  back to you Exhibit 11 and the Exhibit 1A that was

09:22:48  9  attached to it; correct?

09:22:50  10    A.   Correct.

09:22:51  11    Q.   Okay.  Do you have the Exhibit 1A that was

09:22:53  12  attached to what was sent to Allina, signed by Ms.

09:22:59  13  Fountain, and delivered back to ARS?

09:23:01  14    A.   No, I do not.

09:23:02  15    Q.   What happened to that original?

09:23:04  16    A.   It was probably shredded after we changed

09:23:13  17  the interest rate.

09:23:19  18    Q.   Yeah, I don't understand.

09:23:19  19    A.   The principal stayed the same, nothing

09:23:22  20  happened to the principal.  All we purchase is the

09:23:25  21  principal.  The principal was sold to ARS.  What

09:23:34  22  happened was the logistics of the paperwork getting

09:23:37  23  back to us before interest was added to the account

09:23:45  24  again while it was still an un-purchased debt.

09:23:52  25    Q.   When was Exhibit 11 sent to Ms. Fountain?

22

09:23:56  1    A.   Oh, let's see.  (Witness reviewing

09:24:23  2  exhibits.)  I would say it was probably sent in -- I

09:24:27  3  don't have my notes in front of me -- but probably

09:24:31  4  around the first of October.

09:24:32  5    Q.   And it's sent to Allina for purchase because

09:24:35  6  ARS has decided that it's going to file a conciliation

09:24:38  7  court complaint on this account; correct?

09:24:41  8    A.   Correct.

09:24:44  9    Q.   Is it ARS's policy to shred the Exhibit 1As

09:24:49  10  that come back from Allina attached to the Exhibit 1?

09:24:57  11    A.   It's ARS's policy to shred anything that has

09:25:02  12  information on it from the debtor that we are no

09:25:09  13  longer using.

09:25:15  14    Q.   Well so in every case, --

09:25:18  15    A.   Not every.

09:25:19  16    Q.   -- because --

09:25:20  17           Well in every case --

09:25:22  18    A.   In Ferkingstad's case.

09:25:25  19    Q.   -- you're going to get Exhibit 1A back from

09:25:27  20  Allina at some point after it's signed by Jocelyn

09:25:30  21  Fountain; correct?

09:25:31  22    A.   Correct.

09:25:31  23    Q.   And in every case where any time has passed,

09:25:36  24  ARS shreds the Exhibit 1A that was attached to it.

09:25:40  25           MR. KLUTHO:  Object to the form of the

23

09:25:44  1  question.

09:25:44  2    A.   No.

09:25:44  3           What happened in Ferkingstad's case was that

09:25:48  4  Allina logistically took more time than they possibly

09:25:58  5  should have to sign the documentation and return it to

09:26:00  6  us so that we could purchase it, and in that timeframe

09:26:06  7  interest had been added.  Nothing happened to the

09:26:10  8  principal, the principal remained the same.  The only

09:26:14  9  thing that changed was the interest that we apply.

09:26:18  10    Q.   So was --

09:26:19  11    A.   The non-purchased debt.

09:26:21  12    Q.   So the shredding of the Exhibit A from

09:26:24  13  Ferkingstad was unique.

09:26:26  14    A.   Yes.

09:26:35  15    Q.   Is the original of Exhibit 11 signed by

09:26:39  16  Jocelyn Fountain at ARS?

09:26:41  17    A.   "At ARS"?

09:26:42  18    Q.   Do you have it, the original?  The one

09:26:44  19  that's got her blue ink, --

09:26:46  20    A.   Oh.

09:26:47  21    Q.   -- or whatever color it was?

09:26:48  22    A.   No.

09:26:49  23    Q.   Did you shred that too?

09:26:50  24    A.   We image everything and shred it.

09:26:59  25    Q.   But you didn't image the Exhibit 1A that was

24

09:27:03  1  attached.

09:27:04  2    A.   Sir, are you having a hard time

09:27:06  3  understanding me?  I believe I've answered that

09:27:08  4  question.

09:27:09  5    Q.   Well I just want to make sure there's not an

09:27:12  6  image that has been --

09:27:13  7    A.   How many times are you going to make sure?

09:27:14  8  Because I'll just say yes, yes, yes, yes, and yes.

09:27:17  9    Q.   Last time.

09:27:18  10    A.   Yes.

09:27:18  11    Q.   You did not image --

09:27:20  12    A.   This is --

09:27:21  13           It wasn't the last time.

09:27:23  14    Q.   You did not image the Exhibit 1A that was

09:27:26  15  attached to Exhibit 11 when it came back from Allina.

09:27:31  16    A.   The one dated October 7th we did not image.

09:27:51  17    Q.   At some point later in time ARS sends a

09:27:59  18  electronic record back to Allina showing -- indicating

09:28:04  19  which debts ARS contends have been assigned to it;

09:28:09  20  correct?

09:28:09  21    A.   We don't contend.  But yes, we do.  It's an

09:28:13  22  electronic file.

09:28:18  23    Q.   And the policy of ARS is to send that 10

09:28:23  24  days after -- 10 days into the month capturing the

09:28:28  25  previous month's transfers.

### Page 25

```
09:28:29  1    A.   No.
09:28:30  2         MR. KLUTHO:  Object to the form of the
09:28:31  3    question.  Go ahead.
09:28:32  4    Q.   Okay.  When is the electronic file sent?
09:28:35  5    A.   The electronic file is sent at month end.
09:28:40  6    Q.   Why?
09:28:41  7    A.   Because that's when we run all our reports.
09:28:44  8    Q.   You could send --
09:28:47  9         Do you know when you got Exhibit 11 back
09:28:51  10   from Allina?
09:28:52  11   A.   No, I do not.
09:28:54  12   Q.   Okay.  Well we know it's sometime between
09:28:57  13   October 7th and October 13th; correct?
09:29:02  14   A.   I'm sorry.  Could you repeat those dates?
09:29:04  15   Q.   Well we know that the Exhibit 12 was printed
09:29:08  16   on October 13th; correct?
09:29:10  17   A.   Correct.
09:29:12  18   Q.   So --
09:29:13  19        And I thought you told me the reason it's
09:29:16  20   printed is because interest has accrued while this
09:29:20  21   document is waiting to be signed by Allina.
09:29:22  22   A.   Correct.  It's logistics, correct.
09:29:24  23   Q.   So they wouldn't reprint or print a new
09:29:28  24   Exhibit 1A if they hadn't gotten back the signed
09:29:33  25   agreement; correct?
```

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

### Page 26

```
09:29:34  1    A.   Correct.
09:29:35  2    Q.   So we know that Exhibit 11 came back to ARS
09:29:40  3    before October 13th, which is the date of the
09:29:44  4    reprinted document.
09:29:47  5    A.   It probably came back, yes, on the same day
09:29:52  6    is my guess, but I don't know for sure, no.
09:29:54  7    Q.   Okay.  So on October 15th ARS could have
09:29:58  8    sent the electronic file indicating that Ferkingstad's
09:30:01  9    account had been transferred; correct?
09:30:04  10        MR. KLUTHO:  Objection, argumentative.
09:30:08  11   A.   It is our standing operating procedure to
09:30:11  12   print our month-end reports at month end.
09:30:18  13   Q.   And you understand that the account in
09:30:22  14   Allina's books doesn't reflect the transfer until you
09:30:26  15   send that electronic report; correct?
09:30:28  16   A.   No.
09:30:29  17   Q.   You didn't know that.
09:30:30  18   A.   I --
09:30:31  19        That is not correct.  In Allina's system it
09:30:36  20   shows that the account has been referred to bad debt.
09:30:40  21   Q.   Okay.  Let's look at Exhibit 13.  In this
09:30:55  22   case Allina doesn't make the notation in their records
09:31:00  23   that the Ferkingstad account has been referred until
09:31:05  24   November 10th of 2015; correct?
09:31:08  25        MR. KLUTHO:  Object to the form of the
```

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

### Page 27

```
09:31:10  1    question.
09:31:11  2    A.   On Oct --
09:31:12  3         On November 10th is not the referral to bad
09:31:16  4    debt, that is the referral to the final referral
09:31:19  5    department, which means we have purchased the debt.
09:31:23  6    Prior to that it would have been referred to us as
09:31:26  7    just service rendered bad debt.
09:31:30  8    Q.   But there is no copy of Allina's records
09:31:32  9    indicating that's been produced in this case.
09:31:35  10   A.   Not that you have.
09:31:39  11   Q.   Well does ARS have that document?
09:31:42  12   A.   No.  That would be an Allina document.
09:31:54  13        MR. KLUTHO:  Counsel, that's not a document
09:31:56  14   you asked for in your deposition notice of a
09:32:00  15   non-party.
09:32:24  16   Q.   Does ARS get a copy of Deposition Exhibit
09:32:27  17   13?
09:32:28  18   A.   No.
09:32:31  19   Q.   Let's go back to Exhibit 8.  Why --
09:32:51  20        Exhibit 8 is drafted by ARS; correct?
09:32:54  21   A.   Correct.
09:32:55  22   Q.   And in this case ARS sent a copy of Exhibit
09:32:59  23   8 to Allina as part of the package to purchase the
09:33:04  24   debt; correct?
09:33:09  25   A.   Correct.
```

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

### Page 28

```
09:33:10  1    Q.   Why is there a separate Exhibit 8 from
09:33:13  2    Exhibit 11?
09:33:20  3    A.   On advice of attorney at the time.
09:33:24  4    Q.   I'm not looking for --
09:33:30  5         Let me ask you this question:  Do you know
09:33:32  6    why a separate Exhibit 8 is sent?
09:33:35  7         MR. KLUTHO:  She just told you upon advice
09:33:38  8    of an attorney.
09:33:38  9    A.   Correct.
09:33:39  10   Q.   Do you --
09:33:40  11        I'm not looking for the attorney's advice.
09:33:42  12        MR. KLUTHO:  Well that's the only way she
09:33:44  13   would know it, counsel.
09:33:45  14   A.   That's what happened.
09:33:55  15   Q.   The same documents go to Allina each time
09:33:59  16   ARS wants to purchase a debt; correct?
09:34:02  17   A.   In the Ferkingstad case, yes.
09:34:04  18   Q.   What abou --
09:34:06  19        When you say it's part of the package, is
09:34:09  20   this -- are these always part of the package?
09:34:11  21   A.   Always.
09:34:12  22   Q.   When was the policy of using these documents
09:34:15  23   in the package established?
09:34:23  24   A.   Probably when we first started purchasing
09:34:26  25   debt, which would have been in 2014.
```

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

| | |
|---|---|
| 09:34:39 | 1     **Q.**  Was ARS not purchasing debts from Allina |
| 09:34:41 | 2  prior to 2014? |
| 09:34:44 | 3     **A.**  Correct. |
| 09:34:53 | 4     **Q.**  Prior to 2014 ARS was just acting as a debt |
| 09:34:58 | 5  collector without purchasing the debt, for Allina? |
| 09:35:01 | 6     **A.**  Yes. |
| 09:35:03 | 7     **Q.**  Why did ARS make the decision to start |
| 09:35:06 | 8  purchasing the debt? |
| 09:35:08 | 9     MR. KLUTHO:  Don't answer the question, |
| 09:35:09 | 10  it's not within the scope of this requested witness's |
| 09:35:11 | 11  list of topics to be here to testify about, counsel. |
| 09:35:17 | 12  It's also highly irrelevant to the issue in this |
| 09:35:19 | 13  lawsuit with respect to Ms. Ferkingstad.  It was in |
| 09:35:24 | 14  2015. |
| 09:35:24 | 15     Help me understand how this has any |
| 09:35:26 | 16  relevance to that, counsel. |
| 09:35:27 | 17     MR. SCHWIEBERT:  Are you instructing the |
| 09:35:28 | 18  witness not to answer. |
| 09:35:29 | 19     MR. KLUTHO:  Help me understand how it has |
| 09:35:31 | 20  any relevance and then I'll decide whether or not to |
| 09:35:33 | 21  instruct the witness. |
| 09:35:34 | 22     **Q.**  You get to answer. |
| 09:35:35 | 23     Do you understand the question? |
| 09:35:36 | 24     MR. KLUTHO:  You're asking her why they |
| 09:35:37 | 25  started purchasing debt in 2014, and this is |

| | |
|---|---|
| 09:35:40 | 1  involving a case with your client, Ferkingstad, in |
| 09:35:43 | 2  2015?  Is that what you're doing, counsel? |
| 09:35:47 | 3     **Q.**  Do you understand the question? |
| 09:35:48 | 4     MR. KLUTHO:  Is that what you're doing, |
| 09:35:49 | 5  counsel?  She's not going to say any more words until |
| 09:35:53 | 6  you answer my question, counsel. |
| 09:35:59 | 7     **Q.**  Do you understand the question? |
| 09:36:00 | 8     MR. KLUTHO:  Did you hear the words coming |
| 09:36:01 | 9  out of my mouth.  She's not going to say anything |
| 09:36:03 | 10  more until you answer my question, counsel. |
| 09:36:18 | 11     Do you have another question? |
| 09:36:19 | 12     MR. SCHWIEBERT:  Waiting for an answer to |
| 09:36:21 | 13  that one. |
| 09:36:23 | 14     Are you instructing her not to answer that |
| 09:36:25 | 15  question? |
| 09:36:28 | 16     MR. KLUTHO:  Are you familiar with 28 |
| 09:36:30 | 17  United States Code Section 1927, and did you read the |
| 09:36:34 | 18  judge's order that said the issue in this case is a |
| 09:36:39 | 19  snapshot in time.  Ferkingstad plausibly alleges that |
| 09:36:46 | 20  ARS falsely represented, at the time it made its |
| 09:36:49 | 21  representations, that it owned the debt to her. |
| 09:36:52 | 22     That's the issue in this case.  Why are you |
| 09:36:53 | 23  talking about 2014, when that's happened in 2015, |
| 09:36:59 | 24  counsel? |
| 09:37:01 | 25     **Q.**  You get to answer the question until counsel |

| | |
|---|---|
| 09:37:03 | 1  instructs you not to answer. |
| 09:37:05 | 2     MR. KLUTHO:  Where is this in your list of |
| 09:37:06 | 3  deposition topics, counsel? |
| 09:37:17 | 4     You keep looking at her, but you can see |
| 09:37:19 | 5  that I'm the one talking to you. |
| 09:37:25 | 6     He's doing a staring contest. |
| 09:37:28 | 7     THE WITNESS:  Is he?  I'm good at those. |
| 09:37:29 | 8  BY MR. SCHWIEBERT: |
| 09:37:29 | 9     **Q.**  Do you understand the question? |
| 09:37:31 | 10     **A.**  No, I really don't. |
| 09:37:33 | 11     **Q.**  Do you know why ARS changed its relationship |
| 09:37:39 | 12  with Allina in 2014 to start purchasing the debt? |
| 09:37:43 | 13     MR. KLUTHO:  All the same objections. |
| 09:37:44 | 14     Do you know why? |
| 09:37:47 | 15     THE WITNESS:  On advice of attorney. |
| 09:37:49 | 16     MR. KLUTHO:  I instruct you not to answer |
| 09:37:50 | 17  any further. |
| 09:38:05 | 18     **Q.**  Did ARS pay Allina money for the Ferkingstad |
| 09:38:09 | 19  account? |
| 09:38:10 | 20     **A.**  Yes. |
| 09:38:14 | 21     How much did it pay? |
| 09:38:16 | 22     **A.**  Twenty-five cents on the dollar. |
| 09:38:20 | 23     **Q.**  When did to make that payment? |
| 09:38:24 | 24     **A.**  At the month end when the report is written. |
| 09:38:31 | 25     **Q.**  Is a single -- |

| | |
|---|---|
| 09:38:36 | 1     Is one payment made for all of the accounts |
| 09:38:39 | 2  that ARS attempted to purchase during that month? |
| 09:38:42 | 3     **A.**  I have -- |
| 09:38:43 | 4     MR. KLUTHO:  Object to the form of the |
| 09:38:44 | 5  question.  What do you mean by "attempted"? |
| 09:38:49 | 6     **Q.**  ARS contends that it buys debts from Allina |
| 09:38:53 | 7  for the entire month of October of 2015. |
| 09:38:56 | 8     MR. KLUTHO:  Object to the form of the |
| 09:38:57 | 9  question.  What do you mean by "contends"? |
| 09:39:00 | 10     **Q.**  Do you understand the question? |
| 09:39:01 | 11     **A.**  I do not. |
| 09:39:03 | 12     **Q.**  All right.  How much did ARS pay Allina at |
| 09:39:13 | 13  the end of October 2015 for the Ferkingstad debt? |
| 09:39:21 | 14     **A.**  Twenty-five cents on the dollar. |
| 09:39:22 | 15     **Q.**  On the principal balance? |
| 09:39:24 | 16     **A.**  Yes. |
| 09:39:25 | 17     MR. KLUTHO:  Counsel, I've handed to you |
| 09:39:26 | 18  the Blanket Purchase Agreement with that information |
| 09:39:30 | 19  in there.  The prior document you had had that |
| 09:39:32 | 20  information redacted.  There you have it, counsel. |
| 09:39:36 | 21  That's copied from the original. |
| 09:39:43 | 22     **Q.**  How was that payment made? |
| 09:39:45 | 23     **A.**  It's made through accounting. |
| 09:39:49 | 24     **Q.**  A check cut from ARS and sent to Allina? |
| 09:39:52 | 25     **A.**  I would not know what accounting procedures |

33

09:39:54 1  are. I believe it's a transfer of some sort. I do
09:40:00 2  not know.
09:40:08 3      Q.  Does ARS have its own bank accounts?
09:40:11 4      A.  Yes.
09:40:13 5      Q.  Are those bank accounts separate from
09:40:15 6  Allina's bank accounts?
09:40:18 7      A.  Yes.
09:40:43 8      Q.  Is there a record for the payment for the
09:40:46 9  Ferkingstad account?
09:40:49 10     A.  What do you mean?
09:40:50 11     Q.  Well if ARS paid Allina twenty-five cents on
09:40:55 12 the dollar for the principal balance of the
09:40:58 13 Ferkingstad account, is there a record of that
09:41:02 14 payment?
09:41:02 15     A.  There is a report. If you consider that a
09:41:07 16 record, yes, it would be a record.
09:41:09 17     Q.  Well is there a copy of a check that shows
09:41:13 18 that payment?
09:41:15 19         MR. KLUTHO:  Object to the form of the
09:41:16 20 question, counsel.
09:41:17 21         Did you hear what the witness said? She
09:41:19 22 doesn't know how it's actually transmitted. You
09:41:23 23 asked about a check, she talked about probably a
09:41:26 24 transfer. Do you remember that?
09:41:29 25     A.  There --

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

34

09:41:30 1          I do not know.
09:41:31 2      Q.  You don't know how it's transferred, so you
09:41:33 3  don't know if there's a record?
09:41:35 4      A.  I know that we supply reports at month end
09:41:41 5  showing what accounts have been purchased. I do not
09:41:45 6  know what happens after that, other than it goes to an
09:41:50 7  account -- an accountant who handles it.
09:41:53 8      Q.  It goes to an ARS accountant.
09:41:55 9      A.  Yes.
09:42:24 10         (Exhibit 21 marked for identification.)
09:42:24 11 BY MR. SCHWIEBERT:
09:42:25 12     Q.  Ms. Drennen, I'm handing you what the court
09:42:28 13 reporter has marked as Exhibit 21. Are you familiar
09:42:30 14 with this document?
09:42:31 15     A.  Yes.
09:42:44 16     Q.  Exhibit 21 is a "Blanket Purchase
09:42:47 17 Agreement"; correct?
09:42:50 18     A.  That is what it states, correct.
09:42:58 19     Q.  Were you involved in the drafting of this
09:43:01 20 Blanket Purchase Agreement?
09:43:04 21     A.  To a certain extent, yes.
09:43:06 22     Q.  How were you involved?
09:43:07 23     A.  I worked with Mr. Tim Wenner.
09:43:14 24     Q.  And what did you do in the work you did with
09:43:16 25 Mr. Tim Wenner?

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

35

09:43:18 1      A.  We established the Blanket Purchase
09:43:20 2  Agreement.
09:43:24 3      Q.  Did you actually draft this document?
09:43:27 4      A.  It was typed up, yes.
09:43:33 5      Q.  Can you --
09:43:33 6          Can you explain to me how you go from
09:43:35 7  starting to work with Mr. Wenner and ending up with
09:43:39 8  Exhibit 21?
09:43:43 9          MR. KLUTHO:  Counsel, please stop laughing.
09:43:43 10 It's offensive.
09:43:46 11     A.  We discussed what we were going to do when
09:43:48 12 we purchased accounts from Allina, and came to the
09:43:52 13 conclusion that this Blanket Purchase Agreement would
09:43:57 14 cover our needs.
09:44:01 15     Q.  And the Blanket Purchase Agreement transfers
09:44:06 16 went into effect January 17th, 2014.
09:44:08 17         MR. KLUTHO:  Object to the form of the
09:44:10 18 question, misstates the document.
09:44:12 19     Q.  Correct?
09:44:14 20     A.  Correct, I guess.
09:44:17 21     Q.  Is there more to this agreement?
09:44:19 22         MR. KLUTHO:  He's asking you if this
09:44:21 23 transferred debts --
09:44:23 24         THE WITNESS:  Oh.
09:44:23 25         MR. KLUTHO:  -- on January 14th. That's

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

36

09:44:24 1  what he's doing.
09:44:24 2          THE WITNESS:  Oh.
09:44:25 3          MR. KLUTHO:  He's a tricky lawyer, so you
09:44:27 4  have to listen to every word he gives you.
09:44:29 5      A.  I'm sorry. I didn't understand your
09:44:32 6  question, I guess.
09:44:33 7      Q.  Is there more to this Blanket Purchase
09:44:35 8  Agreement?
09:44:35 9      A.  No.
09:44:36 10     Q.  There's a description of the thing that
09:44:41 11 Allina Health is hereby selling, assigning and
09:44:45 12 transferring to Accounts Receivable Services; correct?
09:44:48 13     A.  This document covers what will happen in the
09:44:52 14 future when we make the decision to purchase debt from
09:44:58 15 Allina.
09:45:00 16     Q.  Can you please show me where on the document
09:45:02 17 it provides that?
09:45:03 18         MR. KLUTHO:  The whole document, counsel.
09:45:05 19     A.  The whole document, counsel.
09:45:07 20     Q.  Okay. Let's start at the beginning.
09:45:09 21 "Allina Health, of 2925 Chicago Avenue South,
09:45:14 22 Minneapolis, Minnesota 55407, does hereby sell, assign
09:45:21 23 and transfer to Account...Receivable Services LLC dba
09:45:30 24 Reliance Recoveries of 6160 Summit Drive, Minneapolis,
09:45:34 25 Minnesota 55430, the following accounts:"

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

37

09:45:39 1    Did I read that correctly?

09:45:40 2    MR. KLUTHO: Very well, counsel. A plus.

09:45:44 3 Stipulated. Move on.

09:45:48 4    Q. The accounts that are hereby -- that Allina

09:45:52 5 is hereby selling, assigning and transferring to ARS

09:45:57 6 appear in -- next to the word "Description"; correct?

09:46:02 7    A. Correct.

09:46:02 8    Q. And all it says is "Unpaid Medical bills."

09:46:07 9    MR. KLUTHO: Correct.

09:46:07 10    A. Correct.

09:46:08 11    MR. KLUTHO: Stipulated.

09:46:09 12    Q. Is there a description of what "unpaid

09:46:12 13 medical bills" Allina is hereby selling, assigning and

09:46:16 14 transferring to Accounts Receivable Services?

09:46:20 15    A. Unpaid medical bills.

09:46:23 16    Q. But certainly not every unpaid medical bill

09:46:26 17 is moving from Allina to ARS on January 17th of 2014.

09:46:31 18    A. None of them are moving on January 17th.

09:46:37 19    Q. Okay. Allina, immediately above the

09:46:40 20 signature for seller says, "These transfer will go

09:46:43 21 into effect" -- Let me try it again.

09:46:46 22    "These transfer will go into effective as of

09:46:51 23 January 17th, 2014." Correct?

09:46:54 24    MR. KLUTHO: You read that correctly.

09:46:56 25    A. Yes.

38

09:46:56 1    MR. KLUTHO: Very good reading.

09:46:57 2    Q. That's the transfer of the unpaid medical

09:47:00 3 bills; --

09:47:00 4    MR. KLUTHO: Object, --

09:47:00 5    Q. -- correct?

09:47:02 6    A. No.

09:47:02 7    MR. KLUTHO: -- argumentative.

09:47:03 8    Q. Well is there anything else described in

09:47:06 9 Exhibit 21 besides unpaid medical bills?

09:47:09 10    MR. KLUTHO: Objection, argumentative.

09:47:10 11    A. No.

09:47:11 12    MR. KLUTHO: Explain to him again how it

09:47:12 13 works, --

09:47:13 14    THE WITNESS: Okay.

09:47:13 15    MR. KLUTHO: -- because he doesn't

09:47:14 16 understand and he just wants to argue with you.

09:47:20 17    THE WITNESS: He does.

09:47:20 18    This is the Blanket Purchase Agreement that

09:47:23 19 was developed by Reliance and Allina to cover the

09:47:29 20 future purchases of unpaid medical debt by ARS d/b/a

09:47:39 21 Reliance Recoveries. That is all it is, nothing

09:47:44 22 more.

09:47:44 23 BY MR. SCHWIEBERT:

09:47:45 24    Q. Does the word "future purchases" appear

09:47:47 25 anywhere in Exhibit 21?

39

09:47:48 1    MR. KLUTHO: Stipulated it does not,

09:47:50 2 counsel. Argumentative.

09:48:27 3    Q. Exhibit 8, the Suit Authorization and

09:48:30 4 Assignment document. Was there attached to Exhibit 8

09:48:46 5 a true and correct account statement reflecting the

09:48:49 6 balance due and owing as of the date set forth below?

09:48:54 7    A. Yes.

09:48:56 8    Q. But ARS no longer has that document;

09:48:59 9 correct?

09:49:01 10    A. I believe I've already answered that, but

09:49:02 11 yes.

09:49:03 12    Q. Okay. So the thing that's attached to this

09:49:06 13 document is another Exhibit 1A?

09:49:13 14    A. Are you unable to understand my past answers

09:49:16 15 to that question?

09:49:17 16    Q. Well I haven't asked you about the

09:49:19 17 attachments to this document. Maybe I'm confused.

09:49:21 18    A. Maybe you are.

09:49:23 19    Q. Is there a separate attachment that is sent

09:49:26 20 with Exhibit 8 from the attachment that's attached to

09:49:31 21 Exhibit 11?

09:49:36 22    A. Yes, your Exhibit 12.

09:49:41 23    Q. Okay. You testified that an Exhibit 1A was

09:49:46 24 attached to Exhibit 11. Is there a separate document

09:49:50 25 that was attached to Exhibit 8?

40

09:49:54 1    A. Yes.

09:49:55 2    Q. Is it --

09:49:56 3    When it was sent is it the same Exhibit 1A

09:50:00 4 as the attachment for both documents?

09:50:01 5    A. It had a different date on it.

09:50:04 6    Q. I understand.

09:50:04 7    A. Okay.

09:50:05 8    Q. I'm just trying to make sure there aren't

09:50:07 9 two attachments, one for Exhibit 8 and one for Exhibit

09:50:10 10 11.

09:50:11 11    MR. KLUTHO: Why don't you just tell him

09:50:13 12 what the packet consists of.

09:50:15 13    THE WITNESS: The packet consists of, as

09:50:17 14 I've calmly told you before, the Suit Authorization

09:50:22 15 and Assignment, which is your Exhibit 8; the

09:50:28 16 transmittal of the account that is owed, Exhibit 12,

09:50:33 17 which is not exactly the one that was sent because of

09:50:38 18 the interest that was added that we've already

09:50:43 19 explained; and your Exhibit 11, which is the Bill of

09:50:50 20 Sale.

09:50:51 21    Q. As sent, each of those three things are one

09:50:56 22 page; correct?

09:50:57 23    A. Not one page, there's three pages.

09:51:01 24    Q. Three single-page documents are sent.

09:51:03 25    A. Correct.

41

09:51:04 1    Q.    Nothing else is sent for the purchase of
09:51:08 2 this debt.
09:51:09 3    A.    Correct.
09:51:33 4    Q.    On Exhibit 8 the last name Ferkingstad
09:51:38 5 appears at the top of the document; correct?
09:51:46 6    A.    Correct.
09:51:50 7    Q.    Does ARS -- Well let me back up.
09:51:56 8        Is Exhibit 8, without the reference to
09:52:02 9 Ferkingstad, a form that is used in the package by ARS
09:52:07 10 to purchase debts from Allina?
09:52:10 11    A.    Are you talking about the body?
09:52:11 12    Q.    Yes.
09:52:12 13    A.    Yes.
09:52:13 14    Q.    Okay.  Is there a stack of these at ARS?
09:52:18 15    A.    No.
09:52:18 16    Q.    No.  Is it an electronic document?
09:52:22 17    A.    Yes.
09:52:23 18    Q.    Do you know who actually, at ARS, sent
09:52:35 19 Exhibit -- well who printed Exhibit 8 at ARS?
09:52:35 20        MR. KLUTHO:  What's your question, "sent"
09:52:37 21 or "printed"?
09:52:38 22    Q.    We'll do printed first.
09:52:40 23    A.    Yes.
09:52:40 24    Q.    Who was it?
09:52:41 25    A.    One of my conciliation court reps.

42

09:52:44 1    Q.    Do you know which one it was?
09:52:52 2    A.    It would have been Teresa Nagle.
09:52:55 3    Q.    And you know that because her initials
09:52:57 4 appear in the upper left-hand corner of Exhibit 12.
09:53:00 5    A.    Correct.
09:53:02 6    Q.    So Ms. Nagle opens up a Word document --
09:53:07 7    A.    No.
09:53:09 8    Q.    How does she print Exhibit 8?
09:53:11 9    A.    She requests it, through the system, on the
09:53:14 10 Ferkingstad account.
09:53:16 11    Q.    Okay.  Who does she request it from?
09:53:18 12    A.    The system.  It is a letter code that we put
09:53:22 13 in to have printed.
09:53:25 14    Q.    And then the system prints --
09:53:29 15    A.    Correct.
09:53:30 16    Q.    -- Exhibit 8.
09:53:33 17        MR. KLUTHO:  It's this newfangled computer
09:53:37 18 stuff.
09:53:38 19        THE WITNESS:  It is.  It's amazing.
09:53:47 20    Q.    Do you know whether the reference to the
09:53:50 21 last name Ferkingstad appeared on Exhibit 8 when it
09:53:54 22 was sent to Allina?
09:53:56 23    A.    Yes, it did.
09:53:57 24    Q.    Okay.  How do you know that?
09:53:59 25    A.    Because it doesn't leave our office without

43

09:54:00 1 a name on it.  It's reviewed.
09:54:23 2    Q.    And Ms. Nagle also made a request to the
09:54:26 3 system for the printing of Exhibit 11 to be sent in
09:54:31 4 the package.
09:54:32 5    A.    Correct.
09:54:37 6    Q.    And again, the last name Ferkingstad now
09:54:39 7 appears at the bottom of Exhibit 11.
09:54:42 8    A.    That is correct.
09:54:43 9    Q.    And do you know if that appeared on Exhibit
09:54:47 10 11 before it was sent to Allina?
09:54:50 11    A.    Yes, it did.
09:54:51 12    Q.    And how do you know that?
09:54:53 13    A.    Because it's reviewed.
09:54:55 14    Q.    Okay.  Who reviews it?
09:54:57 15    A.    They review the work of each other to make
09:55:00 16 sure that it is properly done.  We have different
09:55:05 17 people who review other people's work.
09:55:08 18    Q.    And that's done before they're sent to
09:55:11 19 Allina.
09:55:11 20    A.    That's correct.
09:55:13 21    Q.    So who reviewed the Ferkingstad files?
09:55:18 22    A.    I do not know, but we have a weekly schedule
09:55:21 23 that it goes by, so it changes so that the same
09:55:25 24 persons are not always reviewing the other persons'
09:55:29 25 accounts.

44

09:55:35 1    Q.    I don't understand how the weekly schedule
09:55:37 2 works.  Can you...
09:55:40 3    A.    Every week we change who reviews each
09:55:42 4 other's work.  So I would not be able to tell you, on
09:55:46 5 this particular week back in 2015, who was reviewing
09:55:51 6 Ms. Nagle's work at that time.
09:56:02 7    Q.    Does Ms. Nagle print the Exhibit 1A that
09:56:06 8 actually went in the package that was sent to Allina?
09:56:10 9    A.    Does she print it?
09:56:11 10    Q.    Yes.
09:56:12 11    A.    Yes.
09:56:13 12    Q.    Okay.  So somewhere at Reliance Recoveries,
09:56:22 13 which is ARS, there's a computer system that before
09:56:25 14 October 7th of 2015 had Ms. Ferkingstad's account
09:56:31 15 information in it.
09:56:31 16    A.    Of course.
09:56:54 17    Q.    Is it ARS's position that the reference in
09:57:00 18 Exhibit 11 to the Purchase of Business Agreement is a
09:57:08 19 reference to Exhibit 21?
09:57:16 20    A.    I don't understand your question.
09:57:18 21    Q.    Well Exhibit 11 makes reference to a
09:57:21 22 Purchase of Business Agreement as of October 7th,
09:57:26 23 2015.
09:57:26 24    A.    Okay.
09:57:27 25    Q.    Correct?

**Page 45**

1 A. Yes.
2 Are you speaking about the "has entered into
3 a Purchase of Business Agreement" portion?
4 MR. KLUTHO: Yes. That's what he's asking
5 you about.
6 THE WITNESS: Okay.
7 A. Yes, it is my understanding it refers to
8 this.
9 MR. KLUTHO: Exhibit 21.
10 A. Exhibit 21.
11 Q. The Blanket Purchase Agreement.
12 A. Correct.
13 Q. Do you know why Exhibit 11 doesn't say
14 "Blanket Purchase Agreement"?
15 A. I do not.
16 MR. KLUTHO: Our sincerest apologies,
17 counsel.
18 THE WITNESS: Yes.
19 Q. But you understand that Exhibit 11 is
20 pursuant to the terms, conditions and warranties set
21 forth in the Purchase of Business Agreement; correct?
22 A. Correct.
23 Q. And there are terms in Exhibit 11 that are
24 capitalized because they're defined terms; correct?
25 MR. KLUTHO: Object to the form of the

**Page 46**

1 question. How in the world do you come to that,
2 counsel? Where are the capitalizations that are
3 defined terms?
4 Q. Do you understand the question?
5 A. I do not.
6 Q. Okay. So, for example, the document refers
7 to a Purchase of Business Agreement as of October 7,
8 2015, and then the word Agreement, which is what we're
9 defining the Purchase of Business Agreement, is
10 capital "A", Agreement; correct?
11 MR. KLUTHO: Good. I saw that. Thank you,
12 counsel, for --
13 A. Yes.
14 Q. And Allina Health System, which is defined
15 as Seller, has a capital "S"; correct?
16 MR. KLUTHO: Correct.
17 A. Yes.
18 MR. KLUTHO: Counsel, when I say "correct,"
19 you can move on, --
20 Q. And --
21 MR. KLUTHO: -- you don't need to wait for
22 her.
23 Q. -- the sale of certain accounts receivable
24 is defined as Assets with a capital "A."
25 MR. KLUTHO: Stipulated.

**Page 47**

1 A. Yes.
2 Q. And Accounts Receivable Services, LLC d/b/a
3 Reliance Recoveries is defined as Purchaser with a
4 capital "P."
5 A. Correct.
6 Q. So each time in Exhibit 11 that we're
7 defining a term the term, once defined, gets a capital
8 letter; correct?
9 MR. KLUTHO: Incorrect, counsel. That is
10 an improper question. It is simply referring back to
11 the item before it.
12 A. I have no idea why they're capitalized.
13 Q. Well in the second paragraph when we use
14 seller, which has now been defined, it's capital "S,"
15 Seller; correct?
16 MR. KLUTHO: Correct.
17 A. Yes.
18 Q. And when purchaser is used in the second
19 paragraph, it's capital "P," Purchaser; correct?
20 A. Correct.
21 MR. KLUTHO: Stipulated.
22 Q. And "S" -- We already did seller.
23 Now we've got Assets, which is capital "A";
24 correct?
25 A. Yes.

**Page 48**

1 Q. All right. Then we get to the term Transfer
2 Date, which is capital "T," Transfer, capital "D,"
3 Date; correct?
4 MR. KLUTHO: Correct.
5 A. Correct.
6 Q. Is "Transfer Date" defined in Exhibit 11?
7 A. Yes.
8 Q. Where is it defined?
9 A. Well it was signed off on October 7th.
10 Q. Okay. Is there somewhere where "transfer
11 date" appears in parentheses with quotation marks like
12 all of the other defined terms?
13 MR. KLUTHO: Objection, argumentative.
14 Move on.
15 A. No.
16 Q. Is "transfer date" defined in the Purchase
17 of Business Agreement, the terms, conditions and
18 warranties of which this Agreement is pursuant to?
19 A. No.
20 MR. KLUTHO: Counsel, you keep arguing with
21 her. She told you what the transfer date was. Why
22 do you keep arguing?
23 Q. Assets is defined as certain accounts
24 receivable; correct? The first paragraph.
25 A. Yes, I do see that, sir.

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

49

| | |
|---|---|
| 10:02:01 | 1     Q.   As -- |
| 10:02:01 | 2     A.   "Assets as described therein to Accounts |
| 10:02:05 | 3   Receivable Services, LLC." |
| 10:02:07 | 4     Q.   So the asset -- |
| 10:02:08 | 5     A.   Mrs. Ferkingstad's account. |
| 10:02:13 | 6     Q.   Well I don't see Mrs. Ferkingstad's account |
| 10:02:15 | 7   on this document. |
| 10:02:16 | 8     Can you point it out to me? |
| 10:02:18 | 9     A.   She's right there at the bottom. |
| 10:02:18 | 10     Q.   Her last name appears at the bottom, I |
| 10:02:20 | 11   understand. |
| 10:02:20 | 12     A.   That is correct, and that is -- |
| 10:02:20 | 13     Q.   Do the words -- |
| 10:02:21 | 14     A.   In my world that's Ms. Ferkingstad's |
| 10:02:24 | 15   account. I don't know what it is in your world |
| 10:02:26 | 16   because I don't live in your world, but in my world |
| 10:02:30 | 17   that means we are purchasing Mrs. Ferkingstad's |
| 10:02:33 | 18   account. |
| 10:02:36 | 19     Q.   In the first paragraph the assets are |
| 10:02:43 | 20   described in -- |
| 10:02:44 | 21     A.   Sir, -- |
| 10:02:45 | 22     Q.   -- the Purchase of Business Agreement; |
| 10:02:46 | 23   correct? |
| 10:02:47 | 24     A.   I'm -- I don't know what else to say to you. |
| 10:02:50 | 25   I'm very frustrated with you at this point. You keep |

50

| | |
|---|---|
| 10:02:53 | 1   going over the same thing over and over and over, and |
| 10:02:57 | 2   I've answered it. I do not feel like I need to |
| 10:03:00 | 3   continue to answer it, nor do you keep -- nor do you |
| 10:03:05 | 4   have to keep reading it to me. I can read. |
| 10:03:10 | 5     Q.   Are the assets described in the business of |
| 10:03:14 | 6   purchase agreement? |
| 10:03:14 | 7     MR. KLUTHO: Objection, asked and answered. |
| 10:03:15 | 8   She said they're the Ferkingstad and pointed it out |
| 10:03:19 | 9   to you, counsel. Move on. We're not going to answer |
| 10:03:21 | 10   any more questions on this. |
| 10:03:22 | 11     Q.   This is not the Purchase of Business |
| 10:03:24 | 12   Agreement; correct? |
| 10:03:27 | 13     MR. KLUTHO: These documents all go |
| 10:03:28 | 14   together, counsel. |
| 10:03:30 | 15     Q.   Do you understand my question? |
| 10:03:31 | 16     A.   I do. |
| 10:03:32 | 17     Q.   This is not -- |
| 10:03:34 | 18     Exhibit 11 is not the Purchase of Business |
| 10:03:36 | 19   Agreement; correct? |
| 10:03:37 | 20     A.   The Purchase of Business Agreement is this |
| 10:03:39 | 21   [indicating]. |
| 10:03:39 | 22     Q.   Okay. Exhibit 21 is what you're -- |
| 10:03:41 | 23     A.   Exhibit 21. |
| 10:03:42 | 24     Q.   All right. Can you show me where in Exhibit |
| 10:03:45 | 25   21 the assets are described? |

51

| | |
|---|---|
| 10:03:48 | 1     A.   "Unpaid Medical bills." |
| 10:03:51 | 2     Q.   Is there any other description in Exhibit 21 |
| 10:03:54 | 3   of the assets that are being transferred from Allina |
| 10:03:58 | 4   to ARS? |
| 10:04:01 | 5     A.   "Unpaid Medical bills." |
| 10:04:06 | 6     Q.   There's no other description. |
| 10:04:09 | 7     MR. KLUTHO: Do you need her to say it |
| 10:04:11 | 8   again? |
| 10:04:13 | 9     A.   "Unpaid Medical bills." |
| 10:04:19 | 10     MR. SCHWIEBERT: Let's take a five-minute |
| 10:04:20 | 11   break. |
| 10:04:21 | 12     THE WITNESS: I think that's a very good |
| 10:04:23 | 13   idea. |
| 10:04:24 | 14     (Recess taken from 10:04 to 10:17 a.m.) |
| 10:18:19 | 15   BY MR. SCHWIEBERT: |
| 10:18:23 | 16     Q.   Ms. Drennen, can you please look at |
| 10:18:25 | 17   Deposition Exhibit 19. And if you turn to the second |
| 10:18:36 | 18   page of Deposition Exhibit Number 19, there's a list |
| 10:18:41 | 19   of deposition topics; correct? |
| 10:18:44 | 20     A.   Yes. |
| 10:18:45 | 21     Q.   And you understand that you've been |
| 10:18:46 | 22   designated, on behalf of ARS, to testify as to these |
| 10:18:51 | 23   deposition topics; correct? |
| 10:18:53 | 24     A.   Yes. |
| 10:18:53 | 25     Q.   Okay. |

52

| | |
|---|---|
| 10:18:54 | 1     MR. KLUTHO: For the record, I will |
| 10:18:55 | 2   reiterate, counsel, that you should limit your |
| 10:18:58 | 3   examination to the sole remaining issue set forth in |
| 10:19:01 | 4   the Judge's order, and caution you with respect to 28 |
| 10:19:05 | 5   United States Code, Section 1927 and your vexatious |
| 10:19:10 | 6   litigation. |
| 10:19:11 | 7     Q.   What'd you do to prepare to testify on topic |
| 10:19:13 | 8   number 1? |
| 10:19:14 | 9     A.   Reviewed your documents. |
| 10:19:16 | 10     Q.   Anything else? |
| 10:19:21 | 11     A.   No, not really. I do it every day, so it's |
| 10:19:23 | 12   part of my job. |
| 10:19:25 | 13     Q.   Well topic number 1 is the business |
| 10:19:26 | 14   relationship between ARS and Allina, and any changes |
| 10:19:30 | 15   over the last six years; correct? |
| 10:19:32 | 16     MR. KLUTHO: Counsel, I'm going to object |
| 10:19:34 | 17   again that the Judge's order indicated that it has to |
| 10:19:38 | 18   do with Ferkingstad and on the date of the |
| 10:19:40 | 19   representation, and why you're asking about what |
| 10:19:41 | 20   happened over the last six years is beyond me. |
| 10:19:45 | 21     Subject to that, tell him about your -- why |
| 10:19:48 | 22   you know about this. |
| 10:19:52 | 23     A.   I know about the changes in the last six |
| 10:19:53 | 24   years because I have been employed by Accounts |
| 10:19:57 | 25   Receivable Services for 17 years. Prior to that I |

53

| | | |
|---|---|---|
| 10:20:01 | 1 | have worked in the collection industry for over 42 |
| 10:20:05 | 2 | years. |
| 10:20:07 | 3 | MR. KLUTHO:  But he's just asking about the |
| 10:20:09 | 4 | last -- |
| 10:20:09 | 5 | A.  I've worked really closely with Allina as my |
| 10:20:12 | 6 | client for 17 years. |
| 10:20:18 | 7 | Q.  Has the business relationship between ARS |
| 10:20:23 | 8 | and Allina in the last six years? |
| 10:20:26 | 9 | MR. KLUTHO:  Counsel, I'm going to object |
| 10:20:28 | 10 | that it's absolutely irrelevant.  The only relevant |
| 10:20:30 | 11 | timeframe is 2015, as the Judge has indicated in her |
| 10:20:34 | 12 | order.  Why are you asking that? |
| 10:20:40 | 13 | A.  Everything changes day-to-day in any |
| 10:20:42 | 14 | business world.  As far as our relationship; do I |
| 10:20:49 | 15 | still have them as a client, do I work closely with |
| 10:20:52 | 16 | them, are they part of my everyday work flow?  Yes. |
| 10:21:00 | 17 | Q.  For the last -- at least the last six years |
| 10:21:04 | 18 | ARS has been a wholly-owned subsidiary of Allina; |
| 10:21:07 | 19 | correct? |
| 10:21:07 | 20 | MR. KLUTHO:  Same objections. |
| 10:21:09 | 21 | A.  Yes. |
| 10:21:25 | 22 | Q.  At one point in time, before 2014, ARS was |
| 10:21:30 | 23 | acting as a debt collection agency for Allina without |
| 10:21:36 | 24 | purchasing the debts; correct? |
| 10:21:38 | 25 | MR. KLUTHO:  Same objections. |

54

| | | |
|---|---|---|
| 10:21:40 | 1 | A.  Yes.  We are a third-party collection |
| 10:21:43 | 2 | agency. |
| 10:21:48 | 3 | Q.  Does ARS do debt collection for someone |
| 10:21:55 | 4 | other than Allina? |
| 10:21:56 | 5 | A.  Yes. |
| 10:22:00 | 6 | Q.  Do you know what percentage of your work is |
| 10:22:01 | 7 | done for Allina? |
| 10:22:02 | 8 | MR. KLUTHO:  Don't answer the question. |
| 10:22:04 | 9 | Don't answer it. |
| 10:22:05 | 10 | It's absolutely irrelevant to this case. |
| 10:22:08 | 11 | This was an Allina debt to Ms. Ferkingstad and |
| 10:22:11 | 12 | you're not here to do a fishing expedition about ARS |
| 10:22:14 | 13 | and what work it does for others. |
| 10:22:17 | 14 | Don't answer it.  I instruct you not to |
| 10:22:18 | 15 | answer. |
| 10:22:22 | 16 | Q.  Do you have any additional testimony |
| 10:22:24 | 17 | regarding topic number 1? |
| 10:22:27 | 18 | A.  No. |
| 10:22:28 | 19 | Q.  Topic number 2.  What'd you do to prepare to |
| 10:22:31 | 20 | testify on topic number 2? |
| 10:22:34 | 21 | MR. KLUTHO:  Same objections. |
| 10:22:35 | 22 | A.  I am confused.  What was your question? |
| 10:22:39 | 23 | Q.  Well we're -- we're moving down the list of |
| 10:22:41 | 24 | topics. |
| 10:22:42 | 25 | A.  I got that. |

55

| | | |
|---|---|---|
| 10:22:43 | 1 | Q.  We're on topic number 2. |
| 10:22:44 | 2 | A.  Yes. |
| 10:22:45 | 3 | Q.  What did you do to prepare to provide |
| 10:22:47 | 4 | testimony for ARS today on behalf of topic number 2? |
| 10:22:51 | 5 | MR. KLUTHO:  Same objections. |
| 10:22:52 | 6 | A.  Oh, I thought you said 1. |
| 10:22:56 | 7 | I reviewed the -- the information that was |
| 10:22:58 | 8 | given to me. |
| 10:22:59 | 9 | Q.  What information was given to you? |
| 10:23:01 | 10 | A.  In this packet.  [Indicating exhibits.] |
| 10:23:07 | 11 | Q.  The Notice of Deposition and other exhibits. |
| 10:23:09 | 12 | A.  Yes. |
| 10:23:12 | 13 | Q.  Did you do anything else? |
| 10:23:14 | 14 | A.  No. |
| 10:23:15 | 15 | Q.  Did you talk to anybody else in preparation |
| 10:23:17 | 16 | to testify on topic number 2? |
| 10:23:19 | 17 | A.  No. |
| 10:23:19 | 18 | Q.  Do you have any additional testimony to |
| 10:23:21 | 19 | provide on topic number 2? |
| 10:23:22 | 20 | A.  No. |
| 10:23:22 | 21 | MR. KLUTHO:  Object to the form of the |
| 10:23:23 | 22 | question.  What do you mean, do you have any |
| 10:23:25 | 23 | additional testimony about number 2?  This is what |
| 10:23:27 | 24 | she does day in and day out.  She lives it. |
| 10:23:30 | 25 | Q.  Topic number 3.  What'd you do to prepare to |

56

| | | |
|---|---|---|
| 10:23:32 | 1 | testify on topic number 3? |
| 10:23:34 | 2 | MR. KLUTHO:  Is that true? |
| 10:23:35 | 3 | THE WITNESS:  That is true. |
| 10:23:38 | 4 | I'm sorry. |
| 10:23:39 | 5 | Q.  What'd you do to prepare to testify on topic |
| 10:23:41 | 6 | number 3? |
| 10:23:42 | 7 | MR. KLUTHO:  Same objections. |
| 10:23:44 | 8 | A.  As stated, I do it daily.  I don't have to |
| 10:23:48 | 9 | prepare to answer these questions.  It's part of my |
| 10:23:50 | 10 | job. |
| 10:23:53 | 11 | Q.  Did you do anything in particular to prepare |
| 10:23:56 | 12 | to testify on topic number 3? |
| 10:23:59 | 13 | A.  Other than my daily work, no. |
| 10:24:04 | 14 | Q.  Do you have any additional testimony to |
| 10:24:05 | 15 | provide on topic number 3? |
| 10:24:07 | 16 | MR. KLUTHO:  Object to the form of the |
| 10:24:11 | 17 | question. |
| 10:24:11 | 18 | A.  No. |
| 10:24:12 | 19 | Q.  Topic number 4. |
| 10:24:13 | 20 | MR. KLUTHO:  Same objections. |
| 10:24:16 | 21 | Q.  Did you do anything to prepare to testify on |
| 10:24:19 | 22 | topic number 4? |
| 10:24:19 | 23 | A.  No.  Other than review the -- these |
| 10:24:22 | 24 | documents, no. |
| 10:24:28 | 25 | Q.  Do you have any testimony to provide as it |

57

10:24:30 1 relates to topic number 4?

10:24:31 2 MR. KLUTHO: Object to the form of the

10:24:33 3 question.

10:24:34 4 A. No.

10:24:35 5 Q. Topic number 5. What'd you do to prepare to

10:24:39 6 testify on topic number 5?

10:24:41 7 A. Nothing except review the document.

10:24:46 8 Q. Other than you've already provided, do you

10:24:48 9 have any testimony to provide on behalf of ARS

10:24:51 10 regarding topic number 5?

10:24:53 11 MR. KLUTHO: Object to the form of the

10:24:53 12 question.

10:24:54 13 A. No.

10:24:55 14 Q. Topic number 6.

10:24:57 15 MR. KLUTHO: Same objection.

10:24:58 16 Q. What did you do to prepare to testify on

10:24:59 17 topic number 6?

10:25:04 18 A. Just review the information that was

10:25:06 19 provided in the packet.

10:25:08 20 Q. Nothing else.

10:25:09 21 A. No.

10:25:10 22 Q. Other than you've already testified, do you

10:25:13 23 have any additional testimony regarding topic number

10:25:16 24 6?

10:25:16 25 MR. KLUTHO: Object to the form of the

58

10:25:17 1 question.

10:25:18 2 A. No.

10:25:19 3 Q. Topic number 7.

10:25:21 4 A. You have my name spelled wrong.

10:25:27 5 Q. I apologize. And I know I said it wrong

10:25:32 6 yesterday. I think I used the name of a town in

10:25:36 7 Germany that got bombed, so I definitely apologize.

10:25:38 8 A. Well I know that you're very particular

10:25:40 9 about names, so therefore I would like mine spelled

10:25:43 10 correctly.

10:25:48 11 Q. I threw an "a" in there.

10:25:49 12 A. Correct.

10:25:50 13 Q. I apologize.

10:25:51 14 You understood, despite my typo, that I was

10:25:58 15 referring to Exhibit D; correct?

10:26:01 16 A. Yes.

10:26:05 17 Q. What did you do to prepare to testify on

10:26:07 18 topic number 7?

10:26:11 19 A. Other than review the information provided

10:26:13 20 in the packet, nothing.

10:26:16 21 Q. Topic number 8. What did you do to prepare

10:26:19 22 to testify on behalf of ARS regarding topic number 8?

10:26:23 23 A. Other than review the information provided

10:26:24 24 in the packet, nothing.

10:26:27 25 Q. Other than you've already testified, do you

59

10:26:29 1 have any additional testimony on behalf of ARS

10:26:32 2 regarding topic number 8?

10:26:33 3 A. No.

10:26:33 4 MR. KLUTHO: Object to the form of the

10:26:35 5 question.

10:26:36 6 Q. Topic number 9. What'd you do to prepare on

10:26:42 7 -- to testify on behalf of ARS on topic number 9?

10:26:46 8 A. Reviewed the information that was provided

10:26:48 9 to me in the packet.

10:26:51 10 Q. Well there was not a Purchase of Business

10:26:55 11 Agreement as of October 7th, 2015 in the packet, was

10:27:02 12 there?

10:27:03 13 MR. KLUTHO: Objection, counsel,

10:27:04 14 argumentative. Do you want her to go back over and

10:27:07 15 explain what that document is?

10:27:09 16 Go ahead and do that.

10:27:11 17 THE WITNESS: I believe you're referring to

10:27:13 18 the Blanket Purchase Agreement.

10:27:17 19 Q. So in preparing to testi --

10:27:18 20 MR. KLUTHO: Exhibit 21.

10:27:20 21 THE WITNESS: Exhibit 21.

10:27:21 22 Q. In preparing to testify on topic number 9

10:27:23 23 you reviewed the Blanket Purchase Agreement.

10:27:25 24 A. I already knew what the Blanket Purchase

10:27:27 25 Agreement was. I did not have to review it.

60

10:27:32 1 Q. Besides the testimony you've already

10:27:33 2 provided, are you prepared to provide any testimony on

10:27:37 3 behalf of ARS regarding topic number 9?

10:27:38 4 MR. KLUTHO: Object to the form of the

10:27:40 5 question.

10:27:40 6 A. No.

10:27:42 7 Q. Topic number 10. What'd you do to prepare

10:27:45 8 to testify on topic number 10?

10:27:49 9 A. Reviewed the information that was provided

10:27:51 10 in the packet.

10:27:54 11 A. Nothing else.

10:27:56 12 A. I investigated why it was a different date

10:27:59 13 than provided in the packet.

10:28:02 14 Q. And how did you investigate that?

10:28:05 15 A. I communicated with Ms. Nagle.

10:28:09 16 Q. When did that conversation take place?

10:28:12 17 A. Yesterday.

10:28:14 18 Q. What did Ms. Nagle tell you?

10:28:16 19 A. She explained to me the information on the

10:28:19 20 interest; that the principal had not changed, that the

10:28:24 21 reason she reprinted it was because interest had been

10:28:27 22 added during the logistics of Allina returning the

10:28:33 23 packet on Ms. Ferkingstad.

10:28:46 24 Q. And that means that the Exhibit 1A which

10:28:52 25 appears in Exhibit 12 has a balance which is higher,

61

| | |
|---|---|
| 10:28:58 | 1 because there's been additional interest in the |
| 10:29:00 | 2 Exhibit 1A that was part of the package actually sent |
| 10:29:05 | 3 to Allina to purchase this debt. |
| 10:29:07 | 4     A.    Not in the principal, only in the interest. |
| 10:29:10 | 5 Allina does not care about the interest. |
| 10:29:19 | 6     Q.    Exhibit 12 has a principal balance column |
| 10:29:24 | 7 and an account balance column; correct? |
| 10:29:26 | 8     A.    Correct. |
| 10:29:27 | 9     Q.    The principal balance column, you're telling |
| 10:29:30 | 10 me, would be the same between the Exhibit 1A that was |
| 10:29:34 | 11 actually printed by Ms. Nagle and Exhibit 12; correct? |
| 10:29:41 | 12 I'm back one on Exhibit 12. |
| 10:29:42 | 13     MR. KLUTHO:  No, I'm just looking at |
| 10:29:44 | 14 Exhibit 13 where that principal amount is the same |
| 10:29:46 | 15 as. |
| 10:29:47 | 16     A.    Is listed as the same as Exhibit -- |
| 10:29:51 | 17     Q.    12. |
| 10:29:51 | 18     A.    -- 12. |
| 10:29:52 | 19     Q.    But the account balance column on Exhibit 12 |
| 10:29:55 | 20 is actually higher than the Exhibit 1A that was |
| 10:29:59 | 21 attached to Exhibit 11 and 8 when it was sent to |
| 10:30:06 | 22 Allina. |
| 10:30:07 | 23     A.    As explained to you yesterday by Ms. |
| 10:30:10 | 24 Fountain, they only look at the principal.  We only |
| 10:30:15 | 25 purchase the principal.  The rest of the information |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

63

| | |
|---|---|
| 10:31:24 | 1     MR. KLUTHO:  Object to the form of the |
| 10:31:25 | 2 question. |
| 10:31:26 | 3     A.    No. |
| 10:31:30 | 4     Q.    Topic number 12.  Does ARS have procedures |
| 10:31:37 | 5 relating to the timing for the commencement of |
| 10:31:39 | 6 conciliation court lawsuits on Allina Health Systems' |
| 10:31:43 | 7 medical debts? |
| 10:31:44 | 8     MR. KLUTHO:  Object to the form of the |
| 10:31:46 | 9 question, it's vague as to time. |
| 10:31:49 | 10     With respect to Ms. Ferkingstad go ahead |
| 10:31:51 | 11 and let him know if you have anything. |
| 10:31:54 | 12     A.    We do have procedures in place, but they |
| 10:31:58 | 13 aren't time constrained.  There are so many different |
| 10:32:03 | 14 things that can happen to an account that might delay |
| 10:32:10 | 15 a certain account from being reviewed.  All of our |
| 10:32:14 | 16 accounts, prior to being purchased, are reviewed for |
| 10:32:20 | 17 asset information, correct address information, they |
| 10:32:26 | 18 go through the AG compliance requirements, we make |
| 10:32:30 | 19 sure all third-party payors are exhausted, we make |
| 10:32:34 | 20 sure that the responsible party is not over age and on |
| 10:32:42 | 21 Medicare or Medicaid.  Whatever else is included in |
| 10:32:51 | 22 the -- We have a checklist that we go through with the |
| 10:32:54 | 23 AG requirements on prior to purchasing the account. |
| 10:32:58 | 24     Q.    Okay.  Is there a policy for the timing of |
| 10:33:06 | 25 the filing of conciliation court lawsuits for |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

62

| | |
|---|---|
| 10:30:19 | 1 is only particular to ARS as interest applied prior to |
| 10:30:26 | 2 purchasing the debt. |
| 10:30:28 | 3     Q.    But the effect of printing it later in time |
| 10:30:31 | 4 is there's a higher account balance in that column on |
| 10:30:34 | 5 Exhibit 12 because additional interest has been |
| 10:30:37 | 6 accrued. |
| 10:30:37 | 7     A.    Logistically, yes. |
| 10:30:43 | 8     Q.    Topic number -- |
| 10:30:44 | 9     Do you have any other additional testimony |
| 10:30:45 | 10 on topic number 10? |
| 10:30:47 | 11     MR. KLUTHO:  Object to the form of the |
| 10:30:48 | 12 question. |
| 10:30:51 | 13     A.    No. |
| 10:30:52 | 14     Q.    Topic number 11.  What'd you do to prepare |
| 10:30:55 | 15 to testify on topic number 11? |
| 10:31:02 | 16     A.    What -- Can you tell me what number Exhibit |
| 10:31:04 | 17 -- |
| 10:31:04 | 18     MR. KLUTHO:  The last two pages. |
| 10:31:05 | 19 G is the bad debt final referral document. |
| 10:31:11 | 20     A.    Did I do anything to prepare -- |
| 10:31:13 | 21     Q.    To prepare to testify -- |
| 10:31:14 | 22     A.    No.  I reviewed it. |
| 10:31:17 | 23     Q.    Other than you've already testified, do you |
| 10:31:20 | 24 have any additional testimony to provide on behalf of |
| 10:31:22 | 25 ARS on topic number 11? |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

64

| | |
|---|---|
| 10:33:08 | 1 Allina? |
| 10:33:09 | 2     A.    Not for the timing, no.  Other than we do |
| 10:33:13 | 3 not sue debts that are statute of limitations. |
| 10:33:19 | 4     Q.    Is there a policy about how long after you |
| 10:33:23 | 5 acquire the debts from Allina that you file the |
| 10:33:27 | 6 conciliation court complaint? |
| 10:33:28 | 7     A.    No. |
| 10:33:40 | 8     Q.    Did you do anything to prepare to testify on |
| 10:33:41 | 9 topic number 12? |
| 10:33:44 | 10     MR. KLUTHO:  You asked that question. |
| 10:33:47 | 11     Q.    If I did, I apologize, but I don't believe I |
| 10:33:49 | 12 asked that one yet. |
| 10:33:50 | 13     MR. KLUTHO:  That's when we started talking |
| 10:33:53 | 14 about it, item 12. |
| 10:33:55 | 15     A.    Other than review the information provided |
| 10:33:57 | 16 to me, no. |
| 10:33:59 | 17     Q.    And by "the information provided" to you |
| 10:34:01 | 18 mean the attachment to the Notice of Deposition. |
| 10:34:04 | 19     A.    Correct. |
| 10:34:09 | 20     Q.    Topic number 13.  Did you do anything to |
| 10:34:12 | 21 prepare to testify on topic number 13? |
| 10:34:16 | 22     MR. KLUTHO:  Same objections. |
| 10:34:17 | 23     A.    Same answer.  No, not except to review what |
| 10:34:22 | 24 was provided to me. |
| 10:34:23 | 25     Q.    And by "provided" to you you mean the things |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

65

| | |
|---|---|
| 10:34:26 | 1 | that were attached to the notice of deposition. |
| 10:34:28 | 2 | A.   Correct. |
| 10:34:30 | 3 | Q.   Does ARS have procedures for drafting its |
| 10:34:34 | 4 | conciliation court complaints based on Allina's |
| 10:34:37 | 5 | medical debts? |
| 10:34:38 | 6 | MR. KLUTHO:  Object to the form of the |
| 10:34:40 | 7 | question. |
| 10:34:41 | 8 | A.   Yes, we do have procedures. |
| 10:34:43 | 9 | Q.   Okay.  And what are those procedures for |
| 10:34:45 | 10 | drafting the conciliation court complaint? |
| 10:34:50 | 11 | A.   I don't know what -- |
| 10:34:51 | 12 | MR. KLUTHO:  Object to the form of the |
| 10:34:51 | 13 | question. |
| 10:34:52 | 14 | A.   I don't know what you mean by "drafting." |
| 10:34:55 | 15 | Do you mean compiling it and getting it ready to go |
| 10:34:58 | 16 | over to Allina?  What do you mean by "drafting"? |
| 10:35:01 | 17 | Q.   Well this is -- |
| 10:35:04 | 18 | ARS has decided that it wants to file a |
| 10:35:06 | 19 | lawsuit so it purchases the debt from Allina. |
| 10:35:08 | 20 | A.   Yes. |
| 10:35:10 | 21 | Q.   Then after it's purchased the debt -- |
| 10:35:12 | 22 | A.   Yes. |
| 10:35:13 | 23 | Q.   -- it files a conciliation court complaint |
| 10:35:15 | 24 | against the defendant. |
| 10:35:16 | 25 | A.   Correct. |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

66

| | |
|---|---|
| 10:35:17 | 1 | Q.   Okay.  Are there procedures that govern the |
| 10:35:20 | 2 | drafting of that complaint? |
| 10:35:23 | 3 | A.   Yes. |
| 10:35:24 | 4 | Q.   What are those procedures? |
| 10:35:27 | 5 | A.   Well there -- there are procedures to |
| 10:35:31 | 6 | instruct the conciliation court reps how to transfer |
| 10:35:36 | 7 | the debt from service rendered to purchased, and then |
| 10:35:45 | 8 | there are procedures to print out the summons and |
| 10:35:51 | 9 | complaint.  There are procedures to compile a file to |
| 10:35:57 | 10 | go to court and present to the Judge. |
| 10:36:04 | 11 | Q.   Okay.  Let's talk about the procedures for |
| 10:36:06 | 12 | compiling the file to go to court and present to the |
| 10:36:09 | 13 | Judge. |
| 10:36:09 | 14 | A.   Umm-hmm. |
| 10:36:11 | 15 | Q.   Those procedures include printing Exhibit 11 |
| 10:36:24 | 16 | and an Exhibit 1A; correct? |
| 10:36:29 | 17 | MR. KLUTHO:  Object to the form of the |
| 10:36:30 | 18 | question. |
| 10:36:31 | 19 | Are you limiting it to just that, counsel? |
| 10:36:34 | 20 | A.   Yes, -- |
| 10:36:35 | 21 | Q.   Among other documents. |
| 10:36:36 | 22 | A.   Yes. |
| 10:36:37 | 23 | Q.   Are there other documents that the procedure |
| 10:36:39 | 24 | for compiling the file to present to the court |
| 10:36:42 | 25 | instructs the -- I forgot -- |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

67

| | |
|---|---|
| 10:36:47 | 1 | A.   Conciliation court rep. |
| 10:36:49 | 2 | Q.   -- conciliation court rep.  Let me write it |
| 10:36:53 | 3 | down. |
| 10:36:54 | 4 | Are there other documents that the |
| 10:36:56 | 5 | procedures tell the conciliation court repre -- to put |
| 10:37:01 | 6 | in the file that's compiled to present to the judge in |
| 10:37:04 | 7 | conciliation court? |
| 10:37:05 | 8 | A.   Yes. |
| 10:37:05 | 9 | And that's the Suit Authorization and |
| 10:37:07 | 10 | Assignment document. |
| 10:37:07 | 11 | A.   Correct. |
| 10:37:08 | 12 | Q.   Okay.  Besides those three documents, -- |
| 10:37:13 | 13 | A.   The summons and complaint -- |
| 10:37:21 | 14 | Q.   Anything else? |
| 10:37:22 | 15 | A.   -- goes in the file. |
| 10:37:23 | 16 | Q.   Anything else? |
| 10:37:25 | 17 | A.   Did you include the transmittal? |
| 10:37:27 | 18 | Q.   Exhibit 1A. |
| 10:37:29 | 19 | A.   Yes.  That's in there too. |
| 10:37:29 | 20 | Q.   You -- |
| 10:37:32 | 21 | A.   I'm sorry. |
| 10:37:32 | 22 | Q.   Anything else? |
| 10:37:33 | 23 | A.   1A, or F, or whatever you call it these |
| 10:37:36 | 24 | days.  12. |
| 10:37:37 | 25 | Q.   Exhibit 12 is the only copy I have. |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

68

| | |
|---|---|
| 10:37:38 | 1 | A.   Exhibit 12, okay. |
| 10:37:40 | 2 | Q.   All right. |
| 10:37:43 | 3 | A.   We also include a printout of the account |
| 10:37:46 | 4 | from our system that would have any notes on it that |
| 10:37:50 | 5 | might pertain to the account of Ms. Ferkingstad. |
| 10:38:15 | 6 | Okay.  We also bring to court with us a |
| 10:38:17 | 7 | Charity Care application, a stipulation to fill out if |
| 10:38:22 | 8 | we do reach an agreement with the patient at the time |
| 10:38:26 | 9 | they appear in court, if they appear in court.  We, |
| 10:38:33 | 10 | you know, try very hard to resolve any of the cases |
| 10:38:37 | 11 | that we bring to conciliation court.  Reliance has a |
| 10:38:41 | 12 | very good reputation in the courts for talking to the |
| 10:38:44 | 13 | consumers and trying to get them to resolve the |
| 10:38:48 | 14 | account prior to going before the Judge.  We have at |
| 10:38:55 | 15 | least, I would say, in all counties, a 50 to 60 |
| 10:39:02 | 16 | percent resolved ratio of accounts prior to court or |
| 10:39:08 | 17 | even at court. |
| 10:39:12 | 18 | I've had consumers in court, especially one |
| 10:39:17 | 19 | particular I'm thinking of in Hennepin County, where a |
| 10:39:19 | 20 | lady appeared, we had had no contact with her |
| 10:39:22 | 21 | whatsoever.  She appeared, I went to speak with her in |
| 10:39:27 | 22 | a room, she explained to me she had been unemployed, |
| 10:39:31 | 23 | that she had children.  I reviewed the guidelines for |
| 10:39:37 | 24 | the free care and the Charity Care and gave her an |
| 10:39:41 | 25 | application at that time to apply.  She told me she |

STIREWALT & ASSOCIATES
1-800-553-1953 info@stirewalt.com

69

| | |
|---|---|
| 10:39:46 | **1** would apply and mail it back to our client. I |
| 10:39:50 | **2** explained if she was approved the accounts would be |
| 10:39:53 | **3** forgiven. We went back in the courtroom in front of |
| 10:39:56 | **4** the Judge and she actually broke down in tears and |
| 10:39:59 | **5** thanked me for how understanding I was. That is a |
| 10:40:03 | **6** norm for us at Reliance Recoveries. We do that at all |
| 10:40:09 | **7** court appearances with my representatives. It's very |
| 10:40:13 | **8** important to us to work with people and to try to |
| 10:40:16 | **9** resolve accounts before asking for a judgment. At the |
| 10:40:30 | **10** time the Judge commented that he'd never seen that in |
| 10:40:33 | **11** his courtroom. |
| 10:40:48 | **12** (Exhibit 22 marked for identification.) |
| 10:40:48 | **13** BY MR. SCHWIEBERT: |
| 10:40:52 | **14** Q. Ms. Drennen, I've handed you -- the court |
| 10:40:55 | **15** reporter has handed you what's been marked as |
| 10:40:57 | **16** Deposition Exhibit Number 22. And if you look in the |
| 10:41:00 | **17** lower right-hand corner you'll see that they are -- we |
| 10:41:06 | **18** call them Bates labels, as attorneys -- Bates labeled |
| 10:41:10 | **19** ARS 1 through 18. |
| 10:41:14 | **20** MR. KLUTHO: Stipulated. |
| 10:41:17 | **21** Q. These are the documents that have been |
| 10:41:18 | **22** provided by ARS to the plaintiff in this case. And I |
| 10:41:22 | **23** do apologize, there are some exhibit stickers on here |
| 10:41:25 | **24** that were not on them when they were sent to me, so |
| 10:41:28 | **25** I'm -- just so it's clear. |

70

| | |
|---|---|
| 10:41:32 | **1** Are you familiar with these documents? |
| 10:41:45 | **2** A. (Witness reviewing exhibit.) I believe that |
| 10:42:31 | **3** it is part -- partly the packet that was -- |
| 10:42:34 | **4** MR. KLUTHO: He just asked if you're |
| 10:42:35 | **5** familiar with the document. |
| 10:42:36 | **6** A. Yes. Yes. |
| 10:42:37 | **7** Q. Are you aware of additional documents |
| 10:42:39 | **8** besides this stack that have been provided to the |
| 10:42:42 | **9** plaintiff? |
| 10:42:42 | **10** A. No. |
| 10:42:42 | **11** MR. KLUTHO: Well counsel, I just gave you |
| 10:42:44 | **12** some documents today. |
| 10:42:45 | **13** Q. Besides the document I got at the beginning |
| 10:42:46 | **14** of this deposition and the things that were marked |
| 10:42:49 | **15** yesterday, are you aware of any other documents that |
| 10:42:54 | **16** have been provided to the plaintiff? |
| 10:42:55 | **17** MR. KLUTHO: Counsel, that wasn't meant as |
| 10:42:57 | **18** a joke. I'm not sure why you're laughing. |
| 10:42:59 | **19** A. No. |
| 10:43:00 | **20** Q. The first page, ARS 1, is the Complaint that |
| 10:43:03 | **21** was filed by ARS against Andrea N. Ferkingstad; |
| 10:43:11 | **22** correct? |
| 10:43:11 | **23** A. Yes. |
| 10:43:20 | **24** Q. The file date as appears on the document is |
| 10:43:23 | **25** October 19th of 2015; correct? It's reflected in a |

71

| | |
|---|---|
| 10:43:28 | **1** stamp at the top. |
| 10:43:30 | **2** A. Yes. That's the date the Court received it. |
| 10:43:32 | **3** Q. Okay. But we know that the Complaint is |
| 10:43:36 | **4** done by ARS at least as early as October 14th of 2015, |
| 10:43:49 | **5** which is the date that the notary enters for Ms. |
| 10:43:49 | **6** Nagle's signature. |
| 10:43:53 | **7** A. It appears to be, yes. I can't see if |
| 10:43:53 | **8** that's a 14 or a 9, but. |
| 10:44:04 | **9** Q. Is the reason why Exhibit 12 was printed was |
| 10:44:11 | **10** in preparation for -- or is it -- Let me start over |
| 10:44:11 | **11** again. |
| 10:44:16 | **12** Is it ARS's policy to make sure there is a |
| 10:44:19 | **13** printed version of Exhibit 12 prior to filing the |
| 10:44:24 | **14** Complaint against the consumers? |
| 10:44:27 | **15** A. Just a second. Let me get to 12. (Witness |
| 10:44:37 | **16** reviewing exhibit.) |
| 10:44:37 | **17** Yes. They would have prepared the file for |
| 10:44:40 | **18** court at that time. |
| 10:44:42 | **19** Q. So the -- it's prepared for court before the |
| 10:44:46 | **20** Complaint is filed. |
| 10:44:48 | **21** A. Correct, -- |
| 10:44:48 | **22** Q. Okay. |
| 10:44:48 | **23** A. -- because we know we are going to court |
| 10:44:51 | **24** after we have purchased it. |
| 10:44:53 | **25** Q. You made reference to other documents in |

72

| | |
|---|---|
| 10:45:06 | **1** your file. If you look at ARS 13? |
| 10:45:15 | **2** A. I have num -- |
| 10:45:17 | **3** I have letters. |
| 10:45:18 | **4** Q. If you look at the numbers in the lower |
| 10:45:20 | **5** right, those little Bate -- page Bates labels. |
| 10:45:24 | **6** A. Number what? I'm sorry. |
| 10:45:25 | **7** Q. Thirteen. |
| 10:45:29 | **8** A. Yes. |
| 10:45:31 | **9** Q. What is ARS 13? |
| 10:45:36 | **10** A. That is a accumulation of the principal |
| 10:45:41 | **11** balance, the interest that has been charged, and the |
| 10:45:45 | **12** total. |
| 10:45:46 | **13** Q. Okay. That's the content of it. |
| 10:45:48 | **14** Is ARS -- And I apologize if my question was |
| 10:45:54 | **15** imprecise. ARS is -- |
| 10:45:56 | **16** ARS 13 is something that's printed off of |
| 10:46:00 | **17** ARS's computer system on October 14th of 2015. |
| 10:46:05 | **18** A. Correct. |
| 10:46:06 | **19** Q. Okay. And you know by that -- |
| 10:46:10 | **20** Well is this a document that's printed off |
| 10:46:12 | **21** prior to the Complaint being filed? |
| 10:46:17 | **22** A. I don't know what you mean by "prior to the |
| 10:46:19 | **23** Complaint." Are you talking about when we mail the |
| 10:46:23 | **24** summons to the court? Yes, it is printed out prior |
| 10:46:27 | **25** probably. |

73

| | | |
|---|---|---|
| 10:46:28 | 1 | Q. What's the purpose of ARS 13? |
| 10:46:31 | 2 | A. It's so that when we go to court and the |
| 10:46:34 | 3 | consumer has a question about what we are bringing him |
| 10:46:39 | 4 | to court on we can give him a copy of this, which is |
| 10:46:45 | 5 | our information on the debt that was purchased from |
| 10:46:50 | 6 | Allina. |
| 10:46:56 | 7 | Q. ARS 13 is -- it's prepared to be used at the |
| 10:47:02 | 8 | court. |
| 10:47:03 | 9 | A. It is put in the court file, correct. |
| 10:47:05 | 10 | Q. I mean, it even has -- |
| 10:47:07 | 11 | A. We don't really use it in court. It is |
| 10:47:09 | 12 | there for questions if the consumer is questioning |
| 10:47:17 | 13 | what we purchased. |
| 10:47:19 | 14 | Q. Why is there a reference to "conciliation |
| 10:47:21 | 15 | court Hennepin" on this document? |
| 10:47:23 | 16 | A. Because this was for a Hennepin conciliation |
| 10:47:26 | 17 | court date. |
| 10:47:30 | 18 | Q. Why is there a reference to attorney's fees |
| 10:47:32 | 19 | on this document? |
| 10:47:34 | 20 | A. Well there would -- on this at some point |
| 10:47:40 | 21 | this same document would have been printed out to be |
| 10:47:43 | 22 | forwarded to an attorney if a judgment would have been |
| 10:47:46 | 23 | obtained and it would have defaulted. At this point |
| 10:47:51 | 24 | there was not any attorney fees. |
| 10:48:06 | 25 | This is just basically a snapshot of the |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

74

| | | |
|---|---|---|
| 10:48:10 | 1 | account in our system at the time we appear in court. |
| 10:48:14 | 2 | Q. To be provided to the consumer. |
| 10:48:16 | 3 | A. Correct. It is not presented to anybody |
| 10:48:19 | 4 | except the consumer, if they have questions. |
| 10:48:24 | 5 | Q. I'm looking back now at Exhibit 19, page |
| 10:48:36 | 6 | two, the list of deposition topics. I think if you |
| 10:48:39 | 7 | just flip that bundle it'll be right on the top of |
| 10:48:42 | 8 | your... |
| 10:48:43 | 9 | A. (Witness complying.) |
| 10:48:44 | 10 | Q. There you go. |
| 10:48:45 | 11 | Other than you've already testified, do you |
| 10:48:47 | 12 | have any testimony regarding topic number 13? |
| 10:48:49 | 13 | MR. KLUTHO: Object to the form of the |
| 10:48:49 | 14 | question. |
| 10:48:49 | 15 | A. No. |
| 10:48:55 | 16 | Q. What'd you do to prepare to testify on topic |
| 10:48:57 | 17 | number 14? |
| 10:49:07 | 18 | A. Reviewed the information provided. |
| 10:49:09 | 19 | Q. And by "information provided" you mean the |
| 10:49:12 | 20 | attachments that were -- to the Notice of Taking |
| 10:49:17 | 21 | Deposition. |
| 10:49:17 | 22 | A. Correct. |
| 10:49:18 | 23 | Q. Did you do anything else? |
| 10:49:20 | 24 | A. No. |
| 10:49:22 | 25 | Q. Are there procedures for collecting and |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

75

| | | |
|---|---|---|
| 10:49:27 | 1 | presenting documentation to consumer defendants and |
| 10:49:33 | 2 | conciliation court judges at ARS? |
| 10:49:35 | 3 | A. Yes. |
| 10:49:35 | 4 | Q. What are those procedures? |
| 10:49:38 | 5 | A. Did we not just go through this? Is there |
| 10:49:41 | 6 | something different I'm missing here? |
| 10:49:44 | 7 | Q. Let me ask it this way. |
| 10:49:46 | 8 | A. Okay. |
| 10:49:47 | 9 | Q. Other than you've just testified, are there |
| 10:49:48 | 10 | any procedures for collecting and presenting |
| 10:49:51 | 11 | documentation? |
| 10:49:51 | 12 | A. Other than what I just testified? No. |
| 10:49:55 | 13 | Q. Are there any procedures for not presenting |
| 10:49:58 | 14 | certain documents to conciliation court judges? |
| 10:50:01 | 15 | MR. KLUTHO: Object to the form of the |
| 10:50:03 | 16 | question. |
| 10:50:03 | 17 | A. No. |
| 10:50:03 | 18 | MR. KLUTHO: If you understand it, you can |
| 10:50:04 | 19 | answer. |
| 10:50:05 | 20 | A. No. |
| 10:50:05 | 21 | Q. Are there any procedures for not presenting |
| 10:50:09 | 22 | certain documentations to consumer defendants? |
| 10:50:11 | 23 | MR. KLUTHO: Object to the form of the |
| 10:50:13 | 24 | question. |
| 10:50:14 | 25 | A. No. |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

76

| | | |
|---|---|---|
| 10:50:15 | 1 | Q. Are there any -- |
| 10:50:16 | 2 | Do the procedures require that certain |
| 10:50:20 | 3 | documentation be presented to the consumer defendants? |
| 10:50:24 | 4 | A. No. |
| 10:50:25 | 5 | Q. Are there procedures that require certain |
| 10:50:29 | 6 | documentation to be presented to the conciliation |
| 10:50:31 | 7 | court judge? |
| 10:50:34 | 8 | A. To the judge himself? Yes, we -- |
| 10:50:37 | 9 | Q. It could be a her. |
| 10:50:39 | 10 | A. -- comply with any of the judge's requests. |
| 10:50:40 | 11 | Q. Okay. But is there a procedure at ARS that |
| 10:50:48 | 12 | requires certain documentation to be shown to the |
| 10:50:50 | 13 | judge? |
| 10:50:53 | 14 | A. If they request, yes. |
| 10:50:59 | 15 | Q. And that's the procedure. If they ask for |
| 10:51:01 | 16 | it, then your -- |
| 10:51:02 | 17 | A. That's correct. |
| 10:51:03 | 18 | Q. -- conciliation court representatives are |
| 10:51:06 | 19 | instructed to present the evidence that they have in |
| 10:51:09 | 20 | the file that's created before the Complaint is sent |
| 10:51:12 | 21 | to the court to the Judge. |
| 10:51:14 | 22 | A. Yes. And also on contested cases. |
| 10:51:19 | 23 | Q. Is it different in a contested case? |
| 10:51:23 | 24 | A. At times, yes. |
| 10:51:24 | 25 | Q. How is it different? |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

77

| | |
|---|---|
| 10:51:28 1 | **A.** Well as I stated before, we do everything we |
| 10:51:32 2 | can to resolve the accounts prior to court. |
| 10:51:34 3 | **Q.** I understand. |
| 10:51:35 4 | **A.** Sometimes that doesn't happen. Sometimes we |
| 10:51:40 5 | make the decision to go into the courtroom with the |
| 10:51:47 6 | consumer and appear in front of the judge. Sometimes |
| 10:51:51 7 | we make the decision to dismiss the case with |
| 10:51:57 8 | prejudice. Sometimes we make the decision to dismiss |
| 10:52:00 9 | the case without prejudice. |
| 10:52:09 10 | **Q.** Does ARS have a policy which is communicated |
| 10:52:13 11 | to its conciliation court representatives on how |
| 10:52:16 12 | they're to handle the matters if the defendant is |
| 10:52:19 13 | represented by counsel? |
| 10:52:20 14 | MR. KLUTHO: Object to the question, |
| 10:52:25 15 | counsel, it's completely outside the scope of the |
| 10:52:28 16 | sole issue remaining in this case, which as the Judge |
| 10:52:31 17 | has instructed you, is whether or not they owned the |
| 10:52:34 18 | debt when they went to conciliation court. |
| 10:52:37 19 | **A.** No. |
| 10:52:37 20 | MR. KLUTHO: We're not here for a fishing |
| 10:52:38 21 | expedition, counsel. |
| 10:52:40 22 | **Q.** Was Teresa Nagle instructed, in the Andrea |
| 10:52:49 23 | Ferkingstad matter, on how to handle the case if Ms. |
| 10:52:56 24 | Ferkingstad was represented by counsel? |
| 10:52:57 25 | MR. KLUTHO: Same objection. |

78

| | |
|---|---|
| 10:52:58 1 | **A.** No. |
| 10:52:59 2 | MR. KLUTHO: Was she represented by |
| 10:53:00 3 | counsel? Ferkingstad, did she have a lawyer in |
| 10:53:04 4 | conciliation court? |
| 10:53:05 5 | THE WITNESS: Yes. |
| 10:53:05 6 | MR. KLUTHO: Who was it? |
| 10:53:07 7 | THE WITNESS: Him. |
| 10:53:07 8 | MR. KLUTHO: Him. That guy right there? |
| 10:53:08 9 | THE WITNESS: Yeah, him. |
| 10:53:09 10 | MR. KLUTHO: Geez. Counsel, when can I |
| 10:53:12 11 | take your deposition? |
| 10:53:15 12 | THE WITNESS: He beat us up pretty well in |
| 10:53:16 13 | court. |
| 10:53:16 14 | MR. KLUTHO: Counsel, when can I take your |
| 10:53:18 15 | deposition? Do I need a subpoena, or are you just |
| 10:53:21 16 | going to appear voluntarily? |
| 10:53:25 17 | THE WITNESS: He was out in the hallway |
| 10:53:28 18 | with a clipboard -- with a clipboard soliciting |
| 10:53:30 19 | business. |
| 10:53:32 20 | BY MR. SCHWIEBERT: |
| 10:53:32 21 | **Q.** Were you there in Hennepin County -- |
| 10:53:34 22 | **A.** Yeah. |
| 10:53:34 23 | **Q.** -- on the day? |
| 10:53:35 24 | **A.** Yeah. |
| 10:53:37 25 | MR. KLUTHO: The day that you were there |

79

| | |
|---|---|
| 10:53:38 1 | out in the hallway soliciting business, is that what |
| 10:53:42 2 | you're referring to? |
| 10:53:42 3 | **Q.** On the day of the hearing, which was |
| 10:53:51 4 | November 13th, 2016, -- |
| 10:53:55 5 | **A.** Yes. |
| 10:53:55 6 | **Q.** -- you were there in conciliation court. |
| 10:53:57 7 | **A.** I was out in the hallway. |
| 10:53:59 8 | **Q.** In Hennepin County. |
| 10:54:00 9 | **A.** Yes. Helping my conciliation court reps |
| 10:54:03 10 | with people who show up to try and resolve their |
| 10:54:06 11 | bills. |
| 10:54:19 12 | **Q.** Did you make the decision to dismiss the |
| 10:54:24 13 | Complaint against... |
| 10:54:26 14 | Well Ralph O'Neil was the consumer |
| 10:54:28 15 | conciliation court representative who was there that |
| 10:54:30 16 | day; correct? |
| 10:54:32 17 | **A.** Yes. |
| 10:54:32 18 | **Q.** Okay. Did you make the decision to dismiss |
| 10:54:35 19 | the case against Ms. Ferkingstad? |
| 10:54:37 20 | **A.** No, I did not. |
| 10:54:39 21 | **Q.** Did Mr. O'Neil make the decision to dismiss |
| 10:54:41 22 | the case against Ms. Ferkingstad? |
| 10:54:43 23 | **A.** If that's what he did I would assume he did |
| 10:54:46 24 | make the decision. |
| 10:54:47 25 | **Q.** Did he talk to you about that decision? |

80

| | |
|---|---|
| 10:54:50 1 | **A.** Other than to say you were there, no. |
| 10:55:15 2 | **Q.** Other than you've already testified, do you |
| 10:55:21 3 | have any additional testimony to provide on behalf of |
| 10:55:23 4 | ARS regarding topic number 14? |
| 10:55:25 5 | MR. KLUTHO: Object to the form of the |
| 10:55:27 6 | question. |
| 10:55:33 7 | **A.** No. |
| 10:55:34 8 | **Q.** What'd you do to prepare to testify on topic |
| 10:55:36 9 | number 15? |
| 10:55:38 10 | MR. KLUTHO: Object to the form of the |
| 10:55:39 11 | question, it calls for a legal conclusion and this |
| 10:55:41 12 | witness is not a lawyer. |
| 10:55:47 13 | **A.** I have no answer to that question other than |
| 10:55:54 14 | I'm not a lawyer. I cannot answer that. |
| 10:55:58 15 | **Q.** I'm just asking you what you did to prepare |
| 10:55:59 16 | to testify on that topic. |
| 10:56:00 17 | MR. KLUTHO: Well she talked to me, and I |
| 10:56:02 18 | told her that she had standing. Do you want me to |
| 10:56:05 19 | tell you why she has standing, counsel? |
| 10:56:07 20 | **Q.** Other than speaking with counsel, did you -- |
| 10:56:09 21 | **A.** Correct. |
| 10:56:09 22 | **Q.** -- do anything to prepare to testify on |
| 10:56:11 23 | topic number 15? |
| 10:56:12 24 | **A.** No. |
| 10:56:12 25 | **Q.** Do you have any testimony to provide on |

81

| | |
|---|---|
| 10:56:14 | 1   behalf of ARS regarding topic number 15? |
| 10:56:18 | 2   MR. KLUTHO:  Sure.  They purchased the |
| 10:56:19 | 3   account from Allina -- |
| 10:56:23 | 4   THE WITNESS:  We did. |
| 10:56:23 | 5   MR. KLUTHO:  -- and they have standing. |
| 10:56:25 | 6   That's what I told her. |
| 10:56:27 | 7   And you can repeat that if you want, what I |
| 10:56:28 | 8   told you about that.  Go ahead. |
| 10:56:30 | 9   A.   It's pretty simple.  We purchase accounts |
| 10:56:34 | 10   from Allina for conciliation court every day.  That's |
| 10:56:42 | 11   what we do. |
| 10:56:45 | 12   Q.   That's your business. |
| 10:56:46 | 13   A.   That is part of my business, not my only |
| 10:56:50 | 14   business, but yes. |
| 10:56:52 | 15   Q.   Do you know how many accounts you purchase |
| 10:56:54 | 16   in a year? |
| 10:56:55 | 17   A.   No. |
| 10:56:55 | 18   MR. KLUTHO:  Object to the form of the |
| 10:56:56 | 19   question. |
| 10:56:56 | 20   Don't answer it.  It's wholly outside of |
| 10:56:59 | 21   Ms. Ferkingstad's account.  Don't answer it.  I |
| 10:57:01 | 22   instruct you not to answer. |
| 10:57:02 | 23   I am going to be to be make a motion, as |
| 10:57:06 | 24   you know, counsel, for the vexatious litigation that |
| 10:57:07 | 25   you're engaging in. |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

82

| | |
|---|---|
| 10:57:09 | 1   Q.   Do you know how many accounts besides Ms. |
| 10:57:12 | 2   Ferkingstad's that you sold -- that you purchased in |
| 10:57:15 | 3   October of 2015? |
| 10:57:16 | 4   MR. KLUTHO:  Did you hear the words coming |
| 10:57:18 | 5   out of my mouth?  She's not going to answer that |
| 10:57:20 | 6   question.  I have instructed her not to answer.  It's |
| 10:57:22 | 7   a improper question.  You are harassing and abusing |
| 10:57:25 | 8   this witness about issues that have nothing to do |
| 10:57:28 | 9   with Ms. Ferkingstad's account.  Move on. |
| 10:57:37 | 10   Q.   Do you have any additional testimony |
| 10:57:39 | 11   regarding topic number 15 on behalf of ARS? |
| 10:57:41 | 12   MR. KLUTHO:  Object to the form of the |
| 10:57:42 | 13   question. |
| 10:57:43 | 14   A.   No. |
| 10:57:49 | 15   Q.   Topic number 16.  What'd you do to prepare |
| 10:57:51 | 16   to testify on topic number 16? |
| 10:58:05 | 17   MR. KLUTHO:  They're not there, but this is |
| 10:58:06 | 18   your answers. |
| 10:58:07 | 19   Do you have them, counsel? |
| 10:58:08 | 20   Q.   I'm just asking what you did to prepare to |
| 10:58:09 | 21   testify on the topic. |
| 10:58:12 | 22   A.   I reviewed the information. |
| 10:58:13 | 23   Q.   And by "reviewed the information" you mean |
| 10:58:15 | 24   you reviewed the things that were attached to the |
| 10:58:17 | 25   Notice of Taking Deposition. |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

83

| | |
|---|---|
| 10:58:18 | 1   A.   Correct. |
| 10:58:18 | 2   Q.   Did you do anything else? |
| 10:58:19 | 3   A.   No. |
| 10:58:20 | 4   MR. KLUTHO:  She looked at the |
| 10:58:21 | 5   interrogatory answers, counsel. |
| 10:58:22 | 6   A.   Well yes, the ones you just -- |
| 10:58:24 | 7   MR. KLUTHO:  Do you want to give them to |
| 10:58:25 | 8   her or not?  What is the game you're playing? |
| 10:58:30 | 9   THE WITNESS:  I'm very frustrated right now |
| 10:58:31 | 10   so I am sorry if I'm not getting what you're |
| 10:58:34 | 11   answering -- asking me. |
| 10:58:52 | 12   (Exhibit 23 marked for identification.) |
| 10:58:52 | 13   THE WITNESS:  Yes, I did review these. |
| 10:58:55 | 14   BY MR. SCHWIEBERT: |
| 10:58:55 | 15   Q.   What is Exhibit 23? |
| 10:58:58 | 16   MR. KLUTHO:  This is the defendant's |
| 10:58:59 | 17   answers to your written discovery, counsel. |
| 10:59:02 | 18   Stipulated. |
| 10:59:04 | 19   Q.   If you'll turn to page 7.  Did you sign this |
| 10:59:14 | 20   document? |
| 10:59:17 | 21   A.   I believe I did, yes. |
| 10:59:18 | 22   Q.   Do you know when you signed this document? |
| 10:59:21 | 23   A.   Probably when it was provided to me. |
| 10:59:24 | 24   Q.   Do you know when that was? |
| 10:59:25 | 25   A.   No, I do not recall. |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

84

| | |
|---|---|
| 10:59:26 | 1   MR. KLUTHO:  Counsel, as you recall, this |
| 10:59:28 | 2   witness had surgery.  I believe we've provided to you |
| 10:59:33 | 3   executed copies of the documents.  Do you not have |
| 10:59:38 | 4   those, counsel?  This witness was out of the office |
| 10:59:42 | 5   for a long time recuperating from significant |
| 10:59:49 | 6   surgery.  Do you not have -- |
| 10:59:50 | 7   Can you answer my question?  Do you not |
| 10:59:52 | 8   have the executed copies?  If you don't, I'll get |
| 10:59:54 | 9   them to you. |
| 10:59:55 | 10   Q.   I just want to make sure I understand your |
| 10:59:57 | 11   answer.  You don't know when you signed it. |
| 10:59:58 | 12   A.   I do not recall. |
| 11:00:04 | 13   Q.   Interrogatory number 1 seeks to have ARS |
| 11:00:22 | 14   identify and describe the process by which ARS claims |
| 11:00:26 | 15   to have acquired the alleged debt at issue, including |
| 11:00:33 | 16   identifying all dates, the documents effecting the |
| 11:00:36 | 17   transfer and the individuals involved in the transfer; |
| 11:00:39 | 18   correct? |
| 11:00:40 | 19   MR. KLUTHO:  You did a very nice job of |
| 11:00:42 | 20   reading that, counsel. |
| 11:00:42 | 21   A.   Yes.  Correct. |
| 11:00:43 | 22   Q.   Okay.  The answer -- |
| 11:00:46 | 23   MR. KLUTHO:  You don't need to read it.  We |
| 11:00:47 | 24   can see it. |
| 11:00:48 | 25   Q.   -- is two sentences; correct? |

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

11:00:51 **1**     **A.**   Correct.

11:00:52 **2**     **Q.**   The first sentence says: "Ms. Ferkingstad's

11:00:55 **3**  account was sold and assigned by Allina to ARS on

11:00:59 **4**  October 7th, 2015."

11:01:01 **5**         Did I read that correctly?

11:01:02 **6**     **A.**   Yes, you did, sir.

11:01:04 **7**     **Q.**   Okay.  The next line says: "See documents

11:01:07 **8**  produced herein," which is a reference to the

11:01:10 **9**  documents that appear in Exhibit 22; correct?

11:01:15 **10**        MR. KLUTHO:  So stipulated.

11:01:21 **11**        I don't have them in front of me, counsel.

11:01:22 **12**  You produced a document --

11:01:24 **13**        Just let me talk.  You produced Exhibit 23

11:01:28 **14**  without any attachments.  When it was produced to you

11:01:32 **15**  it had attachments.  Now you have two separate

11:01:34 **16**  documents.  I don't have the whole thing in front of

11:01:36 **17**  me, I don't know what was attached as I sit here

11:01:39 **18**  today.

11:01:41 **19**        If you want to represent that Exhibit 22 is

11:01:45 **20**  what was attached to Exhibit 23, please represent

11:01:48 **21**  that, otherwise we don't know as we sit here today.

11:01:54 **22**  This witness was not asked to bring the documents to

11:01:58 **23**  this deposition.

11:02:01 **24**        Is that your representation?

11:02:03 **25**     **Q.**   Other than what appears in the answer on the

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

11:03:46 **1**        THE WITNESS:  Oh, yes.  I did.

11:03:47 **2**        MR. KLUTHO:  And he's going to beat up on

11:03:49 **3**  you for a little while about that.

11:03:51 **4**     **A.**   All right.  Yes.  It was not me personally,

11:03:53 **5**  it was Teresa Nagle who did that.

11:04:16 **6**        MR. KLUTHO:  Do you want to make that

11:04:18 **7**  correction to your responses on behalf of ARS?

11:04:22 **8**        THE WITNESS:  Yes.

11:04:24 **9**        MR. KLUTHO:  Which is what you testified

11:04:25 **10**  about earlier today.

11:04:26 **11**        THE WITNESS:  Correct.  Over and over.

11:04:36 **12**        MR. KLUTHO:  Counsel, do you require a

11:04:37 **13**  formal amended response, or is this sufficient?

11:04:40 **14**        MR. SCHWIEBERT:  If your answers are

11:04:42 **15**  incomplete, please correct them and provide them in

11:04:46 **16**  an answer which is executed by a witness.

11:04:48 **17**        MR. KLUTHO:  We're going to allow the

11:04:49 **18**  deposition testimony to suffice.  You've been sworn,

11:04:53 **19**  you've corrected this at the deposition.

11:04:58 **20**        You are requiring a vexatious mechanism to

11:05:00 **21**  have to go further with that, counsel.

11:05:03 **22**  BY MR. SCHWIEBERT:

11:05:03 **23**     **Q.**   Do you know why you signed -- Well -- No,

11:05:06 **24**  you testified you signed it.

11:05:07 **25**        Do you know why you signed deposition

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

86

11:02:06 **1**  first page of Exhibit 23, does ARS have any other

11:02:15 **2**  process by which it claims to have acquired the

11:02:19 **3**  Ferkingstad debt?

11:02:20 **4**        MR. KLUTHO:  Counsel, she's testified all

11:02:22 **5**  day today so far about the processes, as did Ms.

11:02:28 **6**  Fountain.  Those are the processes.  I'm not sure

11:02:33 **7**  what you're trying to do here.

11:02:37 **8**     **Q.**   Do you understand the question?

11:02:38 **9**     **A.**   I do.

11:02:39 **10**     **Q.**   Is there additional information to be

11:02:41 **11**  provided?

11:02:42 **12**     **A.**   Not that I'm aware of.

11:03:03 **13**     **Q.**   Interrogatory number 7.  Interrogatory

11:03:18 **14**  number 7 asks for an identification, who affixed the

11:03:21 **15**  letters "Ferkingstad" on the bottom of the Bill of

11:03:26 **16**  Sale, and when and how they were affixed there;

11:03:28 **17**  correct?

11:03:29 **18**     **A.**   Yes, it does.

11:03:30 **19**     **Q.**   Okay.  The answer in Exhibit 23 is that you

11:03:34 **20**  generated the Bill of Sale.  Is that correct?

11:03:39 **21**        MR. KLUTHO:  You're not on the right page,

11:03:40 **22**  Bonnie.

11:03:41 **23**        THE WITNESS:  Oh.

11:03:43 **24**        MR. KLUTHO:  This is the correction that

11:03:44 **25**  you made where you put Teresa Nagle in there.

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

88

11:05:09 **1**  Exhibit 23 if the answer to interrogatory number 7 was

11:05:12 **2**  incorrect?

11:05:15 **3**     **A.**   It was probably overlooked.

11:05:28 **4**     **Q.**   Document request number 1 --

11:05:32 **5**        MR. KLUTHO:  What page are you on, counsel?

11:05:34 **6**        MR. SCHWIEBERT:  Four.

11:05:42 **7**     **Q.**   -- seeks all documents referring to

11:05:44 **8**  Ferkingstad, including but not limited, and there's a

11:05:47 **9**  bunch of categories.  And the response is, "See

11:05:51 **10**  documents produced herein."

11:05:52 **11**        MR. KLUTHO:  Do you have those documents,

11:05:53 **12**  counsel?

11:05:55 **13**     **Q.**   Your counsel has already stipulated those

11:05:57 **14**  are Exhibit 22.

11:05:58 **15**     **A.**   No.  I took that stipulation

11:06:00 **16**  away, counsel.

11:06:01 **17**        I asked you if you were going to say that

11:06:02 **18**  that was -- Exhibit 22 was the documents that were

11:06:05 **19**  attached.

11:06:05 **20**     **Q.**   Other than Exhibit 22, are there any other

11:06:08 **21**  documents in ARS's possession that refer or relate to

11:06:11 **22**  Ferkingstad and/or her account?

11:06:13 **23**        MR. KLUTHO:  Don't answer the question.

11:06:14 **24**  Counsel won't stipulate that Exhibit 22 is and are

11:06:20 **25**  the documents that were attached.  And if you won't

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

89

```
11:06:24  1   do that, counsel, there's no way that she can answer
11:06:26  2   the question.
11:06:27  3          MR. SCHWIEBERT:  Are you instructing the
11:06:28  4   witness not to answer?
11:06:29  5          MR. KLUTHO:  You heard me, counsel.  I
11:06:30  6   asked you, just tell me.  Is Exhibit 22, because this
11:06:34  7   is an incomplete exhibit.  What you've got here is
11:06:37  8   Exhibit 23, which is wholly incomplete.  It doesn't
11:06:41  9   have the documents attached.  The answer is incap --
11:06:43 10   The question is incapable of being answered.
11:06:46 11   BY MR. SCHWIEBERT:
11:06:46 12      Q.   Do you understand the question?
11:06:47 13          MR. KLUTHO:  It doesn't mat --
11:06:49 14          You can't answer the question because there
11:06:51 15   are no documents attached.
11:06:53 16      A.   There are no documents attached to this,
11:06:56 17   whatever you call this --
11:06:58 18          MR. KLUTHO:  Exhibit 22.
11:06:59 19      A.   -- Exhibit 22, therefore I am --
11:07:01 20          MR. KLUTHO:  23.
11:07:02 21      A.   23, therefore, I am unable to answer.
11:07:05 22      Q.   Okay.  Other than the documents that appear
11:07:07 23   in Exhibit 22, is ARS in possession of any documents
11:07:13 24   referring or relating to Ferkingstad and her account?
11:07:16 25          MR. KLUTHO:  Do you have Exhibit 22,
```

90

```
11:07:17  1   counsel?
11:07:19  2          Here it is.  You want to look it through
11:07:20  3   again, we'll go all over that again.
11:07:26  4          She's testified about a document that was
11:07:28  5   provided to you today.  Do you remember that?
11:07:42  6      A.   Are you asking me was this included in the
11:07:44  7   court's files?
11:07:46  8      Q.   No.
11:07:46  9      A.   Oh.
11:07:47 10      Q.   My question is:  Certain documents were --
11:07:50 11      A.   Yes.
11:07:50 12      Q.   -- produced to the plaintiff.  I just want
11:07:51 13   to make sure there's not something else we haven't
11:07:54 14   seen yet.
11:07:54 15      A.   Okay.  (Witness reviewing exhibit.)  I
11:08:21 16   didn't -- I didn't see the summons and complaint in
11:08:23 17   this document.  Do you have it?
11:08:26 18      Q.   It's the very first page [indicating].
11:08:29 19      A.   Okay.  Not that I'm aware of.
11:08:31 20          MR. KLUTHO:  Counsel, she made a mistake.
11:08:33 21   Please don't laugh at her.
11:08:35 22          Why do you keep laughing at my witnesses?
11:08:39 23   It is absolutely offensive and improper.  Knock it
11:08:45 24   off.
11:09:43 25          MR. SCHWIEBERT:  I need to find the next
```

91

```
11:09:45  1   exhibit.  Why don't we take a five-minute break while
11:09:48  2   I find that exhibit.
11:09:51  3          (Recess taken from 11:09 to 11:13 a.m.)
11:09:51  4   BY MR. SCHWIEBERT:
11:13:47  5      Q.   If you can look back at Exhibit 19, the list
11:13:50  6   of topics.  Other than you've already testified, do
11:13:56  7   you have any testimony to provide on behalf of ARS
11:14:00  8   regarding topic number 16?
11:14:02  9          MR. KLUTHO:  Object to the form of the
11:14:03 10   question.
11:14:05 11      A.   No.
11:14:10 12      Q.   The --
11:14:13 13          Exhibit 23, the answers, did you review this
11:14:23 14   document and approve it prior to June 16th of 2017?
11:14:32 15      A.   I do not recall.
11:14:35 16      Q.   And I'm --
11:14:36 17      A.   I went out for surgery on June 5th.
11:14:46 18          MR. KLUTHO:  Counsel, rest assured that I
11:14:48 19   worked with this person right here in putting
11:14:51 20   together these responses on behalf of ARS --
11:14:54 21          THE WITNESS:  Yes.
11:14:54 22          MR. KLUTHO:  -- at a time when she was
11:14:56 23   getting ready to go have surgery and go under the
11:14:58 24   knife, so just knock it off.
11:15:42 25      Q.   Exhibit 20 is your declaration; correct?
```

92

```
11:15:54  1      A.   Yes.
11:16:02  2      Q.   Just so -- And I'm sorry if you already
11:16:06  3   moved away from it.
11:16:08  4          If you can look back at Exhibit 19.  Topic
11:16:11  5   number 7, including the misspelling of your name, is
11:16:18  6   your declaration; correct?
11:16:21  7      A.   Yes.
11:16:28  8      Q.   Did you draft Exhibit Number 20?
11:16:33  9          MR. KLUTHO:  Counsel, our office put this
11:16:35 10   together on our typewriter, on our computer system.
11:16:39 11      A.   No, I did not.
11:16:41 12      Q.   Did you review Exhibit Number 20 for
11:16:44 13   accuracy prior to signing it?
11:16:50 14      A.   I believe I did, yes.
11:16:53 15      Q.   And you understood that you signed this
11:16:55 16   document under penalty of perjury, --
11:16:57 17      A.   Yes.
11:16:59 18      Q.   -- the same oath --
11:17:02 19          MR. KLUTHO:  Counsel, knock it off.
11:17:03 20      Q.   -- as this deposition; correct?
11:17:05 21          MR. KLUTHO:  Knock it off.  Quit arguing
11:17:06 22   with this witness.  We're going to stop the
11:17:09 23   deposition if you keep this up.
11:17:14 24      Q.   Do you understand my question?
11:17:15 25          MR. KLUTHO:  Yes, she understands your
```

93

11:17:17 1  question.  Yes, she understands it's the same darn
11:17:20 2  oath.  Knock it off.
11:17:23 3      A.   Yes.
11:17:24 4      Q.   You understand you're under oath today as if
11:17:26 5  you were before the judge and jury.
11:17:27 6          MR. KLUTHO:  Don't answer the question.
11:17:29 7  Ask your next question.
11:17:32 8      You understand that she's typing all this
11:17:34 9  up, you don't need to keep writing that down.
11:17:36 10         MR. SCHWIEBERT:  Can you sit down, sir?
11:17:38 11         MR. KLUTHO:  Don't tell me what to do.
11:17:40 12 BY MR. SCHWIEBERT:
11:17:40 13     Q.   You understand that there are false
11:17:42 14 statements in your declaration.
11:17:44 15         MR. KLUTHO:  Object to the form of the
11:17:45 16 question.
11:17:46 17     Q.   Correct?
11:17:48 18     A.   No, I do not understand that.
11:17:50 19     Q.   Okay.  Did you review it in preparing for
11:17:52 20 today?
11:17:53 21     A.   Yes.
11:17:57 22     Q.   Paragraph number 4, page 2 of Exhibit 20
11:18:05 23 refers to the Bill of Sale; correct?
11:18:09 24     A.   Yes.
11:18:11 25     Q.   And it says --

95

11:19:43 1  whatever it is you're trying to get me to do, and I
11:19:48 2  don't understand for an attorney who has a Harvard
11:19:51 3  degree, why are you doing this to me, can you answer
11:19:54 4  me that?
11:19:59 5      Q.   Are you finished?
11:20:00 6      A.   Yes.
11:20:02 7      Q.   Is the statement in paragraph 7 of your
11:20:08 8  declaration on page 2 of Exhibit 20 accurate?
11:20:13 9          MR. KLUTHO:  No, counsel, it was typed on
11:20:14 10 the bottom.  We will stipulate.
11:20:18 11         My office prepared this.  I made a mistake,
11:20:21 12 counsel.  If top or bottom has significance in this
11:20:27 13 world in this case, so be it.  We will stipulate that
11:20:34 14 the declaration has the word Ferkingstad referenced
11:20:38 15 at the wrong part.  Chalk one up for you.
11:20:50 16         MR. SCHWIEBERT:  I have no further
11:20:51 17 questions.
11:20:52 18         MR. KLUTHO:  No further questions?
11:20:52 19             EXAMINATION
11:20:52 20 BY MR. KLUTHO:
11:20:54 21     Q.   Ms. Drennen?
11:20:58 22     A.   Yes.
11:20:59 23     Q.   Just in general, what is your job title?
11:21:03 24     A.   I am the manager of Reliance Recoveries.
11:21:07 25     Q.   And in your role as the manager of Reliance

94

11:18:11 1          MR. KLUTHO:  "Signed by both parties."
11:18:13 2  Watch him.  This is going to be exciting.
11:18:16 3      A.   Go ahead.  I'm listening.
11:18:19 4      Q.   It says "The document was completed and
11:18:20 5  signed by both parties..."; correct?
11:18:22 6      A.   Yes.
11:18:23 7      Q.   Is that a true statement?
11:18:24 8          MR. KLUTHO:  No.
11:18:25 9      A.   No.
11:18:30 10         Sir, I'm -- I'm just very frustrated with
11:18:33 11 you because you don't seem to understand the big
11:18:35 12 picture here.  The big picture is Allina is my client,
11:18:40 13 I have worked with them for 17 years, we made a
11:18:44 14 business decision to purchase debt from them, we did
11:18:48 15 our best to compile the necessary paperwork to be
11:18:53 16 within the guidelines of purchasing debt.  I talked to
11:18:58 17 my client about it, I talked to my attorneys about it,
11:19:02 18 we proceeded in the best fashion we knew how.
11:19:07 19         The issue is Allina purchased Ferkingstad's
11:19:12 20 debt -- I mean Reliance purchased -- you've got me so
11:19:19 21 frustrated -- Reliance d/b/a ARS, however you want to
11:19:22 22 say it, purchased the debt for Ferkingstad from
11:19:28 23 Allina.  What else do you want me to say?  I mean, I
11:19:32 24 could sit here for the next four hours with you, what
11:19:37 25 I consider badgering me and trying to get me to do

96

11:21:09 1  Recoveries, is this what you eat, live and drink every
11:21:13 2  day?
11:21:13 3      A.   Every day.
11:21:15 4          MR. KLUTHO:  We'll read and sign.
11:21:17 5          THE REPORTER:  Thank you.
11:21:20 6          (Deposition concluded at 11:21 a.m.)
         7
         8
         9
         10
         11
         12
         13
         14
         15
         16
         17
         18
         19
         20
         21
         22
         23
         24
         25

```
 1        C E R T I F I C A T E
 2        I, Debby J. Campeau, hereby certify that I
 3   am qualified as a verbatim shorthand reporter; that I
 4   took in stenographic shorthand the testimony of
 5   BONITA J. DRENNEN at the time and place aforesaid;
 6   and that the foregoing transcript consisting of 96
 7   pages is a true and correct, full and complete
 8   transcription of said shorthand notes, to the best of
 9   my ability.
10        Dated at Lino Lakes, Minnesota, this 30th
11   day of October, 2017.
12
13
14
15                 DEBBY J. CAMPEAU
16                 Notary Public
17
18
19
20
21
22
23
24
25
```

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com

```
                                    98
 1        S I G N A T U R E   P A G E
 2        I, BONITA J. DRENNEN, the deponent, hereby
 3   certify that I have read the foregoing transcript,
 4   consisting of 96 pages, and that said transcript is a
 5   true and correct, full and complete transcription of
 6   my deposition, except per the attached corrections,
 7   if any.
 8   PAGE  LINE    CHANGE/REASON FOR CHANGE
 9   ____  ____    _____
10   ____  ____    _____
11   ____  ____    _____
12   ____  ____    _____
13   ____  ____    _____
14   ____  ____    _____
15   ____  ____    _____
16   ____  ____    _____
17   ____  ____    _____
18
19   _____    _____
20   Date          Signature of Witness
21
22        WITNESS MY HAND AND SEAL this _____
23        day of _____, 2017.
24
25   (DJC)         _____
```

STIREWALT & ASSOCIATES
1-800-553-1953  info@stirewalt.com